Certificate of Service of: Julian Rozario
Exhibit attached marked "A"

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

**SECURITIES AND EXCHANGE COMMISSION,
Plaintiff**                                    **V. SUMMONS IN A CIVIL CASE**

**ROBERT B. WESTBROOK, Defendant**

                 **CASE NUMBER: 2:24−CV−09497−JKS−JSA**

**To: Robert B. Westbrook 5B Radnor Walk Chelsea LONDON SW3 4BP United Kingdom**

---

# CERTIFICATE OF SERVICE

---

I, Julian Rozario, process server of Tremark Associates Ltd, Joshua Chambers, 332 York Road, Leeds, LS9 9DN instructed for service by Stephenson Harwood LLP make this Certificate of Service and WILL SAY as follows: -

1.  That I did on 30 January 2025 at 14:00 hours attend at HMP Wandsworth, Heathfield Road, London, SW18 3HU.

2.  That I effected service of the service pack relating to Case Number: 2:24−CV−09497−JKS−JSA in the United States District Court - District Of New Jersey, by handing them to Robert Westbrook after he freely admitted his identity to me.

3.  A true copy of the aforementioned documents so served by me are exhibited hereto marked 'A'.

**Statement of Truth**

I believe the facts stated in this witness statement are true. I understand that proceedings for contempt of court may be brought against anyone who makes, or causes to be made, a false statement in a document verified by a statement of truth without an honest belief in its truth.

Full Name............ Julian Rozario.................................

Signed.................................................................

Dated.................................................................

Certificate of Service of: Julian Rozario
Exhibit attached marked "A"

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**SECURITIES AND EXCHANGE COMMISSION,**
**Plaintiff**                                **V. SUMMONS IN A CIVIL CASE**

**ROBERT B. WESTBROOK, Defendant**
                            **CASE NUMBER: 2:24−CV−09497−JKS−JSA**

**To: Robert B. Westbrook 5B Radnor Walk Chelsea LONDON SW3 4BP United Kingdom**

**This is the exhibit 'A' referred to in the Certificate of Service of**
**Julian Rozario**

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**SECURITIES AND EXCHANGE COMMISSION,**
*Plaintiff*

V.

**ROBERT B. WESTBROOK,**
*Defendant*

**SUMMONS IN A CIVIL CASE**

CASE NUMBER: **2:24–CV–09497–JKS–JSA**

TO: *(Name and address of Defendant):*

    Robert B. Westbrook
    5B Radnor Walk
    Chelsea
    LONDON
    SW3 4BP
    United Kingdom

    A lawsuit has been filed against you.

    Within 21 days after service of this summons on you (not counting the day you received it) —— or 60 days if you are the United States or a United States Agency, or an office or employee of the United States described in Fed. R. civ. P. 12 (a)(2) or (3) —— you must serve on the plaintiff an answer to the attached complaint or a motion under rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff`s attorney, whose name and address are:

    Russell J. Feldman
    Securities and Exchange Commission
    100 Pearl Street, Suite 20-100
    New York, NY 10004-2616

    If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

**CLERK OF COURT** _____



**ISSUED ON 2024–09–30 09:41:55**, Clerk
USDC NJD

## RETURN OF SERVICE

| | |
|---|---|
| Service of the Summons and complaint was made by me[1] | DATE |
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served: _____
_____; or

☐ Left the summons at the individual's residence or usual place of abode with (name):
_____ a person of suitable age and discretion who resides there,
on (date):_____ and mailed a copy to the individual's last known address; or

☐ Name of person with whom the summons and complaint were left:
_____; or

☐ Returned unexecuted: _____
_____
_____; or

☐ Other (specify):
_____
_____
_____

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information
contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____         _____
                        Date                                    *Signature of Server*

                                                     _____
                                                     *Address of Server*

Joseph G. Sansone
Jorge G. Tenreiro
Alison R. Levine
Russell J. Feldman
Karolina Klyuchnikova
U.S. Securities and Exchange Commission
New York Regional Office
100 Pearl Street
Suite 20-100
New York, NY 10004-2616
212-336-9144 (Feldman)
FeldmanR@sec.gov

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | **Civil Action No.** |
| **Plaintiff,** | **Complaint for Violations of the Federal Securities Laws** |
| -against- | |
| **ROBERT B. WESTBROOK,** | **Jury Trial Demanded** |
| **Defendant.** | |

Plaintiff Securities and Exchange Commission ("Commission"), located at

100 Pearl Street, Suite 20-100, New York, New York 10004-2616, alleges as

follows against Robert B. Westbrook ("Westbrook" or the "Defendant"), whose

last known address is 5B Radnor Walk, Chelsea, London SW3 4BP, United

Kingdom:

## SUMMARY

1.  This is a "hack-to-trade" case. Specifically, this case involves a fraudulent scheme by Westbrook to hack into the computer systems of U.S. public companies to deceptively obtain material nonpublic information about their corporate earnings and to use that information to profit by trading in advance of the companies' public earnings announcements.

2.  Between approximately January 2019 and August 2020 (the "Relevant Period"), Westbrook directly or indirectly made material misstatements and used deceptive means to access the computer systems of at least five companies with shares of stock publicly traded on U.S. securities exchanges (each a "Hacked Company" and collectively the "Hacked Companies").[1] This included that Westbrook: used the credentials of the Hacked Companies' employees without authorization (*e.g.*, usernames and passwords that did not belong to Westbrook); made affirmative misrepresentations that he was one of those employees or other legitimate user of the Hacked Companies' computer systems; and used tools and techniques to conceal his identity and location while conducting the hacking.

3.  Westbrook gained unauthorized access into the Hacked Companies' computer systems to obtain pre-release corporate earnings information—including

---

[1] As explained further below, the "Hacked Companies" are identified herein as "Company-1," "Company-2," "Company-3," "Company-4," and "Company-5."

draft earnings releases, press releases, and scripts—and then used that information to trade in the securities of the Hacked Companies in advance of their public earnings announcements. Prior to these public earnings announcements, Westbrook established large and risky options positions in the Hacked Companies' securities, and often sold out of those positions shortly after the public earnings announcements.

4.     In deceptively obtaining nonpublic earnings information from the Hacked Companies and trading in their securities in advance of at least 14 earnings announcements, Westbrook reaped approximately $3.75 million in illicit profits.[2]

5.     By engaging in this conduct, Westbrook violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

6.     The Commission brings this action pursuant to the authority conferred upon it by Sections 21 and 21A of the Exchange Act [15 U.S.C. §§ 78u, 78u-1].

7.     The Commission seeks a final judgment: (a) permanently enjoining Westbrook from violating the federal securities laws and rules this Complaint

---

[2] Westbrook's trades in advance of four of the 14 earnings announcements were unprofitable, even though he traded based on material nonpublic information. These unprofitable trades were excluded from the calculation of Westbrook's illicit profits.

alleges he has violated; (b) ordering Westbrook to disgorge all ill-gotten gains he received as a result of the violations alleged herein and to pay prejudgment interest thereon, pursuant to Sections 21(d)(3), 21(d)(5), and 21(d)(7) of the Exchange Act [15 U.S.C. §§ 78u(d)(3), 78u(d)(5), and 78u(d)(7)]; and (c) ordering Westbrook to pay a civil money penalty pursuant to Sections 21A(a) or 21(d) of the Exchange Act [15 U.S.C. §§ 78u-1, 78u(d)(3)]. The Commission seeks any other relief the Court may deem appropriate pursuant to Section 21(d)(5) of the Exchange Act [15 U.S.C. § 78u(d)(5)].

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over this action pursuant to Sections 21(d), 21(e), 21A and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 77u(e), 78u-1, and 78aa]. Westbrook, directly or indirectly, made use of the means or instrumentalities of interstate commerce, or of the mails, or the facilities of a national securities exchange in connection with the transactions, acts, practices, and courses of business alleged in this Complaint. Westbrook deceptively obtained material nonpublic information from U.S. public companies and used the information to make securities trades that were cleared through U.S.-based brokerage firms and placed on multiple national securities exchanges, in a manner that used the instrumentalities of interstate commerce.

9.     Venue lies in this District under Section 27 of the Exchange Act [15

U.S.C. § 78aa]. Certain of the purchases and sales of securities and acts, practices, transactions, and courses of business constituting violations alleged in this Complaint occurred within this District, and were effected, directly or indirectly, by making use of the means, instruments, or instrumentalities of transportation or communication in interstate commerce, or of the mails, or the facilities of national securities exchanges. Specifically, many of the illegal securities transactions were conducted using various national securities exchanges, such as the Nasdaq Global Market Select ("Nasdaq") and the New York Stock Exchange ("NYSE"), including one or more transactions that was processed using data servers located in New Jersey. Furthermore, under 28 U.S.C. § 1391(c)(3), venue lies in this District because Westbrook, as a foreign national residing outside the United States, may be sued in any judicial district.

## DEFENDANT

10. **Robert B. Westbrook**, age 38, is a citizen and resident of the United Kingdom. Westbrook holds himself out as having studied economics at the University of Oxford, and he worked in several positions in the financial industry in London. During the Relevant Period, Westbrook held several brokerage accounts with firms based in the United States and held several brokerage accounts with firms in the United Kingdom.

## TERMS USED IN THIS COMPLAINT

11.    A stock option, commonly referred to as an "option," gives its purchaser-holder the right to buy or sell shares of an underlying stock at a specified price (the "strike" price) prior to the expiration date. Options are generally sold in "contracts," which give the option holder the opportunity to buy or sell 100 shares of the underlying stock.

12.    A "call" option gives the purchaser-holder of the option the right, but not the obligation, to purchase a specified amount of an underlying security at a specified strike price within a specific time period. Generally, the buyer of a call option anticipates that the price of the underlying security will increase during a specified amount of time, allowing the buyer of the call option to make a profit from the difference between the higher market price of the underlying security and the strike price (less the cost of the option).

13.    A "put" option gives the holder of the option the right, but not the obligation, to sell a specified amount of an underlying security at a specified strike price within a specific time period. Generally, the buyer of a put option anticipates that the price of the underlying security will decrease during a specified amount of time, allowing the buyer of the put option to make a profit from the difference between the strike price (less the cost of the option) and the lower market price of the underlying security.

14.     An out-of-the-money call option refers to an option that would expire worthless unless the price of the underlying stock rose by a certain amount before expiration. Specifically, in the case of a call option, out-of-the-money refers to a scenario where the strike price is higher than the market price of the stock that underlies the call option.

15.     An out-of-the-money put option refers to an option that would expire worthless unless the price of the underlying stock fell by a certain amount before expiration. Specifically, in the case of a put option, out-of-the-money refers to a scenario where the strike price is lower than the market price of the stock that underlies the put option.

16.     Generally, the higher the strike price is above the stock price, the more inexpensive the call option will be to purchase. This is because it would take an upward move in the price of the underlying stock that is large enough to surpass the option's strike price for the call option to become in-the-money and become more valuable—and thus avoid expiring worthless. As a result, the higher the strike price of a call option is above the stock price, the greater the risk the call option will expire worthless.

17.     Similarly, the nearer an out-of-the-money call option is to its expiration date, the greater the risk the call option will expire worthless. This results from the fact that there is simply less time for the price of the underlying

7

stock to rise enough to make the call option more valuable and avoid expiring worthless.

18. Likewise, the lower the strike price of a put option is below the stock price, the more inexpensive the put option will be to purchase. This is because it would take a downward move in the price of the underlying stock that is large enough to fall below the option's strike price for the put option to become in-the-money and become more valuable and thus avoid expiring worthless. As a result, the lower the strike price is below the stock price, the greater the risk the put option will expire worthless.

19. Similarly, the nearer an out-of-the-money put option is to its expiration date, the greater the risk the put option will expire worthless. This results from the fact that there is simply less time for the price of the underlying stock to fall enough to make the put option more valuable and avoid expiring worthless.

20. An "internet protocol address" or "IP address" is a unique number required for online activity conducted by a computer or other device connected to the internet. Computers use the unique identifier to send data to specific computers on a network. Often, IP addresses can be used to identify the geographic location of the server through which a computer accessed the internet. Thus, an IP address is like a return address on a letter. Additionally, an individual can conceal the IP

address from which he or she is accessing the internet through a number of different techniques and tools.

21.     A "virtual private network" or "VPN" is one such tool that an individual can use to conceal his or her IP address. A VPN enables an individual to assume and use IP addresses different from his or her own, including IP addresses associated with different geographical regions.

## FACTS

### I.     Overview of the Hack-to-Trade Scheme

22.     During the Relevant Period, Westbrook engaged in an unlawful scheme in which he directly or indirectly used deceptive means to access the computer systems of at least five publicly-traded U.S. companies and then used that information to trade in advance of their earnings announcements.

23.     Each of the Hacked Companies is a company that has shares of stock that are registered under Section 12(b) of the Exchange Act and that are publicly traded on a U.S. national securities exchange. In connection with their reporting obligations under the securities laws, the Hacked Companies prepared periodic and other reports to be filed with the Commission and disseminated to the investing public, including materials relating to the Hacked Companies' earnings. This included, among other things, drafts of earnings releases, press releases, and scripts for earnings announcements and related internal emails.

24.     The information contained in these documents and emails was nonpublic because it had not yet been published or filed in a manner designed to achieve a broad dissemination to the investing public generally and without favoring any person or group.

25.     The information contained in these documents and emails was also material. The Hacked Companies' information would have been important to the reasonable investor and viewed by the reasonable investor as having significantly altered the total mix of information made available. Information about a company's earnings is material because it relates to, among other things, a public company's financial condition, solvency, and profitability. For example, public disclosure of earnings information frequently leads to a change in the price of a company's stock. It is common for financial analysts to estimate and/or model a given company's quarterly or annual earnings. The market reaches a consensus expectation based in part on these different estimates. When a company releases its earnings announcements, the price at which shares of that company's stock trade often increases (if earnings exceed market expectations) or decreases (if earnings fall short of market expectations).

26.     Westbrook knowingly, or with reckless disregard, made material misrepresentations, affirmatively misrepresented his identity, and employed a variety of deceptive and fraudulent devices, contrivances, artifices, practices,

means, and acts to access the computer systems of the five Hacked Companies. Specifically, Westbrook used, among other things: deceptively-obtained credentials of the Hacked Companies' employees; VPN services to conceal the IP address from which he accessed the internet; and anonymous email accounts to conceal his identity.

27.     The hacking incidents each followed a similar pattern, with some limited exceptions, and occurred before the Hacked Companies were set to publicly announce earnings.

    a.     *First*, Westbrook reset a senior executive's computer system password at each of the Hacked Companies. Four of the five Hacked Companies used the same password reset portal software.

    b.     *Second*, Westbrook used the senior executive's username and reset password to access the Hacked Company's computer system, including the senior executive's Microsoft Office 365 ("Office 365") account and Microsoft Outlook email account ("Outlook"). In each hacking incident, the senior executive's Outlook contained emails with material nonpublic information about the Hacked Company's upcoming earnings announcement.

11

    c.    *Third*, Westbrook set up (or attempted to set up) email auto-forwarding rules in the senior executive's Outlook. Those rules were designed to forward emails containing nonpublic information about the Hacked Company's earnings from the senior executive's Outlook to one of several anonymous email accounts that Westbrook accessed.

    d.    *Fourth*, in advance of the Hacked Company's public earnings announcement, Westbrook purchased stock and/or options in the Hacked Company based on the nonpublic earnings information that he deceptively obtained.

    e.    *And finally*, Westbrook typically liquidated his securities positions in the Hacked Company shortly after its public earnings announcement and reaped significant profits.

28.    Westbrook placed securities trades in the Hacked Companies on national securities exchanges through U.S.-based broker dealers, in a manner that utilized instrumentalities of interstate commerce.

29.    By repeatedly engaging in this course of conduct—deceptively obtaining information from the Hacked Companies that he knew or recklessly disregarded was material and nonpublic and then trading in their securities in advance of their earnings announcements—Westbrook reaped approximately $3.75

million in illicit profits.

## II.  Examples of the Hack-to-Trade Scheme

30.  Below are several examples where Westbrook deceptively obtained material nonpublic information from the Hacked Companies and traded profitably in the securities of the Hacked Companies based on that information.

### A. <u>Hack of Company-1</u>

31.  During the Relevant Period, Company-1 was a Delaware corporation headquartered in Orlando, Florida. It had a class of shares registered under Section 12(b) of the Exchange Act and its common stock traded on the NYSE.

32.  On January 26, 2019, Westbrook hacked into Company-1's computer system by misrepresenting his identity and deceptively using the credentials of an employee of Company-1.

33.  Specifically, Westbrook reset the password of a senior finance executive of Company-1 ("Executive-1") through Company-1's password reset portal. After he reset the password, Westbrook accessed Company-1's computer system, including Executive-1's Outlook.

34.  While inside Company-1's computer system, Westbrook gained access to documents and emails containing material nonpublic information about Company-1's earnings for the fourth quarter of its fiscal year 2018. These emails included one that Executive-1 received on January 22, 2019, which contained a

13

draft press release about the company's fourth quarter financial results. The draft press release stated, among other things, that Company-1's net sales were down 14% and that its dividend would be $0.27 per share. The draft press release also forecast its fiscal year 2019 earnings per share in the range of $4.06 to $4.21. This was negative news because, by comparison, Company-1 paid a dividend of $0.68 per share in the prior quarter, and the consensus expectations of securities market analysts predicted earnings per share for the same period of $4.45.

35.     While inside Executive-1's Outlook, Westbrook also created auto-forwarding rules designed to send all emails that Executive-1 received containing attachments to Aleksandrdubois1[@]gmail.com ("Aleksandrdubois")—an anonymous email account that Westbrook accessed. The auto-forwarding rules were likely unsuccessful, however, because Company-1's computer systems had been configured to prevent email auto-forwarding for all users.

36.     Westbrook purchased Company-1's securities based on information he deceptively obtained and knew or recklessly disregarded was material and nonpublic regarding Company-1's financial results.

37.     Starting on January 28, 2019 at approximately 3:20 pm EST—less than two days before Company-1 publicly announced its financial results for the fourth quarter of its fiscal year 2018—and continuing the next day, Westbrook purchased a total of 670 Company-1 put options across five different option series.

Specifically, Westbrook purchased the following Company-1 put options at a total cost of $129,429:

| Put Options Purchased | Expiration Date | Strike Price |
|---|---|---|
| 50 | 2/15/19 | $30 |
| 110 | 2/15/19 | $35 |
| 200 | 2/15/19 | $40 |
| 230 | 3/15/19 | $35 |
| 80 | 3/15/19 | $40 |

38.     The next day, on January 29, 2019, Westbrook sent an email to another individual stating, "Wanted to flag my idea on [Company-1], which I have reasonable conviction on (as reflected in the sizing relative to the portfolio) . . . this is my favorite idea – my view is there is significant guidance risk here."

39.     On January 30, 2019, at approximately 7am EST, Company-1 reported its financial results for the fourth quarter of its fiscal year 2018 and announced the dividend it would be paying to shareholders. Those results reflected material information about Company-1's earnings that was included in the draft press release that Westbrook gained access to when he hacked into Company-1's computer system several days earlier, including that Company-1's net sales were down 14%, that its dividend would be 27 cents per share, and that the forecast for its fiscal year 2019 earnings per share was in the range of $4.06 to $4.21.

40.     By the close of regular market trading that day, Company-1's stock price declined 27%—from a closing price of $38.13 on January 29, 2019 to a closing price of $27.67 on January 30, 2019.

41. On January 30, 2019, the same day that Company-1 reported its financial results, Westbrook sold his entire position of Company-1 put options for proceeds of $452,210. As a result of his trading in Company-1 securities in connection with this earnings announcement, Westbrook obtained a total profit of approximately $322,781.

42. The options positions Westbrook established in Company-1 prior to this earnings announcement were large and risky. Westbrook's purchases of Company-1 put options on January 28, 2019 accounted for approximately 16% of all Company-1 put options traded that day.[3] Similarly, Westbrook's purchases of Company-1 put options on January 29, 2019 accounted for approximately 32% of all Company-1 put options traded that day. In fact, going into Company-1's earnings announcement on January 30, 2019, Westbrook was the only retail holder of more than 200 Company-1 put options.

## B. Hack of Company-2

43. During the Relevant Period, Company-2 was a Massachusetts corporation headquartered in Los Angeles, California. It had a class of shares registered under Section 12(b) of the Exchange Act and its common stock traded on the NYSE.

---

[3] Westbrook's purchases of Company-1 put options also accounted for approximately 78% of all Company-1 put options expiring in February 2019 that traded in the market on January 28, 2019.

44. On or about February 15, 2019, Westbrook hacked into Company-2's computer system. Company-2 used the same password reset portal software as Company-1, Company-4, and Company-5.

45. Specifically, Westbrook gained access to and set up an auto-forwarding rule in the Outlook email account of a senior accounting executive of Company-2 ("Executive-2"). That auto-forwarding rule was designed to send emails that Executive-2 received from any of four specified Company-2 employees to Harris.Slama402[@]aol.com ("Harris.Slama")—an anonymous email account that Westbrook accessed. That auto-forwarding rule began on or about February 15, 2019 and continued until at least January 2021.

46. As a result of the email auto-forwarding rule, Westbrook accessed emails containing material nonpublic information about Company-2's unreported financial results. For instance, emails auto-forwarded from Executive-2's Outlook to Harris.Slama between approximately April 30, 2020 and May 6, 2020 contained nonpublic information about Company-2's financial results for the first quarter of its fiscal year 2020. This forwarded information included an April 30, 2020 draft earnings call script, which stated, among other things, "Our first-quarter results were outstanding and well ahead of expectations"; the company "delivered double-digit revenue growth across all our segments"; "[r]evenue for the first quarter was $1.3 billion, up 30%"; and net income for "the first quarter of 2020 was $17.4

17

million, or $0.34 per diluted share." The forwarded information also included a

May 1, 2020 draft Form 10-Q for the first quarter of its fiscal year 2020, which

similarly reflected a revenue for the quarter of approximately $1.3 billion and

diluted earnings per share of $0.34.

47.     Westbrook purchased Company-2's securities based on information

he deceptively obtained and knew or recklessly disregarded was material and

nonpublic regarding Company-2's financial results.

48.     Starting on May 4, 2020—two days before Company-2 was scheduled

to announce its financial results—Westbrook purchased Company-2 stock and

3,706 Company-2 call options across eight different option series for a total cost of

approximately $789,743. Specifically, Westbrook purchased 40,000 shares of

Company-2 stock at a cost of $256,951, and the following Company-2 call options

at a total cost of $532,792:

| Call Options Purchased | Expiration Date | Strike Price |
|---|---|---|
| 360 | 5/15/20 | $5.00 |
| 818 | 5/15/20 | $7.50 |
| 300 | 6/19/20 | $5.00 |
| 1000 | 6/19/20 | $7.50 |
| 200 | 10/16/20 | $5.00 |
| 812 | 10/16/20 | $7.50 |
| 200 | 12/18/20 | $5.00 |
| 16 | 12/18/20 | $7.50 |

49.     On May 6, 2020, after the stock market closed, Company-2

announced its financial results for the first quarter of its fiscal year 2020. Those

results reflected material information about Company-2's earnings that was included in the draft earnings call script and draft Form 10-Q that Westbrook gained access to as a result of the email auto-forwarding rules he created in February 2019—such as revenue of $1.3 billion and diluted earnings per share of $0.34.

50.     Company-2's earnings announcement reported higher revenue of $1.3 billion compared to consensus expectations of securities market analysts of $1.03 billion, and a higher diluted earnings per share number of $0.34 compared to consensus expectations of $0.06.

51.     By the close of regular market trading the next day, Company-2's stock price had increased by approximately 30%—from a closing price of $6.19 on May 6, 2020 to a closing price of $8.03 on May 7, 2020.

52.     On May 7, 2020, the day after Company-2 announced its financial results, Westbrook sold half of his Company-2 stock and approximately 40% of his Company-2 call options, obtaining a realized profit of approximately $101,343. As of the close of trading that day, Westbrook's remaining position in Company-2 securities had generated unrealized profits of approximately $209,141, for a total realized and unrealized gain of approximately $310,485.

53.     The options positions Westbrook established in Company-2 prior to this earnings announcement were large and risky. Westbrook's purchases of

Company-2 call options between May 4, 2020 and May 6, 2020 accounted for approximately 70% of all Company-2 call options purchased between those dates. In fact, going into Company-2's earnings announcement on May 7, 2020, Westbrook owned more Company-2 call options than any other market participant. Westbrook's call options position was *more than six times* the size of the call options position of the next largest holder.

54.     Notably, Westbrook traded in advance of Company-2's earnings announcements from on or about the time that Executive-2's emails were auto-forwarded to the Harris.Slama account in February 2019 until May 2020—a period when Westbrook was aware of material nonpublic information about Company-2's financial results.

55.     All told, Westbrook obtained total profits of approximately $391,475 from his trading in Company-2 securities between May 2019 and May 2020.

## C. **Hack of Company-3**

56.     During the Relevant Period, Company-3 was a Delaware corporation headquartered in San Mateo, California. It had a class of shares registered under Section 12(b) of the Exchange Act and its common stock traded on the NYSE.

57.     On February 21, 2019, Company-3 issued a press release stating that it would announce its financial results for the second quarter of its fiscal year 2019 on March 6, 2019 after market close.

58.     The next day, on February 22, 2019, Westbrook hacked into Company-3's computer system by misrepresenting his identity and deceptively using the credentials of an employee of Company-3.

59.     Specifically, Westbrook reset the computer system password of a senior finance executive of Company-3 ("Executive-3"). After he reset the password, Westbrook accessed Company-3's computer system, including Executive-3's Office 365 account and Outlook.

60.     While inside Executive-3's Outlook, Westbrook created four auto-forwarding rules designed to send certain emails from Executive-3 to barnesbainesbjorn[@]gmail.com ("Barnesbainesbjorn")—an anonymous email account Westbrook accessed. In particular, the auto-forwarding rules were designed to forward, among others, emails containing attachments and Company-3's stock ticker in the email subject or body, as well as emails containing "script" in the email subject or body. Those auto-forwarding rules began to forward emails that same day and continued until approximately March 2021.

61.     While inside Executive-3's Outlook, Westbrook gained access to documents and emails containing material nonpublic information about Company-3's financial results for the second quarter of its fiscal year 2019. This included a draft script of an earnings call that Executive-3 had received on February 19, 2019. That draft script stated, in part, that Company-3's "[t]otal revenue in the quarter of

$168.6 million was above the high-end of our guidance range" and that the quarter

was "characterized by strong business momentum." Because of the email auto-

forwarding rules that Westbrook created above, subsequent drafts of this earnings

call script were also sent to the Barnesbainesbjorn account. This included a

February 23, 2019 draft script, which stated that Company-3's "financial results

exceeded our revenue and profitability guidance ranges, with total revenue of

$169.3 million[.]"

62.    Westbrook purchased Company-3's securities based on information

he deceptively obtained and knew or recklessly disregarded was material and

nonpublic regarding Company-3's financial results.

63.    Starting on March 6, 2019 at 10:05am EST—the day that Company-3

was scheduled to announce its financial results—Westbrook bought 5,000 shares

of Company-3 stock and 285 Company-3 call options across four different option

series for a total cost of approximately $494,325. Specifically, Westbrook

purchased 5,000 shares of Company-3 stock at a cost of $433,275, and the

following Company-3 call options at a total cost of $61,050:

| Call Options Purchased | Expiration Date | Strike Price |
|---|---|---|
| 20 | 3/15/19 | $85 |
| 190 | 3/15/19 | $90 |
| 25 | 4/18/19 | $85 |
| 50 | 4/18/19 | $90 |

64.    On March 6, 2019, after the stock market closed, Company-3

announced its financial results for the second quarter of its fiscal year 2019. Those results reflected material information about Company-3's earnings that was included in the draft earnings call script that Westbrook gained access to when he hacked into Company-3's computer system—such as total revenue for the second quarter of $169.3 million.

65.     Company-3's earnings announcement exceeded the consensus expectations of securities market analysts, who had predicted that the company's total revenue for the quarter would be $159.71 million, as well as the company's previously issued guidance ranges.

66.     By the close of regular market trading the next day, Company-3's stock price had increased 4.3%—from a closing price of $86.46 on March 6, 2019 to a closing price of $90.22 on March 7, 2019.

67.     On March 7, 2019, shortly after the stock market opened, Westbrook sold all of his stock and call options in Company-3. As a result of his trading in Company-3's securities in connection with this earnings announcement, Westbrook obtained a total profit of approximately $236,492.

68.     The options positions Westbrook established in Company-3 prior to this earnings announcement were large and risky. Westbrook's purchases of Company-3 call options on March 6, 2019 accounted for approximately 11% of all Company-3 call options traded that day. In fact, going into Company-3's earnings

announcement that day, Westbrook was, by far, the single largest retail holder of Company-3 call options.

69.    Notably, Westbrook continued trading in advance of Company-3's earnings announcements during the period of time when Executive-3's emails continued to be auto-forwarded to the Barnesbainesbjorn account—from approximately March 2019 to approximately March 2020.

70.    In one example, Westbrook bought $786,364 worth of Company-3 put options in advance of the company's second quarter earnings announcement that took place on March 4, 2020. He did so based on material nonpublic information about Company-3's financial results for the second quarter of its fiscal year 2020 that Westbrook gained access to because of the email auto-forwarding rule. This included a draft revenue forecast that reported second quarter revenue that was somewhat higher than analysts' consensus estimates ($174 million vs. $166.39 million), but also included forecasted revenue for its fiscal year 2020 that was significantly lower than analysts' consensus estimates ($724.7 million vs. $766.09 million). The earnings announcement reflected mixed news, where Company-3 beat certain quarterly expectations but significantly lowered its previous revenue guidance. By the close of business the next day, Company-3's stock price declined approximately 17%. Starting on March 5, 2020 and extending over several trading days, Westbrook liquidated his options position and obtained a total profit of

approximately $1.04 million.

71.     All told, between March 2019 and March 2020, Westbrook obtained a
total profit of approximately $1,422,015 from his trading of Company-3 securities
while he was aware of material nonpublic information about Company-3's
financial results.

**D. Hack of Company-4**

72.     During the Relevant Period, Company-4 was a Delaware corporation
headquartered in El Dorado, Arkansas. It had a class of shares registered under
Section 12(b) of the Exchange Act and its common stock traded on the NYSE.

73.     On October 23, 2019, Westbrook hacked into Company-4's computer
system by misrepresenting his identity and deceptively using the credentials of an
employee of Company-4.

74.     Specifically, at approximately 7:19am EST, Westbrook reset the
password of a senior accounting executive of Company-4 ("Executive-4") through
Company-4's password reset portal—which used the same password reset portal
software used by Company-1, Company-2, and Company-5. After he reset the
password, Westbrook accessed Company-4's computer system, including
Executive-4's Office 365 account and Outlook and Company-4's SharePoint

application.[4]

75.     While inside Executive-4's Outlook, Westbrook created auto-forwarding rules designed to send certain emails from Executive-4 to Aleksandrdubois—the same anonymous email account that Westbrook used when setting up auto-forwarding rules in the hack of Company-1. In particular, the auto-forwarding rules were designed to forward any emails to Executive-4 that: (1) contained attachments and (2) were sent by Company-4's president or from an audit partner at an accounting firm. The auto-forwarding rules were unsuccessful, however, because Company-4's computer systems had been configured to prohibit email auto-forwarding.

76.     Westbrook also deleted an email in Executive-4's Outlook account titled "Password Reset Acknowledgment" and an item called "Outlook Rules Organizer."

77.     Furthermore, while inside Executive-4's Outlook, Westbrook gained access to documents and emails containing material nonpublic information about Company-4's financial results for the third quarter of its fiscal year 2019. This included an October 22, 2019 email containing a draft of Company-4's earnings release for that quarter. The draft earnings release stated, among other positive

---

[4] SharePoint is a collaboration platform offered by Microsoft, which allows employees to communicate, exchange information, and share files.

financial results, that Company-4's "Net income was $69.2 million, or $2.18 per diluted share, in Q3 2019 compared to net income of $45.0 million, or $1.38 per diluted share, in Q3 2018" and its "Adjusted EBITDA grew 51% over the prior year[.]"

78.    Westbrook purchased Company-4's securities based on information he deceptively obtained and knew or recklessly disregarded was material and nonpublic regarding Company-4's financial results.

79.    Starting on October 25, 2019 at approximately 12:15 pm EST—about two days after the hack described above—Westbrook began purchasing Company-4 call options. Between the time of the hack and Company-4's scheduled earnings announcement five days later, Westbrook purchased 1,342 Company-4 call options across eight different option series, the majority of which were out-of-the-money. Specifically, Westbrook purchased the following Company-4 call options for a total cost of $259,805:

| Call Options Purchased | Expiration Date | Strike Price |
|:---:|:---:|:---:|
| 100 | 11/15/19 | $95 |
| 138 | 11/15/19 | $100 |
| 326 | 11/15/19 | $105 |
| 120 | 12/20/19 | $90 |
| 184 | 12/20/19 | $95 |
| 194 | 12/20/19 | $100 |
| 230 | 12/20/19 | $105 |
| 50 | 1/17/20 | $90 |

80.    On October 30, 2019, after the stock market closed, Company-4

reported its financial results for the third quarter of its fiscal year 2019. Those results reflected material information about Company-4's earnings that was included in the draft earnings release that Westbrook gained access to several days earlier when he hacked into Company-4's computer system, including that Company-4's net income was $69.2 million or $2.18 per diluted share, and its adjusted EBITDA grew 51% over the prior year.

81.     Company-4's earnings announcement exceeded the consensus expectations of securities market analysts, who had predicted that Company-4 would report $1.46 earnings per diluted share for the quarter.

82.     By the close of regular market trading the following day, Company-4's stock price increased more than 24%—from a closing price of $94.84 on October 30, 2019 to a closing price of $117.93 on October 31, 2019.

83.     On October 31, 2019, shortly after the stock market opened, Westbrook sold all of his Company-4 call options. As a result of his trading in Company-4 securities in connection with this earnings announcement, Westbrook obtained a total profit of approximately $1,398,436.

84.     The options positions Westbrook established in Company-4 prior to this earnings announcement were large and risky. Westbrook's purchases of Company-4 call options accounted for approximately 85% of all Company-4 call options traded between October 28, 2019 and October 30, 2019. In fact, going into

the earnings announcement on October 30, 2019, Westbrook owned more Company-4 call options than any other market participant and his call options position was more than twice the size of the next largest holder of call options.

## E. **Hack of Company-5**

85.     During the Relevant Period, Company-5 was a Delaware corporation headquartered in San Jose, California. It had a class of shares registered under Section 12(b) of the Exchange Act and its common stock was traded on Nasdaq.

86.     On February 3, 2020, Westbrook hacked into Company-5's computer system by misrepresenting his identity and deceptively using the credentials of an employee of Company-5.

87.     Specifically, at approximately 8:32am EST, Westbrook reset the password of a senior marketing executive of Company-5 ("Executive-5") through Company-5's password reset portal—which used the same password reset portal software used by Company-1, Company-2, and Company-4. After he reset the password, Westbrook accessed Company-5's computer system, including Executive-5's Office 365 account and Outlook, and Company-5's SharePoint and OneDrive applications.[5]

88.     While inside Executive-5's SharePoint and OneDrive applications, Westbrook viewed documents containing material nonpublic information about

---

[5] OneDrive is an internet-based storage platform offered by Microsoft.

Company-5's financial results for the second quarter of its fiscal year 2020. For example, Westbrook accessed a draft letter from Company-5's CEO entitled "Q2 Earnings Email," which stated, in part, that it had been an "incredible quarter for [Company-5] with all time high record revenue, gross margin and operating margin." The documents Westbrook viewed also included a draft video script, titled "FY2020 Q2 Earnings Video Script," for Company-5's public earnings call that was scheduled to occur before the stock market opened the next day, February 4, 2020. The draft video script described Company-5's "record-breaking" second quarter results, stating, in part, the following: "Revenue: **$457.8M** (high end of guidance and new record); Gross Margin: **47.4%** (new record); Operating Margin: **28.8%** (well above guidance); [and] EPS [earnings per share]: **$1.53** (well above guidance)." (emphasis in original).

89.    Westbrook also created an auto-forwarding rule in Executive-5's Outlook designed to send all of Executive-5's emails after the rule was set up to an anonymous email account, Harris.Slama—the same anonymous email account that Westbrook used to receive auto-forwarded emails in the hack of Company-2. The auto-forwarding rule was unsuccessful, however, because Company-5's computer systems had been configured to prohibit email auto-forwarding for all users.

90.    Westbrook purchased Company-5's securities based on information he deceptively obtained and knew or recklessly disregarded was material and

nonpublic regarding Company-5's financial results.

91.    Starting on February 3, 2020, at approximately 10:14am EST—less than two hours after the hack described above—Westbrook began purchasing Company-5 call options. Between the time of the hack and Company-5's scheduled earnings announcement the next morning, Westbrook purchased 1,917 Company-5 call options across nine different option series, the majority of which were out-of-the-money. Specifically, Westbrook purchased the following Company-5 call options for a total cost of approximately $492,802:

| Call Options Purchased | Expiration Date | Strike Price |
|:---:|:---:|:---:|
| 100 | 2/14/20 | $80 |
| 500 | 2/14/20 | $82 |
| 135 | 2/14/20 | $85 |
| 361 | 2/28/20 | $85 |
| 150 | 2/28/20 | $90 |
| 170 | 3/20/20 | $75 |
| 240 | 3/20/20 | $77.50 |
| 200 | 3/20/20 | $80 |
| 61 | 3/20/20 | $85 |

92.    On February 4, 2020, at 7:30am EST, Company-5 reported its financial results for the second quarter of its fiscal year 2020. Those results reflected material information about Company-5's earnings that was included in the drafts to which Westbrook gained access the day before when he hacked into Company-5's computer system, including revenue of $457.8 million, gross margin of 47.4%, operating margin of 28.8%, and earnings per diluted share of $1.53.

93.     Company-5's earnings announcement exceeded the consensus expectations of securities market analysts, who had predicted that Company-5 would report adjusted earnings per share of $1.29.

94.     By the close of regular market trading that day, Company-5's stock price increased 12%—from a closing price of $77.22 on February 3, 2020 to a closing price of $86.52 on February 4, 2020.

95.     On February 4, 2020 at 9:31am EST—less than two hours after Company-5 reported its financial results—Westbrook began selling his Company-5 call options. By the close of regular market trading that day, Westbrook obtained a total realized and unrealized profit of $217,535 from his trading of Company-5 securities in connection with this earnings announcement.

96.     The options positions Westbrook established in Company-5 prior to this earnings announcement were large and risky. Westbrook's purchases of Company-5 call options accounted for approximately 25% of all Company-5 call options traded on February 3, 2020. In fact, going into the earnings announcement on February 4, 2020, Westbrook owned more Company-5 call options than any other market participant.

### III. Summary of Westbrook's Profits from Trading in the Hacked Companies

97.     Westbrook's participation in this scheme was highly lucrative. Westbrook obtained approximately $3.75 million in illicit profits by trading in the

securities of the Hacked Companies prior to the release of at least 14 earnings announcements while he knew, or recklessly disregarded, that the information he deceptively obtained from the Hacked Companies was material and nonpublic.

98. The following table summarizes Westbrook's trading in connection with those 14 earnings announcements:

| Issuer and Date of Earnings Announcement | Pre-Announcement Closing Equity Price | Post-Announcement Closing Equity Price | Equity Price % Change | Profit | Return |
|---|---|---|---|---|---|
| Company-1 1/30/2019 | $38.13 | $27.67 | -27.43% | $322,781 | 249% |
| Company-3 3/6/2019 | $86.46 | $90.22 | 4.35% | $236,492 | 48% |
| Company-2 5/8/2019 | $19.49 | $17.05 | -12.52% | $40,679 | 24% |
| Company-3 6/4/2019 | $98.10 | $95.15 | -3.01% | $146,667 | 21% |
| Company-2 8/8/2019 | $11.05 | $9.98 | -9.68% | $25,673 | 1% |
| Company-3 9/5/2019 | $95.41 | $109.41 | 14.67% | -$149,285 | -49% |
| Company-4 10/30/2019 | $94.84 | $117.93 | 24.35% | $1,398,436 | 538% |
| Company-2 11/6/2019 | $15.71 | $18.47 | 17.57% | -$144,724 | -58% |
| Company-3 12/5/2019 | $119.33 | $110.77 | -7.17% | -$39,629 | -1% |

| Issuer and Date of Earnings Announcement | Pre-Announcement Closing Equity Price | Post-Announcement Closing Equity Price | Equity Price % Change | Profit | Return |
|---|---|---|---|---|---|
| Company-5 2/4/2020 | $77.22 | $86.52 | 12.04% | $217,535 | 44% |
| Company-2 2/26/2020 | $11.94 | $12.07 | 1.09% | $14,639 | 74% |
| Company-3 3/4/2020 | $112.48 | $93.56 | -16.82% | $1,038,855 | 132% |
| Company-2 5/6/2020 | $6.19 | $8.03 | 29.73% | $310,485 | 39% |
| Company-2 7/29/2020 | $12.28 | $12.32 | 0.33% | -$4,279 | -18% |
| **Total Profits (Excluding Losses)** | | | | **$3,752,242** | **91%** |

## IV.    Westbrook Hacked into the Hacked Companies

99.    Forensic data, blockchain data, and other data establish that Westbrook hacked into the Hacked Companies to obtain their nonpublic earnings information.

100.    Westbrook's payment to and use of a VPN service provider ("VPN Service Provider-1") identifies Westbrook as the person who hacked into the Hacked Companies.

a.    On October 22, 2019, Westbrook, through a Bitcoin wallet he

controlled, sent a Bitcoin payment equal to approximately $36.93 to VPN Service Provider-1 for a yearly subscription for its VPN services.

b.  A subsequent email sent to one of the anonymous email accounts—Aleksandrdubois, which was used in the hacking of Company-1 and Company-4—confirmed that a yearly subscription to VPN Service Provider-1's VPN service commenced approximately twenty seconds after Westbrook sent that Bitcoin payment to VPN Service Provider-1.

c.  That same day, VPN Service Provider-1's VPN service was used from the same IP address to sign into (i) one of the anonymous email accounts (Harris.Slama) that was used in the hacking of Company-2 and Company-5 and (ii) an email account (LoraineRanos796[@]aol.com) ("LoraineRanos") that was the recovery email account for two of the anonymous email accounts (Aleksandrdubois and Barnesbainesbjorn) used in the hacking of the Hacked Companies.

d.  The next morning, VPN Service Provider-1's VPN service was used in the hack into Company-4's computer system described above.

e.　About two days later, on October 25, Westbrook began

purchasing call options in Company-4 in advance of its

earnings announcement.

101.　Moreover, Westbrook engaged in other conduct that further

establishes him as the hacker in this hack-to-trade scheme.

a.　During the Relevant Period, Westbrook used several VPN

services. Each of the hacks discussed above took place using

VPN services to which Westbrook subscribed. For example, on

or about December 24, 2018, Westbrook purchased a yearly

subscription to another VPN service provider ("VPN Service

Provider-2"). The next month, an IP address attributed to VPN

Service Provider-2 was used to access the Harris.Slama email

account and the LoraineRanos email account. And during the

Relevant Period, Westbrook had an active subscription to a

third VPN service provider ("VPN Service Provider-3"). IP

addresses attributed to VPN Service Provider-3 were used in

the hacking of Company-5. IP addresses attributed to VPN

Service Provider-3 were also used to access the

Barnesbainesbjorn account, which was used in the hacking of

Company-3.

b.    During the Relevant Period, Westbrook made payments to an online directory service provider and an online genealogy company. Both of those companies provide personal and family information that could be used to guess the answers to the security questions that employees at the Hacked Companies may have used to reset their passwords.

c.    Westbrook subscribed to at least five CAPTCHA[6] solving services. The self-service password reset portal software used by four of the five Hacked Companies allowed the companies to require CAPTCHA verification. CAPTCHA solving services would have helped Westbrook bypass verification requirements in his efforts to reset the passwords of the Hacked Companies' senior executives.

d.    Westbrook purchased at least five highly technical hacker manuals, including "The Hacker Playbook 3: Practical Guide to Penetration Testing" and "Tribe of Hackers: Cybersecurity Advice from the Best Hackers in the World."

---

[6] CAPTCHA is a type of security measure known as a challenge-response authentication. It helps protect an account holder from password decryption by completing a basic test that proves the account holder is human and not a computer trying to break into a password protected account.

e.  Westbrook opened over 50 email accounts, including anonymous email accounts hosted by overseas service providers known to be unreachable by law enforcement.

f.  Westbrook purchased a vulnerability scanner, which is a software tool designed to permit a user to test and exploit the security of web applications.

g.  Westbrook received email communications from online platforms known to sell hacking applications.

102.  Finally, Westbrook previously admitted that he possessed the knowledge and technical computing skill to engage in acts akin to hacking. While employed at a financial firm, Westbrook accessed and downloaded an entire database from a third-party vendor—at a time when Westbrook and his colleagues were not expected to access the database. When an internal investigation at the financial firm revealed that Westbrook had downloaded the database, he admitted that he wrote a computer script that enabled him to download all the data on the database overnight.

## V.  Westbrook's State of Mind and Efforts to Conceal His Conduct

103.  At all times relevant to this Complaint, Westbrook acted knowingly and/or recklessly in carrying out this scheme. He intended to hack into the

computer systems of the five Hacked Companies for the purpose of obtaining material nonpublic information.

104.   Westbrook traded profitably in the securities of the Hacked Companies using the material nonpublic information he deceptively obtained, and he knew or recklessly disregarded that this information was material and nonpublic.

105.   Westbrook repeatedly established large options positions in the Hacked Companies shortly before they were set to make their public earnings announcements. And those options positions were often out-of-the-money and/or were set to expire in the near term—increasing the risk that those options would expire worthless.

106.   In addition, Westbrook sought to conceal his conduct from detection in a variety of ways. This included:

  a. Using computer technology (such as VPN services) to hide his location;

  b. Using affirmative misrepresentations to pose as others in order to access the computer systems of the Hacked Companies;

  c. Deploying anonymous email accounts;

  d. Deleting emails in a senior executive's account to cover up his hacking in Company-4.

107.    Moreover, Westbrook received emails from a company that sells software to wipe evidence from devices. Those emails indicated that Westbrook had previously purchased this software.

108.    This evidence shows that Westbrook acted with the requisite scienter when he executed this fraudulent scheme and took efforts to conceal his conduct.

## VI.    Conclusion

109.    As detailed above, Westbrook executed a fraudulent hack-to-trade scheme. Westbrook deceptively obtained material nonpublic information from the Hacked Companies' computer systems and then used that information to trade profitably in the securities of the Hacked Companies in advance of their earnings announcements.

110.    In perpetuating that fraudulent scheme, Westbrook made material misrepresentations, affirmatively misrepresented himself and his identity, and employed a variety of deceptive and fraudulent devices, contrivances, artifices, practices, means, and acts in order to access the computer systems of five Hacked Companies and to obtain nonpublic information about the Hacked Companies' earnings.

111.    Westbrook did so for the purpose of using that information to trade in the securities of the Hacked Companies.

112.    And Westbrook did just that. Based on deceptively-obtained

information that he knew or recklessly disregarded was material and nonpublic, Westbrook purchased the Hacked Companies' securities and then sold them following the Hacked Companies' earnings announcements, obtaining illicit profits of approximately $3.75 million.

## CLAIM FOR RELIEF
### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder

113.   The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 112.

114.   By engaging in the conduct described above, the Defendant knowingly or recklessly, in connection with the purchase or sale of securities, directly or indirectly, by the use of means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange:

   a.  employed devices, schemes, or artifices to defraud;

   b.  made untrue statements of a material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

   c.  engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon any person.

115.   By engaging in the foregoing conduct, the Defendant violated, and unless enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court enter a Final Judgment:

## I.

Permanently restraining and enjoining Westbrook and his agents, servants, employees and attorneys and all persons in active concert or participation with any of them from violating, directly or indirectly, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(b) thereunder [17 C.F.R. §§ 240.10b-5(b)].

## II.

Ordering Westbrook to disgorge all illicit profits, avoided losses, or other ill-gotten gains he received, directly or indirectly, with prejudgment interest thereon, as a result of the violations alleged in this Complaint, pursuant to Sections 21(d)(3), 21(d)(5), and 21(d)(7) of the Exchange Act [15 U.S.C. §§ 78u(d)(3), 78u(d)(5), and 78u(d)(7)].

## III.

Ordering Westbrook to pay a civil penalty pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1] or, alternatively, to pay a civil penalty under

Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)].

## IV.

Granting any other and further relief this Court may deem just, equitable, or

necessary.

## JURY DEMAND

The Commission demands a trial by jury.

Dated:      New York, New York
             September 27, 2024

                      /s/ Russell J. Feldman

                      Joseph G. Sansone
                      Jorge Tenreiro
                      Alison R. Levine
                      Russell J. Feldman
                      Karolina Klyuchnikova
                      U.S. Securities and Exchange Commission
                      New York Regional Office
                      100 Pearl Street
                      Suite 20-100
                      New York, NY 10004-2616
                      212-336-9144 (Feldman)
                      FeldmanR@sec.gov

                      *Attorneys for Plaintiff*
                      *Securities and Exchange Commission*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | **Civil Action No.** |
| **Plaintiff,** | **DESIGNATION OF AGENT FOR SERVICE** |
| **-against-** | |
| **ROBERT B. WESTBROOK,** | |
| **Defendant.** | |

     Pursuant to Local Rule 101.1(f), because the Securities and Exchange Commission (the "Commission") does not have an office in this district, the United States Attorney for the District of New Jersey is hereby designated as eligible as an alternative to the Commission to receive service of all notices or papers in the captioned action.

Therefore, service upon the United States or its authorized designee, David Dauenheimer, Deputy Chief, Health Care Fraud Unit, United States Attorney's Office for the District of New Jersey, 970 Broad Street, Suite 700, Newark, NJ 07102, shall constitute service upon the Commission for purposes of this action.

Respectfully submitted,

/s/ Russell J. Feldman

Joseph G. Sansone
Jorge G. Tenreiro
Alison R. Levine
Russell J. Feldman
Karolina Klyuchnikova
U.S. Securities and Exchange Commission
New York Regional Office
100 Pearl Street
Suite 20-100
New York, NY 10004-2616
212-336-9144 (Feldman)
FeldmanR@sec.gov

*Attorneys for Plaintiff*
*Securities and Exchange Commission*

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Securities and Exchange Commission

**DEFENDANTS**

Robert B. Westbrook

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant **United Kingdom**
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Joseph G. Sansone, Jorge G. Tenreiro, Alison R. Levine, Russell J. Feldman, and Karolina Klyuchnikova
Securities and Exchange Commission
100 Pearl Street, Suite 20-100
New York, NY 10004-2616 (212) 336-1100

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [x] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

PERSONAL INJURY
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**PRISONER PETITIONS**

Habeas Corpus:
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

Other:
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [x] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5

Brief description of cause:
Securities fraud

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____ DOCKET NUMBER _____

DATE: 09/27/2024

SIGNATURE OF ATTORNEY OF RECORD: *Russell J. Feldman*

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

# Jamel K. Semper

**United States District Judge for the District of New Jersey**

## Staff Information

Chambers: 973-645-3493

Courtroom Deputy: Shea Smith, 973-776-7745

Court Reporter: Laurie Engemann, 973-776-7714

Courtroom: PO 03

**Judicial Preferences**

**Communications with Chambers**: Calls to chambers are permitted only in urgent situations that require immediate attention. All other communication with chambers must be filed in a letter on the docket via CM/ECF.

**Communications with Law Clerks:** Judge Semper does not permit communications with his law clerks on any substantive matters.

**Law Clerk Applications:** Applicants are directed to apply via OSCAR only. Emailed or mailed applications will not be reviewed. Calls to chambers regarding applications are not permitted. Letters of recommendation must be submitted via OSCAR.

**CM/ECF Filings**: Pleadings, motions, letters, and proposed jury charges must be filed in searchable PDF format. Supporting documents, such as exhibits, may be filed in non-searchable PDF format.

**Courtesy Copies:** By request of the Court only.

### Civil Jury Trial Preferences

**Motions to Dismiss**: Parties must explicitly cite the elements of a claim and how the allegations do or do not give rise to an entitlement of relief.  Conclusory allegations unsupported by facts and details will be deemed irrelevant to the Court's analysis.

**Motions for Summary Judgment**: Parties may not file an early motion for summary judgment (i.e., prior to the close of fact discovery) without leave from either Judge Semper or the Magistrate Judge assigned to the case. When seeking leave from Judge Semper, the moving

party must first submit a letter, no longer than three pages, summarizing the party's substantive argument. Within one week of the moving party's letter, the party opposing the motion must also submit a letter, no longer than three pages, summarizing the party's substantive argument in opposition.

**Proposed Orders:** If any relief is being sought, the CM/ECF filing must be accompanied by a proposed order in searchable PDF format.

**Extensions of Time to a Deadline:** All requests for adjournments or extensions of time, other than those pursuant to Local Rule 7.1(d)(5), must comport with Local Rule 6.1 and include: (1) the date or dates sought to be extended; (2) the number of previous requests for extensions and the Court's ruling; (3) the reason for the current request; and (4) whether the adversary consents and, if not, the reason given by the adversary for refusing to consent. If the requested extension affects any other scheduled dates/deadlines, the request must list the proposed change for all such other dates/deadlines.  Adjournment requests should be made at least three business days before a scheduled hearing or conference. The party seeking an adjournment should attempt to gain the consent of his or her adversary before filing said request by letter. In any such letter, the party should set forth the date of the hearing or conference, the basis for the adjournment request, whether the request is being made with consent, and the length of adjournment being sought. Absent exigent circumstances, adjournment requests made less than three days prior to the deadline will not be granted.

***Pro se* Filings:** All filings by pro se litigants shall be mailed to or filed directly with the Clerk's Office. Documents mailed to the courthouse must be addressed to the Clerk's Office, not Judge Semper.

**Briefs (compliance with local rule):**  Judge Semper requires strict compliance with the length limitations and format requirements for briefs set forth in L. Civ. R. 7.2 (and any amendments and modifications thereto). Judge Semper enforces the provision in L. Civ. R. 7.2(b) that mandates that a litigant get special permission before submitting papers that are not in compliance.

**Sur-replies**: Pursuant to L. Civ. R. 7.1(d)(6), no sur-replies are permitted without leave of the Court. Any request to file a sur-reply must be accompanied by an exhibit consisting of the proposed sur-reply.

Sample Final Pretrial Order

## Civil Jury Trial Preferences

**A.    Motions in Limine**

Any motions in limine must be submitted to the Court at least four weeks before the start of trial. Any responsive papers shall be submitted at least three weeks before the start of trial.

**B.    Joint Submissions:**

At least three weeks before trial, counsel for all parties must confer and submit joint versions of the items listed below both on the docket and via USB containing Word versions of the joint submissions:

1. Statement of the Case
2. Jury Charges
3. Voir Dire Questions
4. Verdict Sheet

If the parties disagree as to the contents of any of the joint submissions, such disagreements must be memorialized in the submission via track changes or highlighting.

**C.    Exhibit Indices**

At least three weeks before the start of trial, counsel for all parties must submit an exhibit index. The list must identify the witness through which each exhibit will be introduced. Counsel must also denote exhibits that will be marked for identification but not moved into evidence.

**D.    Exhibits**

All trial exhibits should be submitted to the Court via USB drive. The parties should also submit two hard copies of exhibits to the Court.

**E.    Deposition Designations**

If a party anticipates introducing deposition testimony at trial, then such deposition designations, and any evidentiary objections thereto, must be submitted to the Court no later than two weeks before trial. A party's failure to comply with this rule may result in the Court precluding a party from using deposition testimony at trial. Thus, the Court strongly encourages the parties to meet-and-confer on deposition designations and objections with sufficient time to comply with this rule.

**F.    Settlement After Jury Selection**

If an action is settled after the jury has been summoned or during trial, the parties are reminded that the Court is likely to assess the costs of empaneling the jury on the parties and/or their attorneys. *See* L. Civ. R. 47.2. A jury is considered summoned for trial as of noon on the business day immediately preceding the designated date of the trial. *Id.* Taxation of costs in this regard coexists with the Court's inherent authority to assess costs against a party or attorney as a sanction for misconduct. *See Eash v. Riggins Trucking Inc.,* 757 F.2d 557, 567-68 (3d Cir. 1985)

(en banc) (explaining that it is within the inherent authority of the court to impose a reasonable sanction after notice and an opportunity to be heard).

# LOCAL CIVIL AND CRIMINAL RULES

## OF THE

## UNITED STATES DISTRICT COURT

## FOR THE

## DISTRICT OF NEW JERSEY



**With Revisions as of January 1, 2025**

# TABLE OF CONTENTS

INTRODUCTION - 1984 Revision

FOREWORD - 1997 Revision

## Table of Contents

**Civ. RULE 1.1 RULES OF PROCEDURE; SCOPE OF THESE RULES** ......................................1

**Civ. RULE 1.2 DEFINITIONS** ...............................................................................................1

**Civ. RULE 4.1 SERVICE OF PROCESS** ................................................................................2

**Civ. RULE 5.1 SERVICE AND FILING OF PLEADINGS AND OTHER PAPERS** ......................2

**Civ. RULE 5.2 ELECTRONIC SERVICE AND FILING DOCUMENTS** ....................................2

**Civ. RULE 5.3 CONFIDENTIALITY ORDERS AND RESTRICTING PUBLIC ACCESS UNDER CM/ECF** ............................................................................................................10

**Civ. RULE 6.1 EXTENSIONS OF TIME AND CONTINUANCES** ...............................................16

**Civ. RULE 7.1 APPLICATION AND MOTION PRACTICE** ......................................................16

**Civ. RULE 7.1.1 DISCLOSURE OF THIRD-PARTY LITIGATION FUNDING** ............................19

**Civ. RULE 7.2 AFFIDAVITS AND BRIEFS** ...........................................................................19

**Civ. RULE 8.1 PLEADING DAMAGES** .................................................................................20

**Civ. RULE 9.1 SPECIAL MATTERS - REVIEW OF SOCIAL SECURITY MATTERS** ............20

**Civ. RULE 9.2 SPECIAL MATTERS - ADMIRALTY AND MARITIME RULES FOR THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY** ....................23

**L. Civ. R. 9.3 SPECIAL MATTERS - LOCAL PATENT RULES FOR THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY** .......................................28

**Civ. RULE 10.1 FORM OF PLEADINGS** ...............................................................................44

**Civ. RULE 11.1 SIGNING OF PLEADINGS** ...........................................................................45

**Civ. RULE 11.2 - VERIFICATION OF PETITIONS AND INITIAL CERTIFICATIONS** ...........45

**Civ. RULE 11.3 APPLICATIONS FOR FED. R. CIV. P. 11 SANCTIONS** ...............................45

**Civ. RULE 12.1 DEFENSES AND OBJECTIONS: WHEN AND HOW PRESENTED** ...............45

**Civ. RULE 12.2 MOTION TO DISMISS FEWER THAN ALL CLAIMS** ....................................45

**Civ. RULE 15.1 MOTIONS TO FILE AMENDED PLEADINGS** ...............................................45

**Civ. RULE 16.1 PRETRIAL CONFERENCES; SCHEDULING; CASE MANAGEMENT** ........46

**Civ. RULE 24.1 NOTICE OF CLAIM OF UNCONSTITUTIONALITY** ......................................48

**Civ. RULE 24.2 STATUTORY COURT** .................................................................................49

**Civ. RULE 26.1 DISCOVERY** ..............................................................................................49

**Civ. RULE 27.1 DEPOSITIONS FOR USE IN A FOREIGN COUNTRY** .......................................51

**Civ. RULE 28.1 LETTERS ROGATORY** ...............................................................................51

**Civ. RULE 33.1 INTERROGATORIES** ..................................................................................51

**Civ. RULE 34.1 REQUESTS FOR PRODUCTION OF DOCUMENTS** ...................................52

**Civ. RULE 36.1 REQUESTS FOR ADMISSION** ....................................................................52

**Civ. RULE 37.1 DISCOVERY MOTIONS** .............................................................................52

**Civ. RULE 37.2 APPLICATIONS FOR FED. R. CIV. P. 37 SANCTIONS** .............................53

**Civ. RULE 38.1 JURY DEMAND** .........................................................................................53

**Civ. RULE 40.1 ALLOCATION AND ASSIGNMENT OF CASES** .........................................53

**Civ. RULE 41.1 DISMISSAL OF INACTIVE CASES** ............................................................54

**Civ. RULE 42.1 CONSOLIDATION OF CASES** ....................................................................54

**Civ. RULE 44.1 SEAL** ........................................................................................................55

**Civ. RULE 47.1 PETIT JURORS** ..........................................................................................55

**Civ. RULE 47.2 ASSESSMENT OF JURY COSTS** ...............................................................55

**Civ. RULE 48.1 CIVIL JURY** .............................................................................................55

**Civ. RULE 48.2 TAKING OF CIVIL VERDICT** ...................................................................55

**Civ. RULE 52.1 ORAL OPINIONS** ......................................................................................55

**Civ. RULE 54.1 COSTS** .....................................................................................................56

**Civ. RULE 54.2 COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES** ...................................................................................................................57

**Civ. RULE 54.3 PREPAYMENT OF CLERK'S AND MARSHAL'S FEES** ...............................58

**Civ. RULE 56.1 SUMMARY JUDGMENT MOTIONS** ..........................................................58

**Civ. RULE 58.1 ENTRY OF JUDGMENTS AND ORDERS** ...................................................59

**Civ. RULE 65.1 APPLICATIONS FOR EMERGENCY RELIEF** ............................................59

**Civ. RULE 65.1.1 SECURITY AND SURETIES** ...................................................................60

**Civ. RULE 66.1 RECEIVERSHIPS** ......................................................................................60

**Civ. RULE 67.1 DEPOSIT IN COURT AND DISBURSEMENT OF COURT FUNDS** ...............61

**Civ. RULE 69.1 MARSHAL'S VOUCHERS** .........................................................................63

**Civ. RULE 72.1 UNITED STATES MAGISTRATE JUDGES** .................................................63

**Civ. RULE 73.1 CIVIL TRIALS BY CONSENT BEFORE UNITED STATES MAGISTRATE JUDGES** ...........................................................................................................................66

**Civ. RULE 77.1 COURT SESSION** ......................................................................................67

**Civ. RULE 78.1 MOTION DAYS AND ORAL ARGUMENT** ...................................................67

**Civ. RULE 79.1 CUSTODY OF ORIGINAL PAPERS, RECORDS AND EXHIBITS** .................. 67

**Civ. RULE 79.2 BRIEFS PART OF PUBLIC RECORD** ..................................................... 68

**Civ. RULE 79.3 ENTRY OF SATISFACTION OF JUDGMENTS AND DECREES** ................... 68

**Civ. RULE 79.4 FILING OF MANDATE** ...................................................................... 68

**Civ. RULE 79.5 CLERK TO MAINTAIN LIST OF OFFICIAL NEWSPAPERS** ...................... 68

**Civ. RULE 80.1 TRANSCRIPTS** ............................................................................... 68

**Civ. RULE 81.1 NATURALIZATION** .......................................................................... 69

**Civ. RULE 81.2 PETITIONS FOR *HABEAS CORPUS* AND MOTIONS UNDER 28 U.S.C. §
2255 IN   NON-DEATH PENALTY CASES** ................................................................... 69

**Civ. RULE 81.3 PETITIONS FOR *HABEAS CORPUS* AND MOTIONS UNDER 28 U.S.C. §
2255 IN DEATH PENALTY CASES** ............................................................................. 70

**Civ. RULE 83.1 ADOPTION AND AMENDMENT OF LOCAL RULES** ............................... 72

**Civ. RULE 83.2 RELAXATION OR MODIFICATION OF LOCAL RULES** ........................... 72

**Civ. RULE 83.3 PROCEDURE IN THE ABSENCE OF RULE OR STATUTORY PROVISION**
.................................................................................................................................. 72

**Civ. RULE 85.1 TITLE** ........................................................................................... 73

**Civ. RULE 101.1 ADMISSION OF ATTORNEYS** ......................................................... 73

**Civ. RULE 102.1 WITHDRAWAL OF APPEARANCE** .................................................... 77

**Civ. RULE 103.1 JUDICIAL ETHICS AND PROFESSIONAL RESPONSIBILITY** ................ 77

**Civ. RULE 104.1 DISCIPLINE OF ATTORNEYS** ......................................................... 77

**Civ. RULE 105.1 EXTRAJUDICIAL STATEMENTS** ...................................................... 86

**Civ. RULE 201.1 ARBITRATION** ............................................................................. 87

**Civ. RULE 301.1 MEDIATION** ................................................................................. 92

**Civ. RULE 401.1 RESTRICTIONS OF ALL BROADCASTING, PHOTOGRAPHING, VIDEO
OR VOICE RECORDING** .......................................................................................... 94

**CIV. RULE 501.1 POSSESSION AND USE OF ELECTRONIC EQUIPMENT** ..................... 95

**Cr. Rule 1.1 SCOPE AND APPLICABILITY** ............................................................... 98

**Cr. RULE 5.1 UNITED STATES MAGISTRATE JUDGES** ............................................. 99

**Cr. RULE 7.1 GRAND JURORS** ............................................................................. 100

**Cr. RULE 12.1 MOTIONS UNDER FED. R. CRIM. P. 12** ............................................ 100

**Cr. RULE 18.1 ASSIGNMENT OF CRIMINAL CASES** ............................................... 100

**Cr. RULE 24.1 SELECTION AND IMPANELMENT OF TRIAL JURORS** .......................... 100

**Cr. RULE 32.1 PROBATION** ................................................................................. 101

**Cr. RULE 41.1 MOTIONS UNDER FED. R. CRIM. P. 41** ............................................ 101

**Cr. RULE 44.1 FORMAL WRITTEN APPEARANCE - CRIMINAL MATTERS** .................... 101

**Cr. RULE 46.1 RELEASE FROM CUSTODY** .............................................................. 102

**Cr. RULE 53.1 CONDUCT IN THE COURTROOM** .................................................. 104

**Cr. RULE 55.1 RECORD OF PROCEEDINGS** ........................................................... 104

**Cr. RULE 55.2 CUSTODY AND DISPOSITION OF EXHIBITS** ............................... 105

**Cr. RULE 58.1 PROCEEDINGS IN MISDEMEANOR AND PETTY OFFENSE CASES** ........ 105

**Cr. RULE 60.1 TITLE** ............................................................................................. 106

**Cr. RULE 101.1 EXTRAJUDICIAL STATEMENTS IN CRIMINAL PROCEEDINGS** ........... 106

COURT'S APPENDICES

A1.    Client's & Supervising Attorney's Authorizations for Appearance by Law Student
A2.    Form for Designating Compliance with the Student Practice Rule
B.    Criminal Case Appearance Form
C.    Affidavit by Owner of Cash Security
D1.    Order Granting Motion to Deposit Sum of Money with the Court into the Court Registry
        Investment System Liquidity Fund
D2.    Order Granting Motion to Deposit Sum of Money with the Court into the Court Registry
        Investment Disputed Ownership Fund
E.    List of Petty Offenses and Minimum Fines Applicable Thereto Pursuant to L.Cr.R. 58.1(c)
F.    Transcript Rates
G.    Official Newspapers
H.    Appointment of Attorneys in *Pro Se* Civil Actions
I.    Plan for the Composition, Administration and Management of the Panel of Private Attorneys
        Under the Criminal Justice Act
J.    Plan for Prompt Disposition of Criminal Cases
K.    Schedule of Fees
L.    Application for Extension of Time to Reply
M.    Guidelines for Arbitration
N.    RESERVED
O.    Optional RICO Case Order
P.    *In Forma Pauperis* Affidavit and Order
Q.    Guidelines for Mediation
R.    Guidelines for Litigation Conduct
S.    Confidentiality Order
T.    RESERVED
U.    Form of Index

INTRODUCTION - 1984 Revision

The General Rules of the United States District Court for the District of New Jersey have undergone a complete revision for the first time in many years. The catalyst for this project was a request in the autumn of 1983 from then Chief Judge Collins J. Seitz of the Court of Appeals for the Third Circuit, who requested that we assess our local rules to determine whether there was strict compliance with the Federal Rules of Civil, Criminal and Appellate Procedure. To that end, the Court asked the United States District Court Lawyers Advisory Committee to undertake the evaluation and, in addition, advise the Court as to those rules which the Committee felt could be revised in order to simplify practice before the United States District Court as well as comply with the spirit of Rule 1 of the Federal Rules of Civil Procedure requiring that "rules shall be construed to secure the just, speedy, and inexpensive determination of every action."

A committee of Court officials was appointed to work with the Lawyers Advisory Committee. The full Committee was composed of the following:

Donald A. Robinson, Esquire, Chairman
Jonathan L. Goldstein, Esquire
Joseph H. Kenney, Esquire
Joseph H. Markowitz, Esquire
William J. O'Shaughnessy, Esquire
Honorable John F. Gerry, U.S.D.J.
Honorable Dickinson R. Debevoise, U.S.D.J.
Honorable John W. Bissell, U.S.D.J.
Honorable Jerome B. Simandle, U.S.M.J.
Allyn Z. Lite, Esquire, Clerk of the Court

The Committee notified the bar of its project and sought comments as to which rules the bar wished to see modified and what changes should be made. The Committee considered the responses from the bar and presented to the Court a proposed new rule book. The Conference of Judges of the United States District Court tentatively adopted the rules pending their initial publication and further comment from the bar. Unless such comment creates the need for further major revision, it is expected that the new rules will be effective on October 1, 1984.

The Court wishes to extend its appreciation to the members of the Lawyer's Advisory Committee for their exceptional efforts in bringing this project to completion. An undertaking of this magnitude simply would not have been possible without the experience, concern, sensitivity and professionalism of the members of the Committee. The entire bar is in their debt.

CLARKSON S. FISHER

Chief Judge

For the Court

Newark, New Jersey
October 1, 1984

FOREWORD - 1997 Revision

Pursuant to Congressional mandate (P.L. 103-317), this Court, during the past six months, has divided its General Rules into Local Civil Rules and Local Criminal Rules, renumbered to correspond to their counterparts in the Federal Rules of Civil and Criminal Procedure. Those Local Rules without a counterpart were assigned numbers in the 100s (court administration), 200s (arbitration), 300s (mediation) and 400s (medical coverage). This Court and the Lawyers Advisory Committee appointed a special subcommittee to undertake this project, comprised of Judge John W. Bissell, Magistrate Judge John J. Hughes, Rosemary Alito, Esq., Allyn Z. Lite, Esq., and Daniel R. Guadalupe, Esq. Gann Law Books of Newark, N.J., provided invaluable assistance in generating both the drafts reviewed by the subcommittee and this Court and the final product which the Court's Board of Judges has adopted. Gann's important contributions also include the Conversion Tables, Source References and Renumbering Committee's Comments which accompanied the drafts of the renumbered Local Civil and Criminal Rules.

After publication of the final draft in February 1997 in the New Jersey Law Journal and the New Jersey Lawyer, all comments from the bar and the public were considered and any final modifications incorporated into the present product which the Court adopted, effective April 1, 1997. The Board of Judges renews its thanks to the Lawyers Advisory Committee, the Renumbering Committee and Gann Law Books for their significant contributions to the important project of renumbering the Local Rules of this Court.


ANNE E. THOMPSON

Chief Judge


Trenton, New Jersey

April 1, 1997

# LOCAL CIVIL RULES

## Civ. RULE 1.1 RULES OF PROCEDURE; SCOPE OF THESE RULES

(a) The following Rules supplement the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure and the Supplemental Rules of Practice for certain Admiralty and Maritime Claims, and are applicable in all proceedings when not inconsistent therewith.

(b) These Rules shall be considered as rules for the government of the Court and conduct of causes, and shall be construed consistent with the Civil Justice Reform Act of 1990 to secure a just determination, simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay.

(c) Any references to specific statutes, regulations and rules in these Rules reflect the enumeration of those statutes, regulations and rules as of April 1, 1997 and are intended to incorporate by reference subsequent enactments and promulgations governing the same subject matter.

## Civ. RULE 1.2 DEFINITIONS

The following definitions apply to terms used throughout these Rules unless specifically employed otherwise in any particular Rule:

"Attorney General" means the Attorney General of the United States.

"Chief Judge" means the Chief Judge of this Court or the Chief Judge's authorized designee.

"Clerk" means the Clerk of this Court or an authorized Deputy Clerk.

"Code of Judicial Conduct" means the Code of Judicial Conduct of the American Bar Association.

"Court" means the United States District Court for the District of New Jersey.

"District" means the District of New Jersey, the boundaries of which include the entire State of New Jersey.

"District Judge" means a United States District Judge of this Court.

"Government" means the Government of the United States of America.

"Governmental party" means the United States of America, any state, commonwealth or territory, any county, municipal or public entity, or any agency, department, unit, official or employee thereof.

"IRS" means the Internal Revenue Service of the Department of the Treasury, United States of America.

"Judge" means either a District Judge or a Magistrate Judge sitting in this District.

"Magistrate Judge" means a United States Magistrate Judge sitting in this District.

"Marshal" means the United States Marshal for this District, a Deputy Marshal or other authorized designee.

"State" means the State of New Jersey or, if specifically, so indicated, any other state of the United States of America.

"Supreme Court" means the Supreme Court of the United States.

"Third Circuit" means the United States Court of Appeals for the Third Circuit.

"United States Attorney" means the United States Attorney for the District of New Jersey or an authorized Assistant United States Attorney.

## Civ. RULE 4.1 SERVICE OF PROCESS

The Clerk is authorized to sign and enter orders specially appointing a United States Marshal, Deputy United States Marshal, or other person or officer to serve process when such appointments are required or requested pursuant to Fed. R. Civ. P. 4(c).

Amended March 9, 2007.

## Civ. RULE 5.1 SERVICE AND FILING OF PLEADINGS AND OTHER PAPERS

(a) Service of all papers other than the initial summons and complaint shall be made in the manner specified in Fed. R. Civ. P. 5(b).

(b) Except where otherwise provided by these Rules (or the Federal Rules of Civil Procedure), proof of service of all papers required or permitted to be served shall be filed in the Clerk's office promptly and in any event before action is taken thereon by the Court or the parties. The proof shall show the date and manner of service and may be by written acknowledgment of service, by certificate of a member of the bar of this Court, by affidavit of the person who served the papers, or by any other proof satisfactory to the Court, including, without limitation, any document complying with 28 U.S.C. § 1746. Failure to make the required proof of service does not affect the validity of the service; the Court may at any time allow the proof of service to be amended or supplied unless it clearly appears that to do so would result in material prejudice to the substantive rights of any party.

(c) Except in an emergency, no papers shall be left with or mailed to a Judge for filing, but all pleadings shall be filed with the Clerk of the Court.

(d) When papers are filed, the Clerk shall endorse thereon the date and time of filing.

(e) Parties shall furnish to the Clerk forthwith all necessary copies of any pleading, judgment or order, or other matter of record in a cause, so as to permit the Clerk to comply with the provisions of any statute or rule. Plaintiff or plaintiff's attorney, upon filing a complaint, and defendant or defendant's attorney, upon filing a notice of removal pursuant to 28 U.S.C. § 1446, shall simultaneously file with the Clerk a completed civil cover sheet in addition to any documents required to be filed under the Federal Rules of Civil Procedure, the Local Civil Rules and/or 28 U.S.C. § 1446(a).

(f) Any papers received by the Clerk without payment of such fees as may be fixed by statute or by the Judicial Conference of the United States for the filing thereof shall be marked "received" and the date and time of receipt shall be noted thereon.

Amended: March 14, 2001; June 19, 2013; April 23, 2024.

## Civ. RULE 5.2 ELECTRONIC SERVICE AND FILING DOCUMENTS

Papers served and filed by electronic means in accordance with procedures promulgated by the Court are, for purposes of Federal Rule of Civil Procedure 5, served and filed in compliance with the local civil and criminal rules of the District of New Jersey.

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**
**ELECTRONIC CASE FILING POLICIES AND PROCEDURES**

1.      Definitions.

(a)      "Document" shall include pleadings, motions, briefs, memoranda, exhibits, certifications, declarations, affidavits, papers, orders, notices, and any other filing by or to the Court.

(b)      "Case Management/Electronic Case Filing" System (ECF) refers to the Court's automated system, developed for the Federal Judiciary by the Administrative Office of the United States Courts, that receives and stores documents filed in electronic form.

(c)      "ECF Filing User" is an attorney who has a Court-issued login and password to file documents electronically.

(d)      "Notice of Electronic Filing" (NEF) is a notice automatically generated by the Electronic Filing System at the time a document is filed with the system, setting forth the time of filing, the name of the party and attorney filing the document, the type of document, the text of the docket entry, the name of the party and/or attorney receiving the notice, and an electronic link (hyperlink) to the filed document, which allows recipients to retrieve the document automatically.

(e)      "Public Access to Court Electronic Records" (PACER) is an automated system that allows an individual to view, print, and download Court docket information over the internet.

(f)      "Paper Filing" is submitting a document in hard copy on paper.

(g)      "Pay.gov" is an electronic credit card payment system established by the United States Department of Treasury.

(h)      "Portable Document Format" (PDF).  A document created with a word processor, or a paper document that has been scanned, must be converted to portable document format to be filed electronically with the Court. Converted files contain the extension ".pdf."  PDF documents should be text searchable and, at a minimum 400 dpi.

(i)      "Procedures" refers to these Electronic Case Filing Policies and Procedures.

(j)      "Proposed Order" is a draft document submitted by an attorney for a Judge's signature.

(k)      "Technical Failure" is defined as a malfunction of Court-owned/leased hardware, software, and/or telecommunications facility which results in the inability of an ECF Filing User to submit a filing electronically. Technical Failure does not include malfunctioning of an ECF Filing User's equipment.

2.      Actions Subject to Electronic Case Filing.

All civil, criminal, miscellaneous cases and documents filed in this Court, will be entered into the Court's ECF System in accordance with these Procedures. Except as expressly provided in these Procedures, and in exceptional circumstances, all documents including Complaints and Notices of Removal shall be filed electronically. In a case removed to the Court, the removing party shall file electronic copies of all documents previously filed in state court.  Documents submitted as a Paper Filing must be accompanied by a CD containing the same documents in PDF.  All individual PDF documents must be no larger than the Court's file size limitations as found on the Court's website at www.njd.uscourts.gov.

3.      Initial Documents.

Complaints and Notices of Removal are to be filed electronically.  Initiating pleadings in cases subject to sealing by statute (e.g., *qui tam* or social security) shall be filed as a Paper Filing.

In criminal cases, the indictment, information, or complaint, including any superseders, warrants for arrest or summons, shall be filed as a Paper Filing.

4.      Eligibility, Registration, Passwords.

Attorneys  - The following attorneys are eligible to register as ECF Filing Users: (a) all attorneys admitted to the Bar of this Court, including attorneys authorized to represent the United States; (b)  out-of-state attorneys who represent a party in an action transferred to this Court pursuant to an Order issued by the Judicial Panel on Multidistrict Litigation;[1] (c) out-of-state attorneys who are retained to represent defendants in criminal cases. An attorney shall register as an ECF Filing User by completing the prescribed registration form and submitting it to the Clerk.

When registering as an ECF Filing User, an attorney is certifying that he/she has completed the requirements as imposed by the Court.  After verification, the ECF Filing User will receive electronic notification of the user login and password.  An ECF Filing User shall protect the security of the user's password and immediately notify the Court if the ECF Filing User suspects that the password has been compromised.  No person other than the ECF Filing User and his/her authorized agent may use the login and password.  The registration form and training requirements are available on the Court's website at www.njd.uscourts.gov.

An ECF Filing User shall promptly modify his/her contact information by accessing "Maintain Your Account" under Utilities in the ECF System, if there is a change in personal data, including name, e-mail address, telephone number, etc., as required under Local Civil Rule 10.1.  Other individuals who receive NEF's, such as *pro hac* vice counsel, shall promptly submit modifications of his/her contact information by notifying the Court by e-mail to ecfhelp@njd.uscourts.gov.

The E-Filing Registration Form includes a field for the ECF Filing User's e-mail address.  This e-mail address is essential in order to receive Notices of Electronic Filing.  It can be the User's business or personal e-mail address.  It can also be an e-mail address for another person designated to receive these Notices.

*Pro Se* Parties - A party who is not represented by counsel must file documents with the Clerk as a Paper Filing.

A *Pro Se* party who is not incarcerated may request to receive filed documents electronically upon completion of a "Consent & Registration Form to Receive Documents Electronically."  The form is available on the Court's website at www.njd.uscourts.gov.

5.      Consequences of Electronic Filing.

Electronic transmission of documents to the ECF System in accordance with these Procedures, together with the transmission of a NEF from the Court, constitutes filing of the document for all purposes of the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure, and the Local Civil or Criminal Rules of this Court, and constitutes entry of the document on the docket kept by the Clerk under Federal Rules of Civil Procedure 58 and 79 and Federal Rules of Criminal Procedure 49 and 55.

---

[1] Pursuant to the General Rules of the Judicial Panel on Multidistrict Litigation, any attorney of record in any action transferred under 28 U.S.C. §1407 may continue to represent his or her client in any district court of the United States to which such action is transferred; therefore, parties are not required to obtain local counsel in the district to which such action is transferred.

When a document has been filed electronically, the official record of that document is the electronic recording as stored by the Court on the ECF System.  A document filed electronically is deemed filed on the date and time stated on the NEF from the Court.

Electronic filing must be completed before midnight Eastern Standard Time in order to be considered timely filed that day. In accordance with Rule 6(d) of the Federal Rules of Civil Procedure and Rule 45(c) of the Federal Rules of Criminal Procedure, service by electronic means is treated the same as service by mail for the purposes of adding three (3) days to the prescribed period to respond.

6.    Entry of Court Orders and Related Papers.

All orders, decrees, judgments, and proceedings entered or issued by the Court will be filed in accordance with these Procedures, and such filing shall constitute entry on the docket kept by the Clerk under Federal Rules of Civil Procedure 58 and 79 and Federal Rules of Criminal Procedure 49 and 55.

Orders will be filed electronically.  An order filed electronically signed with an s/ shall have the same force and effect as if the order had a handwritten signature.

Routine orders may be granted by a text-only docket entry for which a NEF will be generated.  In such cases, no PDF document will be issued, and the text-only entry shall constitute the only order on the matter.

A Proposed Order accompanying a motion should be submitted as an electronic attachment to the motion.  Any other type of Proposed Order should be submitted in accordance with the procedure for a "Proposed Order" as found on a list of Judicial Preferences which can be accessed on the Court's website at www.njd.uscourts.gov.

7.    Notice of Court Orders and Judgments.

Immediately upon the entry of an order or judgment in an action, the Clerk will transmit to all ECF Filing Users in the case, a NEF.  Electronic transmission of the NEF constitutes the notice required by Federal Rules of Civil Procedure 77(d) and Federal Rules of Criminal Procedure 49(c).

8.    Attachments and Exhibits.

An ECF Filing User shall submit in electronic form all documents referenced as exhibits or attachments, including briefs, in accordance with the Court's requirements found on the website at www.njd.uscourts.gov, including file size limitations contained therein, unless otherwise ordered by the Court.  An ECF Filing User shall submit as exhibits or attachments only those excerpts of the referenced documents that are directly germane to the matter under consideration by the Court.  Excerpted materials must be clearly and prominently identified as such.  The Court may require parties to file additional excerpts or the complete document.

9.    Courtesy Copies

In addition to the electronic filing of all motion papers, including briefs, in support of or in opposition to a motion, the ECF Filing User shall submit forthwith to the Judge's chambers at least one courtesy copy of each filed paper or brief in paper form without a CD, unless otherwise directed by the judicial officer.  To determine the number of copies the judicial officer requires, parties should refer to the Judicial Preferences list, which can be accessed on the Court's website at www.njd.uscourts.gov. These documents shall be clearly marked as courtesy copies and mailed or delivered directly to chambers.

10.     Sealed Documents.

(a)     Civil Documents.  Documents, subject to sealing, must be submitted electronically and in compliance with Local Civil Rule 5.3.

Unless otherwise provided by federal law, nothing may be filed under seal unless an existing order so provides or Local Civil Rule 5.3(c)(3) is complied with.  FAILURE TO COMPLY WITH LOCAL CIVIL RULE 5.3 MAY RESULT IN A WAIVER OF ANY OTHERWISE VALID BASIS FOR SEALING AND MAY RESULT IN THE DOCUMENT IN ISSUE BECOMING PUBLICLY AVAILABLE.

(b)     Criminal Documents.  Documents subject to sealing must be submitted as a Paper Filing, in an envelope clearly marked "sealed," and shall be accompanied by a CD containing the document in PDF.  A motion to file a document under seal, and the order of the Court authorizing the filing of documents under seal,  may be filed electronically, unless prohibited by law.  A paper copy of the sealing order must be attached to the documents under seal and be delivered to the Clerk.

(c)     Sexually explicit materials. Sexually explicit material(s) and any other material(s) that contain(s) inappropriate content for public access on the ECF System must be filed under seal until the Court determines under Federal Rule of Civil Procedure 5.2(d), Federal Rule of Criminal Procedure 49.1(d) and Local Civil Rule 5.3(c)(6) whether the material(s) should remain under seal.

11.     Exceptions to Electronic Filing.

(a)     Permissive Exceptions

A party may move for permission to serve and file as a Paper Filing documents that cannot reasonably be scanned.

(b)     Mandatory Exceptions

The following documents are excluded from the ECF System and shall be filed solely as a Paper Filing:

(1) Transcripts of jury selection/*voir dire*

(2) Grand Jury Matters:

The following documents are examples of grand jury matters:

    1) Minute sheets of swearing in and impanelment;

    2) Grand jury returns;

    3) Voting slips;

    4) Motions to quash subpoenas and orders ruling on them;

    5) Motions to enforce subpoenas and orders ruling on them;

    6) Motions for immunity and orders ruling on them;

    7) Motions for appointment of counsel and orders ruling on them.

(3) Warrants Issued:

The following are examples of types of warrants issued:

    1)     Seizure warrants;

2)      Search warrants;

3)      Pen registers;

4)      Wire tap orders;

(4)      Sentencing Memoranda should be submitted directly to chambers.

(5)      Initiating pleadings in cases subject to sealing by statute (e.g., *qui tam*)

12.    Signatures.

(a)      Attorney Signatures. The user login and password required to submit documents to the ECF System serve as the ECF Filing User's signature on all electronic documents filed with the Court for purposes of Federal Rules of Civil Procedure 11, all other Federal Rules of Civil Procedure, Federal Rules of Criminal Procedure, and the Local Civil and Criminal Rules of this Court, and any other purpose for which a signature is required in connection with proceedings before the Court.

An electronically filed document, or a document submitted on CD, and in compliance with Local Civil Rules 10.1 and 11.1, must include a signature line with "s/," as shown below.

<u>s/   Jennifer Doe</u>

(b)      Non-Attorney Signatures.  A document requiring the signature of a non-attorney must be filed electronically by:  (1) submitting a scanned document containing the necessary signature; or (2) in any other manner approved by the Court.

(c)      Multiple Signatures.  Where a document requires the signatures of more than one (e.g., stipulations, consent orders) the "s/" block can be substituted for the signatures of ECF Filing Users. By submitting a document with "s/" block signatories, the filing attorney certifies that each of such signatories has expressly agreed to the form and substance of the document and has authorized the filing attorney to submit the document electronically. The filing attorney shall retain any records evidencing this agreement for future production, if necessary, until one (1) year after all periods for appeals expire.  Any person who disputes the authenticity of any of the signatures on a document containing multiple signatures must file an objection to the document within fourteen (14) days of the date of the NEF.

13.    Retention Requirements.

The original of any document that is electronically filed and requires an original signature other than that of the ECF Filing User must be maintained by the ECF Filing User and/or the firm representing the party on whose behalf the document was filed until one (1) year after all periods for appeals expire. On request of the Court, the ECF Filing User or law firm must provide the original document.

14.    Service of Documents by Electronic Means.

(a)      Service of Process

With regard to the service of complaints including, amended complaints that add parties and third party complaints, service of process must be made in accordance with Federal Rules of Civil Procedure and the Local Rules of this Court.

(b)      Other Types of Service:

(1)      ECF Filing User

Upon the electronic filing of a pleading or other document, the Court's ECF System will automatically generate and send a NEF to all ECF Filing Users associated with that case. Transmission of the NEF constitutes service of the filed document on Filing Users.

If the ECF Filing User becomes aware that the NEF was not transmitted successfully to a party, or that the notice is deficient, e.g., the electronic link to the document is defective, the filer shall serve a copy of the filed document by e-mail, hand, facsimile, or by first-class mail postage prepaid immediately upon notification of the deficiency of the NEF.

The submission of the completed and signed ECF Filing Registration Form to the Court constitutes consent to service of all papers via the Court's ECF System as provided in Federal Rules of Civil Procedure 5(b) and 77(d), and Federal Rule of Criminal Procedure 49, the NEF constitutes service of the filed document on ECF Filing Users.

A certificate of service must be included with all documents filed electronically.  The certificate of service must indicate how service was accomplished, i.e., electronically and/or by other means as provided in Federal Rule of Civil Procedure 5(b) and Federal Rule of Criminal Procedure 49.

(2)      Non ECF Filer

A Non ECF Filer is entitled to receive a paper copy of any electronically filed document from the party making such filing.  Service of such paper copy must be made according to the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure, the Local Civil or Criminal Rules of this Court.

15.      Technical Failures.

A technical failure occurs when the Court's ECF System is unable to accept filings continuously or intermittently for more than one hour beginning after 12:00 noon (Eastern Standard Time) that day.  If an ECF Filing User experiences a technical failure, the document shall be submitted to the Court that day in an alternative manner, provided that it is accompanied by an affidavit of the ECF Filing User's failed attempts to file electronically at least two times at least one hour apart after 12:00 noon. The following methods of filing are acceptable as a result of only the Court's technical failure:

(a)      In person, by bringing the document to the Clerk's Office as a Paper Filing in compliance with paragraph 2 of these Procedures.

(b)      Via e-mail as a PDF attachment, sent to the e-mail address for Technical Failures at ecfhelp@njd.uscourts.gov.

(c)      Through facsimile transmission to the Clerk's Office where the presiding judicial officer is stationed. An ECF Filing User subject to Technical Failure may submit a document by fax. Please refer to the fax numbers listed on the Court's website at www.njd.uscourts.gov.

The initial point of contact for an ECF Filing User experiencing technical difficulty filing a document electronically during business hours shall be the Court's ECF Help Desk at the toll free numbers listed on the Court's website at www.njd.uscourts.gov.  After business hours, the point of contact for an ECF User experiencing technical difficulty shall be the e-mail address for technical failures at ecfhelp@njd.uscourts.gov

to be answered the next business day.  When possible, the Clerk will provide notice of all such technical failures on the Court's website and/or by way of a broadcast e-mail message distributed to all ECF Filing Users.

An ECF Filing User who suffers prejudice as a result of a technical failure may seek appropriate relief from the Court.

16.    Public Access

A person may retrieve information from the PACER System, including docket sheets and documents in civil and criminal cases, by obtaining a PACER login and password.  It is recommended that a PACER account be established which can be accomplished by visiting the PACER website at http://pacer.psc.uscourts.gov. Remote access to electronic documents in Social Security cases is limited as outlined in Federal Rule of Civil Procedure 5.2(c). Any case or document under seal shall not be available to the public through electronic or any other means.

17.    Sensitive Information

As the public may access case information through the PACER system, sensitive information should not be included in any document filed unless the Court orders otherwise. As required under Federal Rule of Civil Procedure 5.2(a) and Federal Rule of Criminal Procedure 49.1(a), when making any electronic or Paper Filing with the Court that contains an individual's Social Security number, taxpayer-identification number, or birth date, the name of an individual known to be a minor, or a financial account number, a party or nonparty making the filing may include only:

(1)    the last four digits of the Social Security number and tax-identification number;

(2)    the last four digits of the financial account numbers;

(3)    the minor's initials;

(4)    the year of the individual's birth; and

(5)    In criminal cases for home addresses, use only the city and state.

In compliance with the E-Government Act of 2002, a party wishing to file a document containing the personal data identifiers specified above may either:

(1)    File an unredacted version of the document under seal, or;

(2)    File a redacted version of the document and file a reference list under seal. The reference list shall contain the complete personal identifier(s) and the redacted identifier(s) used in its (their) place in the filing.  All references in the case to the redacted identifiers included in the reference list will be construed to refer to the corresponding complete personal data identifier. The reference list may be amended as of right.

The Court may still require the party to file a redacted copy for the public file.

In addition, caution must be exercised when filing documents that contain the following:

(1)    Personal identifying numbers, such as a driver's license number;

(2)    Medical records, treatment, and diagnoses;

(3)    Employment history;

(4)    Individual financial information; and

9

(5)    Proprietary or trade secret information.

Additional items for criminal cases only:

(1)    Information regarding an individual's cooperation with the government;

(2)    Information regarding the victim of any criminal activity;

(3)    National security information; and

(4)    Sensitive security information as described in 49 U.S.C. § 114(s).

Counsel are strongly urged to share this information with all clients so that an informed decision about the inclusion of certain material may be made.  If a redacted document is filed, it is the sole responsibility of counsel and the parties to be sure that pleadings and other papers comply with the rules and orders of this Court requiring redaction of personal identifiers.  The Clerk will not review each filing for redaction.

Counsel and parties are cautioned that failure to redact personal identifiers in a document filed with the Court may subject them to the full disciplinary and remedial power of the Court, including sanctions pursuant to Federal Rule of Civil Procedure 11.

18.    Correcting Docket Entries

Once a document is filed electronically, changes can only be made by the Clerk's Office.  The ECF System will not permit the filing party to make changes to the document or docket entry once the transaction has been accepted.  Only upon an Order of the Court can a document be removed from the ECF System.

Adopted January 5, 2004. Amended: March 24,2005; September 1, 2005; October 1, 2006; September 8, 2008; April 3, 2014.

## Civ. RULE 5.3 CONFIDENTIALITY ORDERS AND RESTRICTING PUBLIC ACCESS UNDER CM/ECF

(a)  Scope of Rule

(1)  This rule shall govern any request by a party or parties to seal, or otherwise restrict public access to, any materials filed with the Court or utilized in connection with judicial decision-making. This rule shall also govern any request by a party or parties to seal, or otherwise restrict public access to, any judicial proceedings.

(2)  As used in this rule, "materials" includes all documents of any nature and in any medium. "Judicial proceedings" includes hearings and trials but does not include conferences in chambers.

(3)  This rule shall not apply to any materials or judicial proceedings which must be sealed or redacted pursuant to statute or other law.

(b) Confidentiality Order

(1)  Parties may enter into written agreements to keep materials produced in discovery confidential and to return or destroy such materials as agreed by parties and as allowed by law.

(2)  Parties may submit to a Judge an agreed-on form of order which embodies a written agreement as described above.

(3)  No form of order submitted by parties shall supersede the provisions of this rule with regard to the filing of materials or judicial proceedings. The form of order may, however, provide for the return or destruction of discovery materials as agreed by parties. The form of order shall be subject to modification by a Judge at any time.

(4)  Any order under this section shall be filed electronically under the designation "confidentiality order."

(5)  Any dispute regarding the entry of an order, or the confidentiality of discovery materials under any order, under this section shall be brought before a Magistrate Judge pursuant to L.Civ.R. 37.1 (a)(1).

(6)  Absent extraordinary circumstances, a party shall not file a motion or other materials with redacted information, absent a confidentiality order which expressly grants leave to file under seal or other appropriate leave of Court.

(c)  Motion to Seal or Otherwise Restrict Public Access

(1)  Form of Motion. Any request by a party, parties or nonparty to file materials under seal, or otherwise restrict public access to, any materials or judicial proceedings shall ordinarily be made on notice, by a single, consolidated motion on behalf of all parties, unless otherwise ordered by the Court on a case-by-case basis, including any non-party which has produced materials as to which it seeks to restrict public access.  No brief is necessary in support or in opposition to the motion unless a party believes it will assist the Court. The single, consolidated motion shall include all information required by (c)(3) below. Any motion and supporting papers to seal or otherwise restrict public access shall be available for review by the public.  In a motion that relies on materials designated as confidential material, only the specific relevant portions cited in the motion, as may be necessary to preserve the context, are to be part of the filing.  Uncited confidential materials should not be included as part of the filing.

(2)  Timing

(i)    Not later than 21 days after the first filing of sealed materials, the parties shall confer in an effort to narrow or eliminate the materials or information that may be the subject of a motion to seal.

(ii)    Any motion made under this rule shall be (a) filed within 14 days following completion of the briefing on the underlying motion of materials sought to be sealed, or within 14 days following the filing of the pleading or letter to the Court sought to be sealed, or within 14 days following ECF notice of availability of the transcript of a court proceeding sought to be sealed, or as may be ordered by the Court; and (b) filed electronically under the designation "motion to seal materials" or "motion to seal judicial proceedings," and shall be returnable on the next available motion date.

(iii)    In any action in which materials have been filed temporarily under seal pursuant to (c)(4) of this rule, and the motion or other filing which includes such materials is resolved or otherwise terminated before all briefing is completed, the party filing such materials shall have a continuing obligation to file a motion to seal. Such motion shall be filed within 14 days following the date on which the last of such materials was filed under temporary seal, or as may otherwise be ordered by the Court.

(3)  Contents of Motion. Any motion papers shall include as part of an affidavit, declaration, certification or other documents of the type referenced in 28 U.S.C. § 1746, which shall be based on personal knowledge as required by Local Civil Rule 7.2(a), an index, substantially in form suggested by Appendix U, describing with particularity:

(a) the nature of the materials or proceedings at issue;

(b) the legitimate private or public interest which warrants the relief sought;

(c) the clearly defined and serious injury that would result if the relief sought is not granted;

(d) why a less restrictive alternative to the relief sought is not available;

(e) any prior order sealing the same materials in the pending action; and

(f) the identity of any party or nonparty known to be objecting to the sealing request.

Such index shall also include, as to each objection to seal any material:

(g) the materials to which there is an objection;

(h) the basis for the objection; and

(i) if the material or information was previously sealed by the Court in the pending action, why the materials should not be maintained under seal.

Proposed Findings of Fact and Conclusions of Law shall be submitted with the motion papers in the proposed order required by (c)(6) below. Any party opposing the sealing request shall submit an alternative proposed order including the party's Proposed Findings of Fact and Conclusions of Law.

(4)  Temporary Sealing Pending Decisions on the Motion to Seal; Redacted Public Filings.  Any materials deemed confidential by a party or parties and submitted under temporary sealing subject to a motion to seal or otherwise restrict public access shall be filed electronically under the designation "confidential materials" and shall remain sealed until such time as the motion is decided, subject to Local Civil Rule 72.1(c)(1)(C).   When a document to be filed contains both confidential and non-confidential information, an unredacted version of that document shall be filed under seal.  Thereafter, and subject to further order of the court, a redacted, publicly available version of all corresponding filings shall be filed within 14 days following completion of the briefing on the underlying motion of materials sought to be sealed, or within 14 days following the filing of the pleading or letter to the court sought to be sealed, or within 14 days following ECF notice of availability of the transcript of a court proceeding sought to be sealed, or as may be ordered by the Court.

(5)  Intervention. Any interested person may move to intervene pursuant to Fed. R. Civ. P. 24(b) before the return date of any motion to seal or otherwise restrict public access or to obtain public access to materials or judicial proceedings filed under seal.

(6)  Sealing Order. Any order or opinion on any motion to seal or otherwise restrict public access shall include findings on the factors set forth in (c)(3) above as well as other findings required by law and shall be filed electronically under the designation "order" or "opinion to seal." Such orders and opinions may be redacted. Unredacted orders and opinions may be filed under seal, either electronically or in other medium.

(7)  Required Filing to Conform to Order. To the extent that any order or opinion grants less than the full relief sought for any document filed in redacted form, within 14 days after the order or opinion, or as otherwise directed by the Court, the filing party of the redacted materials shall file an amended redacted document or documents, reflecting the rulings of the Court.

(8)  Denial of Motion to Seal. To the extent any order or opinion denies a motion to seal material that has been filed under temporary seal, such material shall be unsealed by the Clerk of Court following the 14-day period set forth in Local Civil Rule 72.1(c)(1)(C), unless a notice of appeal is timely filed.

(9)  Emergent Application. Notwithstanding the above, on emergent application of a party, parties, nonparties or sua sponte, a Judge may seal or otherwise restrict public access to materials or judicial proceedings on a temporary basis. The Judge shall do so by written order which sets forth the basis for the temporary relief and which shall be filed electronically under the designation "temporary order to seal." The sealing party shall have 14 days from entry of the order to file a motion to seal, in accordance with this rule. Any interested person may move pursuant to L. Civ. R. 7.1 and Fed. R. Civ. P. 24(b) to intervene, which motion shall be made returnable on the next available return date.

(10)  Failure to Timely File. When a motion to seal or otherwise restrict public access is not timely filed in accordance with this rule, the Court may direct that the filings be publicly available without notice.

(d)  Settlement Agreements

(1) No party or parties shall submit a proposed settlement agreement for approval by a Judge unless required to do so by statute or other law or for the purpose of retaining jurisdiction.

(2) Any settlement agreement filed with the Court or incorporated into an order shall, absent an appropriate showing under federal law, be deemed a public record and available for public review.

(e)  Dockets

No docket shall be sealed. However, entries on a docket may be sealed pursuant to the provisions of this rule.

(f) Web Site

The Clerk shall maintain for public review on the official Court PACER site a consolidated report which reflects all motions, orders, and opinions described by this rule.

(g)  Transcripts/Digital Recordings

12

(1)  This subsection applies to transcript/digital recording redactions which are separate and apart from the redaction of personal identifiers mandated by Federal Rule of Civil Procedure 5.2 and the Court's Electronic Case Filing Policies and Procedures.

(2)  A motion to redact and seal any part or all of a transcript/digital recording shall satisfy the standards for sealing set forth in L.Civ.R. 5.3(c).  All motions to redact and seal any transcript shall be deemed to apply to the original record as defined in 28 U.S.C. § 753.  Any transcript that is the subject of a motion to redact and seal shall be temporarily sealed by the Clerk's Office, pending the Court's determination of the motion.  Because transcripts are not available on PACER for ninety (90) days, the party filing the motion to redact and seal shall not electronically file its proposed redacted version of the transcript as part of its motion papers, but shall instead submit same directly to Chambers for the appropriate Judge's review.  If the motion to redact and seal is granted, the party filing the motion shall submit to the court reporter/transcription agency a Statement of Redaction and Sealing pursuant to L.Civ.R. 5.3, available at http://www.njd.uscourts.gov/forms.html at form DNJ-CMECF-009.  After receiving same, unless the entire transcript has been ordered sealed, the court reporter/transcription agency shall submit the redacted version of the transcript to the Clerk of the Court for filing on ECF.  All other motion papers shall be available for public review in accordance with L.Civ.R. 5.3(c)(1).

(3)  To prevent public access to any transcript/digital recording that is the subject of a motion to redact and seal, the party filing the motion to seal shall serve a copy of the Notice of Motion to Seal on the appropriate court reporter/transcription agency with a cover letter indicating that the transcript/digital recording is the subject of a pending motion to seal and should not be made available to the public until the pending motion is decided by the Court.

(4)  Any party who in good faith believes that the confidential information entitled to be sealed pursuant to L.Civ.R. 5.3(c) was discussed during a recorded judicial proceeding may make an application pursuant to L.Civ.R. 5.3(c)(9) to temporarily seal the contents of the transcript/digital recording of that proceeding pending the party's review of the transcript/digital recording and filing of a formal motion to redact and seal.  Absent such an application being made and granted, any purchased transcript shall be available for viewing in its unredacted state at the court public terminal until a formal motion to redact and seal is filed.

(h) Effective Date
This rule shall be effective as of September 30, 2016 and shall apply to all motions under this rule.

Adopted: February 24, 2005. Amended: March 9, 2007; March 1, 2010; June 19, 2013; September 30, 2016, March 24, 2021.

History.  In June of 2004, the Board of Judges was presented with a Lawyers Advisory Committee recommendation for the adoption of a local civil rule that would provide for public (i.e., press) notice of requests to seal, among other things, documents and proceedings.  Several months before, in February of 2004, the District of New Jersey implemented CM/ECF (Case Management/Electronic Case Filing).  This allowed the electronic filing of pleadings, motions, briefs, etc., under descriptive "events."  CM/ECF also allowed remote access to dockets and filed materials as well as the creation of compilations or reports on the events.

Recognizing that CM/ECF might have a significant impact on what the Lawyers Advisory Committee recommended, the Board of Judges deferred the recommendation.  Thereafter, the proposed local civil rule in its current form ("the Rule") was drafted.  It was reviewed on an informal basis by representatives of the Administrative Office of the United States Courts and the Federal Judicial Center.  It was also reviewed by Professor Laurie Kratky Dore of Drake University Law School in Des Moines, Iowa.  Professor Dore is the author of a leading article on confidentiality, "Secrecy by Consent: The Use and Limits of Confidentiality in the Pursuit of Settlement," 74 Notre Dame L. Rev. 283 (1999), and of "Settlement, Secrecy, and Judicial Discretion: South Carolina's New Rules Governing the Sealing of Settlements," 55 S.C. L. Rev. 791 (2004).  The Rule was circulated among members of the Committee on Rules on Practice and Procedure of the Board of

Judges and thereafter submitted to the Lawyers Advisory Committee. The Rule is intended to reflect Supreme Court and Third Circuit law and does not set forth in detail all standards established by precedent.

Subparagraph (a)(1). This subparagraph describes the scope of the Rule. It applies to any application to seal materials filed with the Court, materials utilized in connection with judicial decision-making, or judicial proceedings. The use of the phrase, "otherwise restrict public access," as used in the Rule, is intended to address any application which might seek less than the complete sealing of materials or proceedings. The phrase, "in connection with judicial decision-making," is intended to exclude, among other things, letters to judges which are not substantive in nature. See, for the definition of a "judicial record", *In re Cendant Corp.*, 260 F.3d 183 (3d Cir. 2001), and for the distinction between discovery and non-discovery pretrial motions, *Leucadia, Inc. v. Applied Extrusion Technologies, Inc.*, 998 F.2d 157 (3d Cir.1993).

Subparagraph (a)(2). This subparagraph defines "materials" and "judicial proceedings." The definitions are intended to be broad and to allow for the development of case law. For that reason, the word "materials" is used rather than "judicial records," the latter approaching a term of art. Note that judicial proceedings are not intended to encompass in-chambers conferences.

Subparagraph (a)(3). The purpose of this subparagraph is to make clear that the rule is not intended to affect any "statute or other law" that mandates sealing of materials or judicial proceedings (for example, amended Section 205 (c)(3) of the E-Government Act of 2002, Pub. L. No. 107-347, and the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3729 *et seq.*).

Subparagraph (a)(4). The right of public access to filed materials and judicial proceedings derives from the First Amendment and federal common law. Consistent with this right, this subparagraph establishes a presumption in favor of public access.

Subparagraph (b). In keeping with the comprehensive nature of the Rule, this subparagraph is intended to apply to unfiled discovery materials and to be consistent with footnote 17 of *Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3d Cir. 1994): "because of the benefits of umbrella protective orders in cases involving large-scale discovery, the court may construct a broad protective order upon a threshold showing by the movant of good cause. ... After delivery of the documents, the opposing party would have the opportunity to indicate precisely which documents it believed not to be confidential, and the party seeking to maintain the seal would have the burden of proof with respect to those documents." 23 F.3d at 787 n.17 (citation omitted).

As a general proposition, there is no right of public access to unfiled discovery materials. *See, e.g., Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984); *Estate of Frankl v. Goodyear Tire and Rubber and Co.*, 181 N.J. 1 (2004) (*per curium*). This subparagraph, however, is not intended to prohibit any interested person from seeking access to such materials.

Subparagraph (b)(1) recognizes the above proposition, allows parties to enter into agreements such as that contemplated by *Pansy*, and also allows materials to be returned or destroyed. See, with regard to "Agreements on Return or Destruction of Tangible Evidence," ABA Section on Litigation Ethical Guidelines for Settlement Negotiations, Guideline 4.2.4 (August 2002).

Subparagraph (b)(2). This subparagraph describes the procedure which parties must follow in submitting blanket protective orders. Consistent with *Pansy*, there must be a showing by affidavit or certification of "good cause" and specific information must be provided. The affidavit or certification must also be available for public review. The intent of subparagraph (b)(2) is to allow parties to describe the materials in issue in categorical fashion and thus to avoid document-by-document description. This subparagraph does not go in greater detail as to the contents of the affidavit or certification. The sufficiency of an affidavit or certification is a matter for individual determination by a Judge.

Subparagraph (b)(3). This subparagraph is intended to make plain the distinction between blanket protective orders and orders for the sealing of materials filed with the Court. Blanket protective orders should not include a provision that allows materials to be filed under seal with the Court.

Subparagraph (b)(4). This subparagraph, together with subparagraph (b)(2), describes "events" for purposes of CM/ECF. Affidavits or certifications in support of blanket protective orders as well as the protective orders should be electronically filed using these events.

14

Subparagraph (b)(5). This subparagraph contemplates that disputes may arise with regard to the terms of blanket protective orders and the designation of materials under such orders. Should such disputes arise, the parties are directed to the procedure set forth in Local Civil Rule 37.1(a)(1) for the resolution of discovery disputes. The Rule is not intended to be applicable to materials submitted with regard to discovery disputes.

Subparagraph (b)(6). This subparagraph has been added to further remind parties that there must be in place either a confidentiality order with an express leave to file under seal or other order of the Court before any documents can be filed under seal. Only in extraordinary circumstances, which are rare, such as commencement of an action with an order to show cause, should a motion to seal in the absence of a confidentiality order be filed. In any event, even where there are extraordinary circumstances, a separate motion to seal must be filed in accordance with this Rule.

Subparagraph (c). This subparagraph establishes the procedure by which applications must be made to seal or otherwise restrict public access to filed materials or judicial proceedings. Such applications may be made in advance of, as part of, or parallel with substantive motions.

Subparagraph (c)(1). This subparagraph provides that any such application must be made by formal motion.

Subparagraph (c)(2). This subparagraph provides that any motion must be available for public access and must set forth, at a minimum, certain specified information.

Subparagraph (c)(3). Under Third Circuit precedent, the filing of otherwise confidential material may make that material a public record and subject to public access. *See, e.g., Bank of America Nat'l Trust and Savings Ass'n v. Hotel Rittenhouse Assoc.*, 800 F.2d 339 (3d Cir. 1988). This subparagraph is intended to allow confidential materials to be filed and remain under seal until a motion to seal or otherwise restrict public access is ruled on. Otherwise, arguably confidential materials would be "transmuted" into materials presumptively subject to public access. *See Gambale v. Deutsche Bank AG*, 377 F.3d 133, 143 n.8 (2d Cir. 2004).

Subparagraph (c)(4). "[T]he procedural device of permissive intervention is appropriately used to enable a litigant who was not an original party to an action to challenge protective or confidentiality orders entered in that action." *Pansy*, 23 F.3d at 778. Consistent with *Pansy*, this subparagraph allows a person to move to intervene pursuant to Rule 24 of the Federal Rules of Civil Procedure before a motion to seal or to otherwise restrict public access is returnable. This subparagraph is not intended to foreclose any subsequent motion to modify or vacate an order.

Subparagraph (c)(5). This subparagraph serves two functions. First, it identifies the "event" corresponding to a sealing order or opinion, as subparagraph (c)(1) identifies events for sealing motions. Subparagraph (c)(5) also reminds Judges that, as appropriate, opinions and orders on motions to seal or otherwise restrict public access may be filed in redacted and unredacted form.

Subparagraph (c)(6). This subparagraph is patterned after Section 7(a) of the Vermont Rules for Public Access to Court Records. It is intended to address emergent applications by parties where there may be a legitimate need for a temporary sealing order (for example, when an ex parte seizure order is sought in a trademark infringement action). The subparagraph identifies the appropriate CM/ECF event and also provides for motions to intervene.

Subparagraph (d). As a general proposition, settlement agreements are not presented to Judges for "approval." Such approval has no legal significance. *See. e.g., Pascarella v. Bruck*, 190 N.J. Super. 118 (App. Div. 1983). Moreover, judicial approval of a settlement may make that settlement a public record and subject to public access. *See Jessup v. Luther*, 277 F.3d 926 (7th Cir. 2002). For these reasons, subparagraph (d)(1) proves that settlement agreements will not be approved by Judges unless such approval is required by law (for example, in class actions or actions involving infants). Subdivision (d)(1) does, however, provide for judicial approval of a settlement if the intent of the parties in seeking that approval is to have the Court retain jurisdiction to enforce a settlement agreement. *See, e.g., Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375 (1994). Subdivision (d)(2) provides that, once filed with the Court or incorporated in an order, a settlement agreement becomes a public record and subject to public access absent an appropriate showing.

Subparagraph(e).  Dockets are sources of basic information about civil actions and are historically public records.  *See, e.g., United States v. Criden*, 675 F.2d 550 (3d Cir.1982).  Thus, this subparagraph provides that dockets will not be sealed but that, consistent with the Rule, specific docket entries may be.  *See Webster Groves School Dist. v. Pulitzer Publishing Co.*, 898 F.2d 1371 (8th Cir. 1990).

Subparagraph (f).  This subdivision requires the Clerk to maintain a report which reflects all motions, order and opinions described in the Rule.  The intent of this subparagraph is that reports be generated based on the "events" referred to in the Rule and be available to the general public through PACER.

## SUPPLEMENTAL EXPLANATORY NOTE

After publication on December 20, 2004, several comments were received.  These comments led to the addition of language in the Explanatory Note (History and subparagraphs (b), (b)(5), (c) and (c)(4)) intended to clarify the intent of the Rule.  Subparagraph (d)(2) of the Rule and the accompanying Explanatory Note were revised to reflect that the appropriate standard may derive from other than Fed. R. Civ. P. 26(c).  Finally, a new subparagraph (g) was added to the Rule.

## Civ. RULE 6.1 EXTENSIONS OF TIME AND CONTINUANCES

(a) Each application for an extension of time shall:

(1) be made in writing;

(2) be served prior to the expiration of the period sought to be extended; and

(3) disclose in the application the date service of process was effected and all similar extensions previously obtained.

(b) The time within which to answer or reply to any pleadings as to which a responsive pleading is permitted may, before the expiration of the original deadline to answer or reply thereto, and with or without notice, be extended once for a period not to exceed 14 days on order granted by the Clerk. Any other proposed extension of time must be presented to the Court for consideration.

(c) A motion to postpone or continue a trial on the grounds of absence of a witness or evidence shall be made upon affidavit or other document complying with 28 U.S.C. § 1746 showing the nature and materiality of the expected testimony or evidence, and that diligent effort has been made to secure the witness or evidence. If the testimony or the evidence would be admissible at the trial, and the adverse party stipulates that it shall be considered as actually given at the trial, there shall be no postponement or continuance.

Amended: March 1, 2010; June 19, 2013.

## Civ. RULE 7.1 APPLICATION AND MOTION PRACTICE

(a)  No Prefiling Applications

No applications will be entertained by a Judge in any action until the action has been filed, allocated and assigned.

(b)  All Motions

(1)  Unless a Judge advises the attorneys otherwise, all motions, regardless of their complexity and the relief sought, shall be presented and defended in the manner set forth in L.Civ.R. 7.1.

(2)  The Notice of Motion and all papers in support of or in opposition to the motion, including briefs, must be filed electronically with the Clerk.

(3)  Motions filed electronically by ECF Registered Users shall also comply with the Policies and Procedures that govern Electronic Case Filing for the District of New Jersey.

(4) The procedure for requesting and scheduling oral argument is set forth in L.Civ.R. 78.1.

(c) Motion Days

(1) The regular motion days for all vicinages are set forth in L.Civ.R. 78.1.  All applications, other than applications under L.Civ.R. 65.1, by notice of motion or otherwise, shall be made returnable before the Judge to whom the case has been assigned on the first regular motion day which is at least 24 days after the date of filing.

(2)  If a motion is noticed for any day other than a regular motion day, unless such day has been fixed by the Court, the Clerk shall list the disposition of the motion for the next regular motion day and notify all parties of the change in date.

(d)  Filing Motion Papers

(1)  No application will be heard unless the moving papers and a brief, prepared in accordance with L.Civ.R. 7.2, and proof or acknowledgment of service on all other parties, are filed with the Clerk at least 24 days prior to the noticed motion day.  The brief shall be a separate document for submission to the Court, and shall note the motion day on the cover page.

(2)  The brief and papers in opposition to a motion, specifying the motion day on the cover page, with proof or acknowledgment of service thereof on all other parties, must be filed with the Clerk at least 14 days prior to the original motion day, unless the Court otherwise orders, or an automatic extension is obtained pursuant to L.Civ.R. 7.1(d)(5).

(3) If the moving party chooses to file papers in reply, those papers including a reply brief specifying the motion day on the cover page, with proof or acknowledgment of service thereof on all other parties, must be filed with the Clerk at least seven days prior to the motion day.  No reply papers shall be filed, unless permitted by the Court, relating to the following motions: Cross under L.Civ.R. 7.1(h); Reconsideration under L.Civ.R. 7.1(i); Case Management under L.Civ.R. 16.1(g)(2); and Discovery under L.Civ.R. 37.1(b)(3).

(4)  In lieu of filing any brief pursuant to L.Civ.R. 7.1(d)(1), (2) or (3), a party may file a statement that no brief is necessary and the reasons therefor.

(5) The original motion day of a dispositive motion may be adjourned once by a party opposing the motion, without the consent of the moving party, the Court, or the Clerk.  To obtain the automatic extension a party must file with the Clerk, and serve upon all other parties, a letter stating that the originally noticed motion day has not previously been extended or adjourned and invoking the provisions of this rule before the date on which opposition papers would otherwise be due under L.Civ.R. 7.1(d)(2).  That letter shall set forth the new motion day, which shall be the next available motion day following the originally noticed date. All parties opposing the motion shall file their opposition papers at least 14 days prior to the new motion day, and the moving party shall file its reply papers, if any, at least seven days prior to the new motion day. No other extension of the time limits provided in L.Civ.R. 7.1(d)(2) and (3) shall be permitted without an Order of the Court, and any application for such an extension shall advise the Court whether other parties have or have not consented to such request.

(6)  No sur-replies are permitted without permission of the Judge to whom the case is assigned.

(7)  The Court may reject any brief or other paper not filed within the time specified.

(e) Preparation of Order

All filed motions shall have annexed thereto a proposed order. If the proposed order does not adequately reflect the Court's ruling, the prevailing party, if directed by the Court, shall submit an order within seven days of the ruling on the motion on notice to all other parties.  Unless the Court otherwise directs, if no specific objection to that order with reasons therefor is received within seven days of its receipt by the Court, the order may be signed.  If such an objection is made, the matter may be listed for hearing at the discretion of the Court.

(f) Certain Motions Regarding Additional Pleadings

(1)  Upon filing of a motion for leave to file a complaint in intervention, the moving party shall attach to the motion a copy of the proposed pleading and shall state whether the motion is opposed.  If leave to file is granted, the moving party shall file the original forthwith. Service shall be accomplished consistent with the Fed. R. Civ. P. and these Rules.

(2)  Provisions relating to the filing and service of motions for leave to file an amended pleading are set forth in L.Civ.R. 15.1.

(g) Courtesy Copies

In addition to the filing of all papers, including briefs, in support of or in opposition to a motion, the filer must submit forthwith to the Judge's chambers one courtesy copy of each filed paper or brief in paper form, unless otherwise directed by the judicial officer. These documents shall be clearly marked as courtesy copies.

(h) Cross-Motion

A cross-motion related to the subject matter of the original motion may be filed by the party opposing the motion together with that party's opposition papers and may be noticed for disposition on the same day as the original motion, as long as the opposition papers are timely filed. Upon the request of the original moving party, the Court may enlarge the time for filing a brief and/or papers in opposition to the cross-motion and adjourn the original motion day.  A party filing a cross-motion shall serve and file a combined brief in opposition to the original motion and in support of the cross-motion, which shall not exceed 40 pages.  No reply brief in support of the cross-motion shall be served and filed without leave of the assigned Judge.  The original moving party shall file a single combined reply brief in support of its motion and in opposition to the cross-motion, which shall not exceed 40 pages (in contrast to the 15-page limit for replies as provided in L.Civ.R. 7.2(b)).  The provisions of L.Civ.R. 7.1(d)(5) apply to dispositive cross-motions.

(i) Motions for Reconsideration

Unless otherwise provided by statute or rule (such as Fed. R. Civ. P. 50, 52 and 59), a motion for reconsideration shall be served and filed within 14 days after the entry of the order or judgment on the original motion by the Judge.  A brief setting forth concisely the matter or controlling decisions which the party believes the Judge has overlooked shall be filed with the Notice of Motion.

Amended: March 31, 1999; February 24, 2005; December 13, 2007; March 1, 2010; October 14, 2010; March 8, 2012; June 19, 2013; May 10, 2014.

## Civ. RULE 7.1.1 DISCLOSURE OF THIRD-PARTY LITIGATION FUNDING

(a) Within 30 days of filing an initial pleading or transfer of the matter to this district, including the removal of a state action, or promptly after learning of the information to be disclosed, all parties, including intervening parties, shall file a statement (separate from any pleading) containing the following information regarding any person or entity that is not a party and is providing funding for some or all of the attorneys' fees and expenses for the litigation on a

non-recourse basis in exchange for (1) a contingent financial interest based upon the results of the litigation or (2) a non-monetary result that is not in the nature of a personal or bank loan, or insurance:

1. The identity of the funder(s), including the name, address, and if a legal entity, its place of formation;
2. Whether the funder's approval is necessary for litigation decisions or settlement decisions in the action and if the answer is in the affirmative, the nature of the terms and conditions relating to that approval; and
3. A brief description of the nature of the financial interest.

(b) The parties may seek additional discovery of the terms of any such agreement upon a showing of good cause that the non-party has authority to make material litigation decisions or settlement decisions, the interests of parties or the class (if applicable) are not being promoted or protected, or conflicts of interest exist, or such other disclosure is necessary to any issue in the case.

(c) Nothing herein precludes the Court from ordering such other relief as may be appropriate.

(d) This Rule shall take effect immediately and apply to all pending cases upon its effective date, with the filing mandated in Paragraph 1 to be made within 45 days of the effective date of this Rule.

Adopted June 21, 2021.

## Civ. RULE 7.2 AFFIDAVITS AND BRIEFS

(a) Affidavits, declarations, certifications and other documents of the type referenced in 28 U.S.C. § 1746 shall be restricted to statements of fact within the personal knowledge of the signatory. Argument of the facts and the law shall not be contained in such documents. Legal arguments and summations in such documents will be disregarded by the Court and may subject the signatory to appropriate censure, sanctions or both.

(b) Any brief shall include a table of contents and a table of authorities and shall not exceed 40 ordinary typed or printed pages (15 pages for any reply brief submitted under L.Civ.R. 7.1(d)(3) and any brief in support of or in opposition to a motion for reconsideration submitted under L.Civ.R. 7.1(i)), excluding pages required for the table of contents and authorities. Briefs of greater length will only be accepted if special permission of the Judge is obtained prior to submission of the brief.

(c) All briefs shall be in black lettering on paper size 8.5 x 11 inches. All margins shall be not less than one inch on sides, top, and bottom.

(d) Each page of a brief shall contain double-spaced text and/or single-spaced footnotes or inserts. Typeface shall be in 12-point non-proportional font (such as Courier New 12) or an equivalent 14-point proportional font (such as Times New Roman 14). If a 12-point proportional font is used instead, the page

limits shall be reduced by 25 percent (e.g., the 40 page limit becomes 30 pages in this font and the 15 page limit becomes 11.25 pages). Footnotes shall be printed in the same size of type utilized in the text.

Amended: December 22, 1999; April 19, 2000; December 13, 2007; June 19, 2013.

## Civ. RULE 8.1 PLEADING DAMAGES

A pleading which sets forth a claim for relief in the nature of unliquidated money damages shall state in the *ad damnum* clause a demand for damages generally without specifying the amount. Within 14 days after service of a written request by another party, the party filing the pleading shall furnish the requesting party with a statement of the amount of damages claimed, which statement shall not be filed except on court order. Nothing stated herein shall relieve the party filing the pleading of the necessity of alleging the requisite jurisdictional amount in controversy, where applicable.

Amended: March 1, 2010.

## Civ. RULE 9.1 SPECIAL MATTERS - REVIEW OF SOCIAL SECURITY MATTERS

**[Rule rescinded effective December 1, 2022, upon adoption of the Federal Rules of Civil Procedure's Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g)].**

(a) Review of Social Security Matters - Generally

(1) In any action involving the review of a final decision by the Commissioner of Social Security (Defendant) denying a claim for benefits under the Social Security Act (42 U.S.C. § 405(g) (hereinafter "Social Security case")), the following rules and procedures shall apply:

(2) These rules are not intended to cover any type of case other than record review of individual Social Security cases. Class actions or constitutional challenges to the law will continue to be governed by the Federal Rules of Civil Procedure and this Court's Local Civil Rules.

(b) Filing the Complaint

(1) Plaintiff shall adhere to the standard complaint format specified in paragraph (2) of this subsection. For the convenience of litigants, sample complaint form(s) can be found on this Court's website at: www.njd.uscourts.gov.

(2) The complaint shall contain:

(A) a statement of jurisdiction to include a statement of proper venue and timeliness, with reference to the date of the decision of the Appeals Council;

(B) a short and plain statement of the claim showing that the Plaintiff is entitled to relief; and

(C) a demand for the specific relief claimed.

(c) Defendant's Response

(1) Within 60 days of receipt of the summons and complaint, Defendant will file the administrative record with the Clerk of this Court, which shall constitute Defendant's answer, or otherwise move. If Plaintiff is *pro se*, Defendant will also serve Plaintiff, by first class mail, a copy of the administrative record or motion.

(2) In the event a motion is made, Local Civil Rule 7.1 for the handling of motions will apply.

(d) Plaintiff's Statement

(1) To encourage early and amicable resolution of Social Security matters, Plaintiff, within 14 days of the filing of Defendant's answer, shall file with the Clerk of this Court a statement setting forth Plaintiff's primary contentions or arguments as to why Plaintiff believes that he or she is entitled to relief.

(2) Defendant shall file a response within 30 days of the filing of Plaintiff's statement.

(3) If the parties agree on the resolution of a Social Security matter, the parties shall proceed in accordance with Local Civil Rule 41.1(b).

(e) Briefing

(1) Plaintiff shall file a brief within 75 days of the receipt of the answer to the complaint.

(2) Defendant shall file a responsive brief within 45 days after the receipt of Plaintiff's brief.

(3) Plaintiff may file a reply brief within 15 days after receipt of Defendant's brief. No further briefing is permitted without leave of the Court.

(4) All briefing shall conform to Local Civil Rule 7.2.

(5) Plaintiff's brief shall contain:

(A) a statement of the issues presented for review;

(B) a statement of the case. This statement should indicate briefly the course of the proceeding and its disposition at the administrative level;

(C) a statement of facts with references to the administrative record;

(D) an argument. The argument may be preceded by a summary. The argument shall be divided into sections separately treating each issue and must set forth Plaintiff's arguments with respect to the issues presented and reasons therefor; and

(E) a short conclusion stating the relief sought.

(6) Defendant's brief:

(A) may contain counter-statements to the Plaintiff's statement of the issues, statement of the case, and statement of facts, if Defendant disagrees with any portion thereof;

(B) shall contain an argument responding to Plaintiff's argument; and

(C) shall contain a short conclusion stating the relief sought.

(f) Disposition

All Social Security cases will be handled by the Court on written briefs unless a request for oral argument is granted or as otherwise directed by the Court.

Amended: June 22, 1999; February 19, 2002; March 1, 2010; June 12, 2012; November 10, 2016; December 1, 2022.

## EXPLANATORY NOTE LOCAL CIVIL RULE 9.1

In 2009, a committee was formed to review Local Civil Rule 9.1 (Rule) concerning Social Security matters before the Court and to determine whether there was a need to amend the Rule. The committee consists of United States District Judge Katharine S. Hayden, members of the Court Clerk's Office, private attorneys

from plaintiff's bar, as well as government attorneys representing the Commissioner of Social Security (Commissioner or Defendant) from the Social Security Administration's (SSA's) Office of General Counsel (OGC) and the U.S. Department of Justice (collectively, "Committee").

The Committee agrees that recent technological changes, such as the implementation of Case Management/Electronic Case Filing (CM/ECF) and SSA's move to an "electronic administrative record," or "ECar," require changes to the Rule. The Committee decided to use the current version of Local Civil Rule 9.1 as a template and draft a new proposed Rule rather than revise or "redline" the current Rule. The Committee proposes to include in the new Rule a sample *pro se* complaint, which can be used by both unrepresented and represented parties. The sample complaint is designed to include all of the required elements to commence suit, yet keep the pleadings to a minimum. The new Rule provides that the sample complaint is accessible through the Court's website.

In its deliberations, the Committee gave special consideration to the statement setting forth Plaintiff's primary contentions (statement of contentions) required under 9.1(a)(2), as well as the briefing schedule and brief content under 9.1(a)(3) and (4), of the current Rule. The Committee agreed that Plaintiff's statement of contentions is a useful tool and should be retained in the new Rule. The stated purpose of the statement of contentions is to "encourage early and amicable resolution" of Social Security cases. The Committee agreed that this required statement of contentions accomplishes the goal, albeit with some disruption of the current briefing schedule as the parties attempt to resolve the case before full briefing.

Consequently, the Committee acknowledges that requests for extensions of time for briefing are common. Under the current Rule, Plaintiff must file his/her brief within 60 days from Defendant's answer. However, this 60-day deadline does not account for the time Plaintiff expends in connection with the statement of contentions, which Plaintiff must file within 14 days of Defendant's answer. In turn, Defendant must respond within 30 days of receiving the statement of contentions. Even if Plaintiff submits the statement of contentions, and Defendant responds that s/he intends to defend the case, in the time the current Rule permits, there remain only 16 days of the original 60 days allowed for the filing of Plaintiff's brief. Likewise, attorneys for Defendant find an early resolution can be difficult to achieve in the time allowed by the current Rule, where Defendant is seriously considering consenting to remand the matter based upon Plaintiff's statement of contentions. This results in frequent requests for extensions of time to file briefs in Social Security cases by one or both parties. While the Court has liberally granted extension requests, it expends time and resources ruling on these requests. Additionally, the parties expend time and resources requesting extensions and securing opposing counsel's consent for same.

Consequently, the Committee proposes that the new Rule expand the current Rule's briefing schedule by allowing Plaintiff 75, rather than 60, days from the receipt of Defendant's answer to file a brief. The 15 additional days takes into account the period allotted for Plaintiff's submission of, and Defendant's response to, the statement of contentions. Assuming all submissions are timely, the change reasonably provides Plaintiff a minimum of 31 days to file a brief from the deadline of Defendant's response to Plaintiff's statement of contentions. In turn, the new Rule provides Defendant an additional 15 days from the filing of Plaintiff's brief, for a total of 45 days, to file a responsive brief.

While this proposed change adds 30 days to the entire briefing schedule, the Committee expects that the change will (1) eliminate a good number of routine extension requests and (2) require the parties to pursue, and the Court to consider, extension requests only in exigent, rare, and/or unusual circumstances.

The Committee believes that, as a general proposition, Local Civil Rule 9.1 accomplishes its intended purposes. The Committee further believes that the recommended changes will address the technological

advances that have occurred and will continue to occur, while allowing parties to litigate, and the Court to preside over and decide, Social Security matters as efficiently as possible. The Committee stands ready to serve the Court, if requested to do so.

<u>Local Social Security Rule Committee</u>

Hon. Katharine S. Hayden, U.S.D.J., Chair
John T. O'Brien, Legal Coordinator
Jessica Calella, *Pro Se* Attorney
Anthony Labruna, Assistant U.S. Attorney
Maria Fragassi Santangelo, Social Security Administration - Office of General Counsel
Susan Reiss, Social Security Administration - Office of General Counsel
Adrienne Jarvis, Esq.
Robert Petruzzelli, Esq.
Alan Polonsky, Esq.


## Civ. RULE 9.2 SPECIAL MATTERS - ADMIRALTY AND MARITIME RULES FOR THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY
LOCAL ADMIRALTY AND MARITIME RULE (a). SCOPE, CITATION AND DEFINITIONS

LAMR (a)(1) Scope. These local admiralty and maritime rules apply only to civil actions that are governed by the Supplemental Rules for Certain Admiralty and Maritime Claims (Supplemental Rule or Rules). All other local rules are applicable in these cases, but to the extent that another local rule is inconsistent with the applicable local admiralty and maritime rules, the local admiralty and maritime rules shall govern.

LAMR (a)(2) Citation.  The local admiralty and maritime rules may be cited by the letters "LAMR" and the lower case letters and numbers in parentheses that appear at the beginning of each section. The lower case letter is intended to associate the local admiralty and maritime rule with the Supplemental Rule that bears the same capital letter.

LAMR (a)(3) Definitions. As used in the local admiralty and maritime rules, "Court" means a United States District Court; "judicial officer" means a United States District Judge or a United States Magistrate Judge; "Clerk of Court" means the Clerk of the District Court and includes Deputy Clerks of Court; and "Marshal" means the United States Marshal and includes Deputy Marshals.

LOCAL ADMIRALTY AND MARITIME RULE (b). MARITIME ATTACHMENT AND GARNISHMENT

LAMR (b)(1) Affidavit that Defendant is Not Found Within the District. The affidavit required by Supplemental Rule B(1) to accompany the complaint shall list the efforts made by and on behalf of plaintiff to find and serve the defendant within the District.

LAMR (b)(2) Use of State Procedures. When the plaintiff invokes a state procedure in order to attach or garnish under Fed. R. Civ. P. 4(e), the process of attachment or garnishment shall so state.

LOCAL ADMIRALTY AND MARITIME RULE (c). ACTIONS *IN REM*: SPECIAL PROVISIONS

LAMR (c)(1) Intangible Property. The summons issued pursuant to Supplemental Rule C(3) shall direct the person having control of intangible property to show cause no later than 14 days after service why the intangible property should not be delivered to the Court to abide further order of the Court. A judicial officer for good cause shown may lengthen or shorten the time. Service of the summons shall have the effect of an arrest of the intangible property and bring it within the control of the Court. Upon order of the Court, the person who is

served may deliver or pay over to the Clerk of Court the intangible property proceeded against to the extent sufficient to satisfy the plaintiff's claim. If such delivery or payment is made, the person served is excused from the duty to show cause.

LAMR (c)(2) Publication of Notice of Action and Arrest.  The notice required by Supplemental Rule C(4) shall be published by the plaintiff once in a newspaper of general circulation in the city or county where the property has been seized. The notice shall contain:

(a) The Court, title and number of the action;

(b) The date of arrest;

(c) The identity of the property arrested;

(d) The name, address, and telephone number of the attorney for plaintiff;

(e) A statement that the claim of a person who is entitled to possession or who claims an interest pursuant to Supplemental Rule C(6) must be filed with the Clerk and served on the attorney for plaintiff within 14 days after publication;

(f) A statement that an answer to the complaint must be filed and served within 21 days after the claim is filed, and that otherwise, default may be entered and condemnation ordered;

(g) A statement that motions to intervene under Fed. R. Civ. P. 24 by persons claiming maritime liens or other interests and claims for expenses of administration under LAMR(e)(10)(b) shall be filed within a time fixed by the Court; and

(h) The name, address and telephone number of the Marshal.

LAMR (c)(3) Notice Requirements.

(a) Default Judgments. A party seeking a default judgment in an action *in rem* must satisfy the Judge that due notice of the action and arrest of the property has been given (1) by publication as required in LAMR (c)(2), and (2) by service of the complaint and warrant of arrest upon the Master or other person having custody of the property. (3) If the defendant property is a vessel documented under the laws of the United States, plaintiff must attempt to notify all persons identified as having an interest in the vessel in the United States Coast Guard Certificate of Ownership. (4) If the defendant property is a vessel numbered as provided in the Federal Boat Safety Act, plaintiff must attempt to notify the owner as named in the records of the issuing authority.

(b) Ship Mortgage Act. For purposes of the Ship Mortgage Act, 46 U.S.C. § 31301 *et seq*., notice to the Master of a vessel, or the person having physical custody thereof, by service of the warrant of arrest and complaint shall be deemed compliance with the notice requirements of such Act, as to all persons, except as to those who have recorded a notice of claim of lien.

(c) Mailing. The notification requirement is satisfied by mailing copies of the warrant of arrest and complaint to the person's address using any form of mail requiring a return receipt.

LAMR (c)(4) Entry of Default and Default Judgment. After the time for filing a claim or answer has expired, the plaintiff may move for entry of default under Fed. R. Civ. P. 55(a). Default will be entered upon showing by affidavit, certificate of counsel, or other document complying with 28 U.S.C. § 1746 that:

(a) Notice has been given as required in LAMR (c)(3)(a)(1) and (2), and

(b) Notice has been attempted as required by LAMR (c)(3)(a)(3) and (4), where appropriate, and

(c) The time for filing a claim or answer has expired, and

(d) No one has appeared to claim the property.

The plaintiff may move for judgment under Fed. R. Civ. P. 55(b) at any time after default has been entered.

## LOCAL ADMIRALTY AND MARITIME RULE (d). POSSESSORY, PETITORY, AND PARTITION ACTIONS

LAMR (d) Return Date. In an action under Supplemental Rule D, a judicial officer may order that the claim and answer be filed on a date earlier than 21 days after arrest. The order may also set a date for expedited hearing of the action.

## LOCAL ADMIRALTY AND MARITIME RULE (e). ACTIONS *IN REM* AND *QUASI IN REM*: GENERAL PROVISIONS

LAMR (e)(1) Itemized Demand for Judgment. The demand for judgment in every complaint filed under Supplemental Rule B or C shall allege the dollar amount of the debt or damages for which the action was commenced. The demand for judgment shall also allege the nature of other items of damage.

LAMR (e)(2) Salvage Action Complaints. In an action for a salvage award, the complaint shall allege the dollar value of the vessel, cargo, freight, and other property salved, and the dollar amount of the award claimed.

LAMR (e)(3) Verification of Pleadings. Every complaint in Supplemental Rule B, C, and D actions shall be verified upon oath or solemn affirmation or in the form provided by 28 U.S.C. § 1746, by a party or by an authorized officer of a corporate party. If no party or authorized corporate officer is readily available, verification of a complaint may be made by an agent, attorney in fact, or attorney of record, who shall state the sources of the knowledge, information and belief contained in the complaint; declare that the document verified is true to the best of that knowledge, information, and belief; state why verification is not made by the party or an authorized corporate officer; and state that the affiant is authorized so to verify. A verification not made by a party or authorized corporate officer will be deemed to have been made by the party as if verified personally. If the verification was not made by a party or authorized corporate officer, any interested party may move, with or without requesting a stay, for the personal oath of a party or an authorized corporate officer, which shall be procured by commission or as otherwise ordered.

LAMR (e)(4) Review by Judicial Officer. Unless otherwise required by the judicial officer, the review of complaints and papers called for by Supplemental Rules B(1) and C(3) does not require the affiant party or attorney to be present. Any complaint presented to a judicial officer for review shall be accompanied by a form of order to the Clerk which, upon signature by the judicial officer, shall direct the arrest, attachment, or garnishment sought by the applicant.

LAMR (e)(5) Instructions to the Marshal. The party who requests a warrant of arrest or process of attachment or garnishment shall provide instructions to the Marshal.

LAMR (e)(6) Property in Possession of United States Officer. When the property to be attached or arrested is in the custody of an employee or officer of the United States, the Marshal will deliver a copy of the complaint and warrant of arrest or summons and process of attachment or garnishment to that officer or employee if present, and otherwise to the custodian of the property. The Marshal will instruct the officer or employee or custodian to retain custody of the property until ordered to do otherwise by a judicial officer.

LAMR (e)(7) Security for Costs. In an action under the Supplemental Rules, a party may move upon notice to all parties for an order to compel an adverse party to post security for costs with the Clerk pursuant to

Supplemental Rule E(2)(b). Unless otherwise ordered, the amount of security shall be $500. The party so notified shall post the security within seven days after the order is entered. A party who fails to post security when due may not participate further in the proceedings. A party may move for an order increasing the amount of security for costs.

LAMR (e)(8) Adversary Hearing.  An adversary hearing following arrest or attachment or garnishment under Supplemental Rule E(4)(f) shall be conducted by the Court within seven days after a request for such hearing, unless otherwise ordered.

LAMR (e)(9) Security Deposit for Seizure of Vessels. The party(ies) who seek(s) arrest or attachment of a vessel or property aboard a vessel shall deposit with the Marshal $4000 for vessels more than 65 feet in length overall or $500 for vessels 65 feet in length overall or less. For the arrest or attachment of intangible property, there shall be deposited with the Marshal $500. A check drawn upon the attorney's account of a member of the bar of this Court, or of a law firm having members who are admitted to the bar of this Court, shall be accepted by the Marshal as payment. These deposits shall be used to cover the expenses of the Marshal including, but not limited to, dockage, keepers, maintenance, and insurance. The party(ies) shall advance additional sums from time to time as requested by the Marshal to cover the estimated expenses until the property is released or disposed of as provided in Supplemental Rule E.

LAMR (e)(10) Intervenor's Claims and Sharing of Marshal's Fees and Expenses.

(a) Intervention Before Sale. When a vessel or other property has been arrested, attached, or garnished, and is in the hands of the Marshal or custodian substituted therefor, anyone having a claim against the vessel or property is required to present the claim by filing an intervening complaint under Fed. R. Civ. P. 24, and not by filing an original complaint, unless otherwise ordered by a judicial officer. An order permitting intervention may be signed *ex parte* at the time of filing the motion, subject to the right of any party to object to such intervention within 21 days after receipt of a copy of the motion and proposed pleading. Upon signing of an order permitting intervention the Clerk shall forthwith deliver a conformed copy of the intervening complaint to the Marshal, who shall deliver the copy to the vessel or custodian of the property. Intervenors shall thereafter be subject to the rights and obligations of parties, and the vessel or property shall stand arrested, attached, or garnished by the intervenor. An intervenor shall not be required to advance a security deposit to the Marshal for seizure of a vessel as required by LAMR (e)(9). Release of property arrested, attached, or garnished by an intervenor shall be done in accordance with Supplemental Rule E.

(b) Sharing Marshal's Fees and Expenses Before Sale. Upon motion by any party, security deposits may be ordered to be paid or shared by any party who has arrested, attached, or garnished a vessel or property aboard a vessel in amounts or proportions to be determined by a judicial officer.

(c) Intervention After Sale. After ratification of sale and payment of the purchase price, any person having a claim against the vessel or property that arose before ratification must present the same by intervening complaint, pursuant to LAMR (e)(10)(a), against the proceeds of the sale and may not proceed against the vessel unless the Court shall otherwise order for good cause shown. Where an intervening complaint prays service of process *in rem*, the filing of such intervening complaint with the Clerk shall be deemed to be a claim against such proceeds without the issuance of *in rem* process, unless the Court shall otherwise order for good cause shown. The Court shall allow a period of at least 30 days after due ratification of the sale for the submission of such claims.

LAMR (e)(11) Custody of Property.

(a) Safekeeping of Property. When a vessel or other property is brought into the Marshal's custody by arrest or attachment, the Marshal shall arrange for adequate safekeeping, which may include the placing of keepers on or near the vessel. A substitute custodian in place of the Marshal may be appointed by order of the Court.

(b) Employment of Vessel's Officers and Crew by Marshal. All officers and members of the crew employed on a vessel of 750 gross tons or more shall be deemed employees of the Marshal for the period of 120 hours after the attachment or arrest of the vessel unless the Marshal, pursuant to a court order, has notified the officers and members of the crew that they are not so employed or unless the vessel is released from attachment or arrest. If the vessel is not released within 120 hours, the Marshal shall, on request of the seizing party, immediately thereafter designate which, if any, officers and members of the crew he or she is continuing to employ to preserve the vessel and shall promptly notify the remaining officers and members of the crew that they are no longer in his or her employ and are no longer in the service of the vessel and are free to depart from the vessel. The notice required by the preceding sentence shall be by written notice posted in a prominent place in each of the mess rooms or dining salons used by the officers and unlicensed personnel aboard the vessel.

(c) Normal Vessel Operations and Movement of the Vessel. Following arrest, attachment, or garnishment of a vessel or property aboard a vessel, normal vessel operations shall be permitted to commence or continue unless otherwise ordered by the Court. No movement of the vessel shall take place unless authorized by order of a judicial officer.

(d) Procedure for Filing Claims by Suppliers for Payment of Charges. A person who furnishes supplies or services to a vessel, cargo, or other property in custody of the Court who has not been paid and claims the right to payment as an expense of administration shall submit an invoice to the Clerk in the form of a verified claim within the time period set by the Court for intervention after sale pursuant to LAMR (e)(10)(c). The supplier must serve copies of the claim on the Marshal, substitute custodian if one has been appointed, and all parties of record. The Court may consider the claims individually or schedule a single hearing for all claims.

LAMR (e)(12) Sale of Property.

(a) Notice. Notice of sale of property in an action in rem shall be published under such terms and conditions as set by the Court.

(b) Payment of Bid. These provisions apply unless otherwise ordered in the order of sale: The person whose bid is accepted shall immediately pay the Marshal the full purchase price if the bid is $1000 or less. If the bid exceeds $1000, the bidder shall immediately pay a deposit of at least $1000 or 10% of the bid, whichever is greater, and shall pay the balance within seven days after the day on which the bid was accepted. If an objection to the sale is filed within that seven-day period, the bidder is excused from paying the balance of the purchase price until seven days after the sale is confirmed. Payment shall be made in cash, by certified check or by cashier's check.

(c) Default. If the successful bidder does not pay the balance of the purchase price within the time allowed, the bidder is deemed to be in default. In such a case, the judicial officer may accept the second highest bid or arrange a new sale. The defaulting bidder's deposit shall be forfeited and applied to any additional costs incurred by the Marshal because of the default, the balance being retained in the Registry of the Court awaiting its order.

(d) Report of Sale by Marshal. At the conclusion of the sale, the Marshal shall forthwith file a written report with the Court of the fact of sale, the date, the price obtained, the name and address of the successful bidder, and any other pertinent information.

(e) Time and Procedure for Objection to Sale. An interested person may object to the sale by filing a written objection with the Clerk within seven days following the sale, serving the objection on all parties of record, the

successful bidder, and the Marshal, and depositing such sum with the Marshal as determined by him or her to be sufficient to pay the expense of keeping the property for at least seven days. Payment to the Marshal shall be in cash, certified check or cashier's check.

(f) Confirmation of Sale. A sale shall be confirmed by order of the Court within seven days, but no sooner than three days, after the sale. If an objection to the sale has been filed, the Court shall hold a hearing on the confirmation of the sale. The Marshal shall transfer title to the purchaser upon the order of the Court.

(g) Disposition of Deposits.

(1) Objection Sustained.  If an objection is sustained, sums deposited by the successful bidder will be returned to the bidder forthwith. The sum deposited by the objector will be applied to pay the fees and expenses incurred by the Marshal in keeping the property until it is resold, and any balance remaining shall be returned to the objector. The objector will be reimbursed for the expense of keeping the property from the proceeds of a subsequent sale.

(2) Objection Overruled. If the objection is overruled, the sum deposited by the objector will be applied to pay the expense of keeping the property from the day the objection was filed until the day the sale is confirmed, and any balance remaining will be returned to the objector forthwith.

LAMR (e)(13) Discharge of Stipulations for Value and Other Security. When an order is entered in any cause marking the case dismissed or settled, the entry shall operate as a cancellation of all stipulations for value or other security provided to release the property seized that were filed in the case, unless otherwise provided in the order or by the Court.

LOCAL ADMIRALTY AND MARITIME RULE (f). LIMITATION OF LIABILITY

LAMR (f) Security for Costs. The amount of security for costs under Supplemental Rule F(1) shall be $250, and it may be combined with the security for value and interest, unless otherwise ordered.

Amended: June 19, 2013

## L. Civ. R. 9.3 SPECIAL MATTERS - LOCAL PATENT RULES FOR THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

TABLE OF CONTENTS

1.     SCOPE OF RULES
    1.1.    Title
    1.2.    Scope and Construction
    1.3.    Modification of these Rules
    1.4.    Effective Date
    1.5.    Patent Pilot Project
2.     GENERAL PROVISIONS
    2.1.    Governing Procedure
            (a) Initial Scheduling Conference
    2.2.    Confidentiality
    2.3.    Relationship to Federal Rules of Civil Procedure
    2.4.    Exchange of Expert Materials
3.     PATENT DISCLOSURES
    3.1.    Disclosure of Asserted Claims and Infringement Contentions
    3.2.    Document Production Accompanying Disclosure
    3.2A.   Non-Infringement Contentions and Responses

3.3.    Invalidity Contentions
3.4.    Document Production Accompanying Invalidity Contentions
3.4A.  Responses to Invalidity Contentions
3.5.    Disclosure Requirement in Patent Cases for Declaratory Judgment of Invalidity
      (a)    Invalidity Contentions If No Claim of Infringement
      (b)    Inapplicability of Rule
3.6.    Disclosure Requirements for Patent Cases Arising Under 21 U.S.C. § 355 (commonly referred to as "the Hatch-Waxman Act")
3.7.    Amendments
3.8.    Advice of Counsel
4.    CLAIM CONSTRUCTION PROCEEDINGS
4.1.    Exchange of Proposed Terms for Construction
4.2.    Exchange of Preliminary Claim Constructions and Extrinsic Evidence
4.3.    Joint Claim Construction and Prehearing Statement
4.4.    Completion of Claim Construction Discovery
4.5.    Claim Construction Submissions
4.6.    Claim Construction Hearing

# L. Civ. R. 9.3 -- LOCAL PATENT RULES

1. SCOPE OF RULES

L. Pat. R. 1.1.  Title.

These are the Local Patent Rules for the United States District Court for the District of New Jersey. They should be cited as "L. Pat. R.    ."

L. Pat. R. 1.2.  Scope and Construction.

These rules apply to all civil actions filed in or transferred to this Court which allege infringement of a patent in a complaint, counterclaim, cross-claim or third party claim, or which seek a declaratory judgment that a patent is not infringed, is invalid or is unenforceable.  The Local Civil Rules of this Court shall also apply to such actions, except to the extent that they are inconsistent with these Local Patent Rules.  If the filings or actions in a case do not trigger the application of these Local Patent Rules under the terms set forth herein, the parties shall, as soon as such circumstances become known, meet and confer for the purpose of agreeing on the application of these Local Patent Rules to the case and promptly report the results of the meet and confer to the Court.

L. Pat. R. 1.3.  Modification of these Rules.

The Court may modify the obligations or deadlines set forth in these Local Patent Rules based on the circumstances of any particular case, including, without limitation, the simplicity or complexity of the case as shown by the patents, claims, products, or parties involved.  Such modifications shall, in most cases, be made at the initial Scheduling Conference, but may be made at other times by the Court *sua sponte* or upon a showing of good cause.  In advance of submission of any request for a modification, the parties shall meet and confer for purposes of reaching an agreement, if possible, upon any modification.

L. Pat. R. 1.4.  Effective Date.

These Local Patent Rules take effect on January 1, 2009.  They govern patent cases filed, transferred or removed on or after that date.  For actions pending prior to the effective date, the Court will confer with the parties and apply these rules as the Court deems practicable.

**REPEALED EFFECTIVE JULY 6, 2021**.  ~~L. Pat. R. 1.5.  Patent Pilot Project.~~

~~Procedures for allocation and assignment of patent cases under the Patent Pilot Project pursuant to Pub. L. No. 111-349, § 1, are provided in L. Civ. R. 40.1(f) and Appendix T to the Local Civil Rules.~~

2.  GENERAL PROVISIONS

L. Pat. R. 2.1.  Governing Procedure.

(a)  Initial Scheduling Conference.   When the parties confer pursuant to Fed. R. Civ. P. 26(f), the parties shall discuss and address in the Discovery Plan submitted pursuant to Fed. R. Civ. P. 26(f) and L.Civ.R. 26.1(b)(2) the topics set forth in those rules and the following topics:

(1) Proposed modification of the obligations or deadlines set forth in these Local Patent Rules to ensure that they are suitable for the circumstances of the particular case (see L. Pat. R. 1.3);

(2) The scope and timing of any claim construction discovery including disclosure of and discovery from any expert witness permitted by the court;

(3) The format of the Claim Construction Hearing, including whether the Court will hear live testimony, the order of presentation, and the estimated length of the hearing;

(4) How the parties intend to educate the Court on the patent(s) at issue; and

(5) The need for any discovery confidentiality order and a schedule for presenting certification(s) required by L.Civ.R. 5.3(b)(2).; and

(6)  The availability and timing of production of invention records (including inventor laboratory notebooks and analytical test results);

The availability and timing of production of ANDA product research and development documents;

The availability and timing of production of ANDA product samples;

The date of conception and the date of reduction to practice for each patent asserted in the action, if applicable;

Each inventor's availability for deposition in the matter;

Availability of foreign witnesses for deposition and foreign documents;

Whether there is a 30-month stay and if so, when it ends;

A date for substantial completion of document production and a method for determining compliance;

Any other issues or matters that a party believes are time sensitive.

L. Pat. R. 2.2.  Confidentiality.

Discovery cannot be withheld or delayed on the basis of confidentiality absent Court order.  Pending entry of a confidentiality order, discovery and disclosures deemed confidential by a party shall be produced to

the adverse party for outside counsel's Attorney's Eyes Only, solely for purposes of the pending case and shall not be disclosed to the client or any other person.

Within 14 days after the initial Scheduling Conference, (a) the parties shall present a consent confidentiality order under L. Civ. R. 5.3(b)(2), or (b) in the absence of consent, a party shall apply for entry of a confidentiality order under L. Civ. R. 5.3(b)(5) and L. Civ. R. 37.1(a)(1). The Court will decide those issues and enter the appropriate order, or the Court may enter the District's approved Confidentiality Order as set forth in Appendix S to these Rules if appropriate, in whole or in part.

With respect to all issues of discovery confidentiality, the parties shall comply with all terms of L.Civ.R. 5.3.

L. Pat. R. 2.3. Relationship to Federal Rules of Civil Procedure.

Except as provided in this paragraph or as otherwise ordered, it shall not be a ground for objecting to an opposing party's discovery request (e.g., interrogatory, document request, request for admission, deposition question) or declining to provide information otherwise required to be disclosed pursuant to Fed. R. Civ. P. 26(a)(1) that the discovery request or disclosure requirement is premature in light of, or otherwise conflicts with, these Local Patent Rules, absent other legitimate objection. A party may object, however, to responding to the following categories of discovery requests (or decline to provide information in its initial disclosures under Fed. R. Civ. P. 26(a)( 1 )) on the ground that they are premature in light of the timetable provided in the Local Patent Rules:

(a) Requests seeking to elicit a party's claim construction position;

(b) Requests seeking to elicit a comparison of the asserted claims and the accused apparatus, product, device, process, method, act, or other instrumentality;

(c) Requests seeking to elicit a comparison of the asserted claims and the prior art; and

(d) Requests seeking to elicit the identification of any advice of counsel, and related documents.

Where a party properly objects to a discovery request (or declines to provide information in its initial disclosures under Fed. R. Civ. P. 26(a)(1)) as set forth above, that party shall provide the requested information on the date on which it is required to be provided to an opposing party under these Local Patent Rules or as set by the Court, unless there exists another legitimate ground for objection.

L. Pat. R. 2.4. Exchange of Expert Materials.

(a) Disclosures of claim construction expert materials and depositions of such experts are governed by L. Pat. R. 4.1, *et seq*., unless otherwise ordered by the Court.

(b) Upon a sufficient showing that expert reports related to issues other than claim construction cannot be rendered until after a claim construction ruling has been entered by the Court, the disclosure of expert materials related to issues other than claim construction will not be required until claim construction issues have been decided.

3. PATENT DISCLOSURES

L. Pat. R. 3.l. Disclosure of Asserted Claims and Infringement Contentions.

Not later than 14 days after the initial Scheduling Conference, a party asserting patent infringement shall serve on all parties a "Disclosure of Asserted Claims and Infringement Contentions." Separately for each

opposing party, the "Disclosure of Asserted Claims and Infringement Contentions" shall contain the following information:

(a) Each claim of each patent in suit that is allegedly infringed by each opposing party, including for each claim the applicable statutory subsections of 35 U.S.C. § 271 asserted;

(b) Separately for each asserted claim, each accused apparatus, product, device, process, method, act, or other instrumentality ("Accused Instrumentality") of each opposing party of which the party is aware. This identification shall be as specific as possible. Each product, device, and apparatus shall be identified by name or model number, if known. Each method or process shall be identified by name, if known, or by any product, device, or apparatus which, when used, allegedly results in the practice of the claimed method or process;

(c) Other than for design patents, a chart identifying specifically where each limitation of each asserted claim is found within each Accused Instrumentality, including for each limitation that such party contends is governed by 35 U.S.C. § 112(6), the identity of the structure(s), act(s), or material(s) in the Accused Instrumentality that performs the claimed function;

(d) For each claim which is alleged to have been indirectly infringed, an identification of any direct infringement and a description of the acts of the alleged indirect infringer that contribute to or are inducing that direct infringement. Insofar as alleged direct infringement is based on joint acts of multiple parties, the role of each such party in the direct infringement must be described;

(e) Other than for design patents, whether each limitation of each asserted claim is alleged to be literally present or present under the doctrine of equivalents in the Accused Instrumentality;

(f) For any patent that claims priority to an earlier application, the priority date to which each asserted claim allegedly is entitled;

(g) If a party asserting patent infringement wishes to preserve the right to rely, for any purpose, on the assertion that its own apparatus, product, device, process, method, act, or other instrumentality practices the claimed invention, the party shall identify, separately for each asserted claim, each such apparatus, product, device, process, method, act, or other instrumentality that incorporates or reflects that particular claim; and

(h) If a party asserting patent infringement alleges willful infringement, the basis for such allegation.

L. Pat. R. 3.2. Document Production Accompanying Disclosure.

With the "Disclosure of Asserted Claims and Infringement Contentions," the party asserting patent infringement shall produce to each opposing party or make available for inspection and copying:

(a) Documents (e.g., contracts, purchase orders, invoices, advertisements, marketing materials, offer letters, beta site testing agreements, and third party or joint development agreements) sufficient to evidence each discussion with, disclosure to, or other manner of providing to a third party, or sale of or offer to sell, or any public use of, the claimed invention prior to the date of application for the patent in suit. A party's production of a document as required herein shall not constitute an admission that such document evidences or is prior art under 35 U.S.C. § 102;

(b) All documents evidencing the conception, reduction to practice, design, and development of each claimed invention, which were created on or before the date of application for the patent in suit or the priority date identified pursuant to L. Pat. R. 3.1(f), whichever is earlier;

(c) A copy of the file history for each patent in suit (or so much thereof as is in the possession of the party asserting patent infringement);

(d) All documents evidencing ownership of the patent rights by the party asserting patent infringement;

(e) If a party identifies instrumentalities pursuant to L. Pat. R. 3.1(g), documents sufficient to show the operation of any aspects or elements of such instrumentalities the party asserting patent infringement relies upon as embodying any asserted claims; and

(f) All documents or things that a party asserting patent infringement intends to rely on in support of any of its infringement contentions under these Rules.

(g) With respect to each of the above document productions, the producing party shall separately identify by production number which documents correspond to each category.

L. Pat. R. 3.2A. Non-Infringement Contentions and Responses.

Not later than 45 days after service upon it of the "Disclosure of Asserted Claims and Infringement Contentions," each party opposing an assertion of patent infringement shall serve on all parties its "Non-infringement Contentions and Responses" to Infringement Contentions which shall include the following:

(a) The written basis for its Non-Infringement Contentions and responses;

(b) The party's responses shall follow the order of the infringement claims chart that is required under L.Pat.R. 3.1(c), and shall set forth the party's agreement or disagreement with each allegation therein, including any additional or different claims at issue;

(c) The production or the making available for inspection of any document or thing that it intends to rely on in defense against any such Infringement Contentions.

L. Pat. R. 3.3. Invalidity Contentions.

Not later than 45 days after service upon it of the "Disclosure of Asserted Claims and Infringement Contentions," each party opposing an assertion of patent infringement shall serve on all parties its "Invalidity Contentions" which shall contain the following information:

(a) The identity of each item of prior art that allegedly anticipates each asserted claim or renders it obvious. Each prior art patent shall be identified by its number, country of origin, and date of issue. Each prior art publication shall be identified by its title, date of publication, and where feasible, author and publisher. Prior art under 35 U.S.C. § 102(b) shall be identified by specifying the item offered for sale or publicly used or known, the date the offer or use took place or the information became known, and the identity of the person or entity which made the use or which made and received the offer, or the person or entity which made the information known or to whom it was made known. Prior art under 35 U.S.C. § 102(f) shall be identified by providing the name of the person(s) from whom and the circumstances under which the invention or any part of it was derived. Prior art under 35 U.S.C. § 102(g) shall be identified by providing the identities of the person(s) or entities involved in and the circumstances surrounding the making of the invention before the patent applicant(s);

(b) Whether each item of prior art anticipates each asserted claim or renders it obvious. If obviousness is alleged, an explanation of why the prior art renders the asserted claim obvious, including an identification of any combinations of prior art showing obviousness;

(c) Other than for design patents, a chart identifying where specifically in each alleged item of prior art each limitation of each asserted claim is found, including for each limitation that such party contends is governed by 35 U.S.C. § 112(6), the identity of the structure(s), act(s), or material(s) in each item of prior art that performs the claimed function; and

(d) Any grounds of invalidity based on 35 U.S.C. § 101, indefiniteness under 35 U.S.C. § 112(b) or enablement or written description under 35 U.S.C. § 112(1) of any of the asserted claims including a detailed explanation of the bases for the asserted grounds.

L. Pat. R. 3.4.  Document Production Accompanying Invalidity Contentions.

With the "Invalidity Contentions," the party opposing an assertion of patent infringement shall produce or make available for inspection and copying:

(a) Source code, specifications, schematics, flow charts, artwork, formulas, or other documentation sufficient to show the operation, composition, or structure of any aspects or elements of an Accused Instrumentality identified by the party asserting patent infringement in its L.Pat.R. 3.1(c) chart; and

(b) A copy or sample of the prior art identified pursuant to L. Pat. R. 3.3(a) which does not appear in the file history of the patent(s) at issue.  To the extent any such item is not in English, an English translation of the portion(s) relied upon shall be produced.

(c) A party asserting invalidity shall also produce any other document or thing on which it intends to rely in support of its assertion.

(d) With respect to each of the above document productions, the producing party shall separately identify by production number which documents correspond to each category.

L. Pat. R. 3.4A. Responses to Invalidity Contentions.

Not later than 14 days after service upon it of the "Invalidity Contentions," each party defending the validity of the patent shall serve on all parties its "Responses to Invalidity Contentions" which shall include the following:

(a) For each item of asserted prior art, the identification of each limitation of each asserted claim that the party believes is absent from the prior art, except for design patents, where the party shall supply an explanation why the prior art does not anticipate the claim;

(b) If obviousness is alleged, an explanation of why the prior art does not render the asserted claim obvious;

(c) The party's responses shall follow the order of the invalidity chart required under L. Pat. R. 3.3(c), and shall set forth the party's agreement or disagreement with each allegation therein and the written basis thereof;

(d)  For each asserted grounds of invalidity under L.Pat.R.3.3(d), a detailed explanation of how the asserted claim complies with 35 U.S.C. §112; and

(e) The production or the making available for inspection and copying of any document or thing that the party intends to rely on in support of its Responses herein.

L. Pat. R. 3.5. Disclosure Requirement in Patent Cases for Declaratory Judgment of Invalidity.

(a) Invalidity Contentions.  If No Claim of Infringement. In all cases in which a party files a complaint or other pleading seeking a declaratory judgment that a patent is invalid, L. Pat. R. 3.1 and 3.2 shall not apply unless and until a claim for patent infringement is made by a party. If the declaratory defendant does not assert a claim for patent infringement in its answer to the complaint, or within 14 days after the Initial Scheduling Conference, whichever is later, the party seeking a declaratory judgment of invalidity shall serve upon each opposing party its Invalidity Contentions that conform to L. Pat. R. 3.3 and produce or make available for inspection and copying the documents described in L. Pat. R. 3.4.  Each party opposing the declaratory plaintiff's complaint seeking a declaratory judgment of invalidity shall serve its "Responses to Invalidity Contentions" as required under L. Pat. R. 3.4A.

(b) Inapplicability of Rule.  This L. Pat. R. 3.5 shall not apply to cases in which a request for a declaratory judgment that a patent is invalid is filed in response to a complaint for infringement of the same patent, in which case the provisions of L. Pat. R. 3.3 and 3.4 shall govern.

L. Pat. R. 3.6. Disclosure Requirements for Patent Cases Arising Under 21 U.S.C. § 355 (commonly referred to as "the Hatch-Waxman Act").

The following applies to all patents subject to a Paragraph IV certification in cases arising under 21 U.S.C. § 355 (commonly referred to as "the Hatch-Waxman Act").  This rule takes precedence over any conflicting provisions in L. Pat. R. 3.1 to 3.5 for all cases arising under 21 U.S.C. § 355.

(a) On the date a party answers, moves, or otherwise responds, each party who is an ANDA filer shall produce to each party asserting patent infringement the entire Abbreviated New Drug Application or New Drug Application that is the basis of the case in question.

(b) Not more than seven days after the initial Scheduling Conference, each party asserting patent infringement shall serve on all parties a "Disclosure of Asserted Claims" that lists each claim of each patent that is allegedly infringed by each opposing party, including for each claim the applicable statutory subsections of 35 U.S.C. § 271 asserted.

(c) Not more than 30 days after the initial Scheduling Conference, each party opposing an assertion of patent infringement shall provide to each party asserting patent infringement the written basis for its "Invalidity Contentions," for any patents referred to in the opposing party's Paragraph IV Certification, which shall contain all disclosures required by L. Pat. R. 3.3.

(d) Any "Invalidity Contentions" disclosed under L. Pat. R. 3.6(c) shall be accompanied by the production of documents required under L. Pat. R. 3.4(b) and (c).

(e) Not more than 30 days after the initial Scheduling Conference, each party opposing an assertion of patent infringement shall provide to each party asserting patent infringement the written basis for its "Non-Infringement Contentions," for any patents referred to in the opposing party's Paragraph IV Certification which shall include a claim chart identifying each claim at issue in the case and each limitation of each claim at issue. The claim chart shall specifically identify for each claim which claim limitation(s) is/(are) literally absent from each opposing party's allegedly infringing Abbreviated New Drug Application or New Drug Application.

(f) Any "Non-Infringement Contentions" disclosed under L. Pat. R. 3.6(e) shall be accompanied by the production of any document or thing that each party who is an ANDA filer intends to rely on in defense against any infringement contentions by each party asserting patent infringement.

(g)  Not more than 45 days after the disclosure of the "Non-Infringement Contentions" as required by L. Pat. R. 3.6(e), each party asserting patent infringement shall provide each opposing party with a "Disclosure of Asserted Claims and Infringement Contentions," for all patents referred to in each opposing party's Paragraph IV Certification, which shall contain all disclosures required by L. Pat. R. 3.1.  The infringement contentions shall be limited to the claims identified in L. Pat. R. 3.6(b).

(h)  Any "Disclosure of Asserted Claims and Infringement Contentions" disclosed under L. Pat. R. 3.6(g), shall be accompanied by the production of documents required under L. Pat. R. 3.2.

(i) Not more than 45 days after the disclosure of "Invalidity Contentions" as required by L. Pat. R. 3.6(c), the party defending the validity of the patent shall serve on each other party its "Responses to Invalidity Contentions" as required under L. Pat. R. 3.4A.

(j) Each party that has an ANDA application pending with the Food and Drug Administration ("FDA") that is the basis of the pending case shall:  (1) notify the FDA of any and all motions for injunctive relief no later than three business days after the date on which such a motion is filed; and (2) provide a copy of all correspondence between itself and the FDA pertaining to the ANDA application to each party asserting infringement, or set forth the basis of any claim of privilege for such correspondence pursuant to L.Civ.R. 34.1, no later than seven days after the date it sends same to the FDA or receives same from the FDA.

L. Pat. R. 3.7.  Amendments.

Amendment of any contentions, disclosures, or other documents required to be filed or exchanged pursuant to these Local Patent Rules may be made only by order of the Court upon a timely application and showing of good cause.  The application shall disclose whether parties consent or object.  Non-exhaustive examples of circumstances that may, absent undue prejudice to the adverse party, support a finding of good cause include: (a) a claim construction by the Court different from that proposed by the party seeking amendment; (b) recent discovery of material prior art despite earlier diligent search; (c) recent discovery of nonpublic information about the Accused Instrumentality which was not discovered, despite diligent efforts, before the service of the Infringement Contention; (d) disclosure of an infringement contention by a Hatch-Waxman Act party asserting infringement under L. Pat. R. 3.6(g) that requires response by the adverse party because it was not previously presented or reasonably anticipated; and (e) consent by the parties in interest to the amendment and a showing that it will not lead to an enlargement of time or impact other scheduled deadlines.  The duty to supplement discovery responses under Fed. R. Civ. P. 26(e) does not excuse the need to obtain leave of Court to amend contentions, disclosures, or other documents required to be filed or exchanged pursuant to these Local Patent Rules.

L. Pat. R. 3.8. Advice of Counsel.

Unless otherwise ordered by the Court, not later than 30 days after entry of the Court's claim construction order, or upon such other date as set by the Court, each party relying upon advice of counsel as part of a patent-related claim or defense for any reason shall:

(a) Produce or make available for inspection and copying any written advice and documents related thereto for which the attorney-client and work product protection have been waived;

(b) Provide a written summary of any oral advice and produce or make available for inspection and copying that summary and documents related thereto for which the attorney-client and work product protection have been waived; and

(c) Serve a privilege log identifying any documents other than those identified in subpart (a) above, except those authored by counsel acting solely as trial counsel, relating to the subject matter of the advice which the party is withholding on the grounds of attorney-client privilege or work product protection.

A party who does not comply with the requirements of this L. Pat. R. 3.8 shall not be permitted to rely on advice of counsel for any purpose absent a stipulation of all parties or by order of the Court.

4.  CLAIM CONSTRUCTION PROCEEDINGS

L. Pat. R. 4.1. Exchange of Proposed Terms for Construction.

(a) Not later than 14 days after service of the "Responses to Invalidity Contentions" pursuant to  L. Pat. R. 3.4A, not later than 45 days after service upon it of the "Non-Infringement Contentions and Responses" pursuant to L. Pat. R. 3.2A in those actions where validity is not at issue (and L. Pat. R. 3.3 does not apply), or, in all cases in which a party files a complaint or other pleading seeking a declaratory judgment not based on validity, not later than 14 days after the defendant serves an answer that does not assert a claim for patent infringement (and L. Pat. R. 3.1 does not apply), each party shall serve on each other party a list of claim terms which that party contends should be construed by the Court, and identify any claim term which that party contends should be governed by 35 U.S.C. § 112(6).

(b) The parties shall thereafter meet and confer for the purposes of limiting the terms in dispute by narrowing or resolving differences and facilitating the ultimate preparation of a Joint Claim Construction and Prehearing Statement.

(c) This rule does not apply to design patents.

L. Pat. R. 4.2. Exchange of Preliminary Claim Constructions and Extrinsic Evidence.

(a) Not later than 21 days after the exchange of the lists pursuant to L. Pat. R. 4.1, the parties shall simultaneously exchange preliminary proposed constructions of each term identified by any party for claim construction, including constructions for each term for which "plain and ordinary" meaning is asserted.  Each such "Preliminary Claim Construction" shall also, for each term which any party contends is governed by 35 U.S.C. § 112(6), identify the structure(s), act(s), or material(s) corresponding to that term's function.

(b) At the same time the parties exchange their respective "Preliminary Claim Constructions,"  each party shall also identify all extrinsic evidence, all references from the specification or prosecution history that support its preliminary proposed construction and designate any supporting extrinsic evidence including, without limitation, dictionary definitions, citations to learned treatises and prior art and testimony of all witnesses including expert witnesses.  Extrinsic evidence shall be identified by production number or by producing a copy if not previously produced.  With respect to all witnesses including experts, the identifying party shall also provide a description of the substance of that witness' proposed testimony that includes a listing of any opinions to be rendered in connection with claim construction.

(c) Not later than 14 days after the parties exchange the "Preliminary Claim Constructions" under this rule, the parties shall exchange an identification of all intrinsic evidence and extrinsic evidence that each party intends to rely upon to oppose any other party's proposed construction, including without limitation, the evidence referenced in L. Pat. R. 4.2(b).

(d) The parties shall thereafter meet and confer for the purposes of narrowing the issues and finalizing preparation of a Joint Claim Construction and Prehearing Statement.

(e) This rule does not apply to design patents.

L. Pat. R. 4.3. Joint Claim Construction and Prehearing Statement.

Not later than 30 days after the exchange of "Preliminary Claim Constructions" under L. Pat. R. 4.2(a), the parties shall complete and file a Joint Claim Construction and Prehearing Statement, which shall contain the following information:

(a) The construction of those terms on which the parties agree;

(b)  Each party's proposed construction of each disputed term, together with an identification of all references from the intrinsic evidence that support that construction, and an identification of any extrinsic evidence known to the party on which it intends to rely either to support its proposed construction or to oppose any other party's proposed construction, including, but not limited to, as permitted by law, dictionary definitions, citations to learned treatises and prior art, and testimony of all witnesses including experts;

(c) An identification of the terms whose construction will be most significant to the resolution of the case.  The parties shall also identify any term whose construction will be case or claim dispositive or substantially conducive to promoting settlement, and the reasons therefor;

(d)  The anticipated length of time necessary for the Claim Construction Hearing; and

(e) Whether any party proposes to call one or more witnesses at the Claim Construction Hearing, the identity of each such witness, and for each witness, a summary of his or her testimony including, for any expert, each opinion to be offered related to claim construction.

(f) Any evidence that is not identified under L. Pat. R. 4.2(a) through 4.2(c) inclusive shall not be included in the Joint Claim Construction and Prehearing Statement.

(g) This rule does not apply to design patents.

L. Pat. R. 4.4. Completion of Claim Construction Discovery.

Not later than 30 days after service and filing of the Joint Claim Construction and Prehearing Statement, the parties shall complete all discovery relating to claim construction, including any depositions with respect to claim construction of any witnesses, other than experts, identified in the Preliminary Claim Construction statement (L. Pat. R. 4.2) or Joint Claim Construction and Prehearing Statement (L. Pat. R. 4.3).  This rule does not apply to design patents.

L. Pat. R. 4.5. Claim Construction Submissions.

(a) Not later than 45 days after serving and filing the Joint Claim Construction and Prehearing Statement, the parties shall contemporaneously file and serve their opening Markman briefs and any evidence supporting claim construction, including experts' certifications or declarations ("Opening Markman Submissions").

(b)  Unless otherwise ordered by the Court, any discovery from an expert witness who submitted a certification or declaration under L. Pat. R. 4.5(a) shall be concluded within 30 days after filing the Opening Markman Submissions.

(c) Not later than 60 days after the filing of the Opening Markman Submissions, the parties shall contemporaneously file and serve responding Markman briefs and any evidence supporting claim construction, including any responding experts' certifications or declarations.

(d) With regard to design patents only, subsections (a), (b), and (c) shall not apply. Where a design patent is at issue, not later than 45 days after the submission of "Non-Infringement Contentions and Responses" under L. Pat. R. 3.2A and/or "Responses to Invalidity Contentions" under L. Pat. R. 3.4A, the parties shall contemporaneously file and serve opening Markman briefs and any evidence supporting claim construction. Not more than 30 days after the filing of the opening Markman briefs, the parties shall contemporaneously file and serve responding Markman briefs and any evidence supporting claim construction.

L. Pat. R. 4.6. Claim Construction Hearing.

Within two weeks following submission of the briefs and evidence specified in L. Pat. R. 4.5(c) and (d), counsel shall confer and propose to the Court a schedule for a Claim Construction Hearing, to the extent the parties or the Court believe a hearing is necessary for construction of the claims at issue.

Adopted: December 11, 2008; Effective January 1, 2009. Amended: March 18, 2011; October 4, 2011; June 19, 2013; February 1, 2017, March 24, 2021; July 6, 2021.

## UNITED STATES DISTRICT COURT DISTRICT OF NEW JERSEY
## REPORT OF THE LOCAL PATENT RULES COMMITTEE

### Explanatory Notes to Proposed Local Patent Rules

In June 2008, Chief Judge Garrett E. Brown, Jr., appointed a special Local Patent Rules Committee consisting of District Judges, Magistrate Judges, a cross-section of attorneys, and a Deputy Clerk of the Court, under the Chairmanship of the Hon. Jerome B. Simandle, U.S.D.J.  The purpose of the Committee was to address whether there was a need for separate local rules governing patent cases in this District, and if so, to evaluate such potential rules.  The consensus of the Committee was that a recommended standard protocol for patent cases would likely be helpful to the Court and to the parties.  The Committee further concluded that it should look to other districts where local patent rules were already in place in developing a framework for this District.

As a starting point, the Committee surveyed all districts where local patent rules were then in effect. Based on that review, the Committee concluded that it would use the Patent Local Rules of the Northern District of California as a template, with variants as may be appropriate in light of the practices, procedures, and Local Civil Rules that have been followed in this District.

First among those considerations is the special role our Magistrate Judges play in case management. For example, in contrast to many other districts, the Magistrate Judges in New Jersey have primary responsibility for most pre-trial activities.  The Magistrate Judges, therefore, are able to efficiently "customize" discovery and scheduling based on the needs of the parties and the subject matter of the lawsuit.  Thus, the Committee took into account that in some instances the Court should have the discretion, where it may deem it appropriate, to accelerate or modify the schedule set forth in the local patent rules for less complex cases where the technology is relatively simple or there is little dispute as to the structure, function or operation of the accused item.  With this in mind, the Committee recognized that local patent rules should be consistent with current practices of the Court when providing guidance in the management of patent cases as well as providing to the parties some predictability in the format of the process.

Another special consideration addressed by the Committee was the entry of a discovery confidentiality order early in the case consistent with the obligations under Third Circuit authority, which obligations are not ordinarily found outside of the Circuit.

The Committee also considered certain procedural matters that might apply to Hatch-Waxman cases as these types of actions are in some respect different from the conventional patent cases.

In the end, drawing on the existing local patent rules in other districts and modified as warranted by the Committee, the proposed local patent rules were submitted to the Board of Judges in September 2008.

Although the charge of the Committee was to investigate the need for, and as appropriate, propose local patent rules, it also recognized the changes in patent law and applicable authority may warrant future modifications to these rules. Accordingly, it is the recommendation of the Committee to continue to oversee and evaluate the implementaton and operation of these Rules and to consider modifications where appropriate or necessary. The Committee stands ready to serve if requested by the Court to do so.

<u>Local Patent Rules Committee</u>

Hon. Jerome B. Simandle, U.S.D.J., Chair
Hon. Stanley R. Chesler, U.S.D.J.
Hon. Mary L. Cooper, U.S.D.J.
Hon. Joseph A. Greenaway, U.S.D.J.
Hon. Faith S. Hochberg, U.S.D.J.
Hon. Jose L. Linares, U.S.D.J.
Hon. William Martini, U.S.D.J.
Hon. Peter G. Sheridan, U.S.D.J.
Hon. Tonianne J. Bongiovanni, U.S.M.J.
Hon. Joel Schneider, U.S.M.J.
Hon. Patty Shwartz, U.S.M.J.
John T. O'Brien, Legal Coordinator
Arnold B. Calmann, Esq.
Thomas Curtin, Esq.
Marc S. Friedman, Esq.
Dennis F. Gleason, Esq.
Mary Sue Henifin, Esq.
Peter Menell, Prof. of Law, Univ. of Calif., Berkeley School of Law
William L. Mentlik, Esq.
George F. Pappas, Esq.
Matthew D. Powers, Esq.
Donald Robinson, Esq.
Robert G. Shepherd Esq.

<u>September 10, 2008</u>

## UNITED STATES DISTRICT COURT DISTRICT OF NEW JERSEY
## REPORT OF THE LOCAL PATENT RULES COMMITTEE

### Explanatory Notes for 2011 Amendments

In September 2010, almost two years after the Local Patent Rules had been adopted, the Committee reconvened to assess the impact and effectiveness of the Local Patent Rules. Based on the experiences of

members of the Committee from the Judiciary and the Bar, there was an unanimous view that the Local Patent Rules have served to benefit the Court and the parties in patent litigation.

Notwithstanding those positive experiences, the Committee also believed that certain amendments might be warranted. Those areas of proposed changes include: (a) design patents; (b) certain disclosure obligations; (c) clarifying disclosure of evidence in connection with a Markman hearing; (d) need for responses to infringement and invalidity contentions; (e) specific modifications for disclosures exclusive to Hatch-Waxman cases; (f) amendments to required submissions or filings; and clarification in the language of rules.

Subcommittees were appointed for each of the subject areas and shortly thereafter recommendations were proposed to the full Committee, which discussed them at length.

With regard to design patents, shortly after the Committee had submitted its proposed patent rules in 2008, the Court of Appeals for the Federal Circuit issued its en banc ruling in Egyptian *Goddess v. Swisa*, 543 F.3d 665 (Fed. Cir. 2008), which held, in part, that a trial court should not provide a detailed verbal description of the claimed design. This holding is in tension with certain of the Local Patent Rules which call for a narrative claims chart, claim construction contentions and a claim construction hearing. The Committee determined that in light of the Federal Circuit authority, modifications were appropriate to better suit the needs of design patents. See L. Pat. R. 3.1(c) and (e); 3.3(c); 3.4A(c); 4.1(c); 4.2(e); 4.3(g); 4.4; and 4.5(d).

While the Local Patent Rules expressly reference obligations regarding infringement and invalidity, the Committee noted that in cases outside of Hatch-Waxman matters, no provision presently exists that requires the allegedly infringing party to provide its non-infringement contentions. Accordingly, the Committee proposed disclosure obligations for non-infringement similar to those required for assertion of infringement and invalidity. See L. Pat. R. 3.2A(a) and (b); and 3.4(c).

As to invalidity contentions, while there are disclosure obligations by a party asserting invalidity, the Committee determined that a requirement that mandates that the patent holder respond in kind to invalidity contentions will provide parity between the parties and serve to focus the invalidity challenge. See L. Pat. R. 3.4A(a),(b) and (c); and 3.5 (a).

To help ensure that the spirit of the disclosure obligations is fully appreciated, the Committee recommended various rules requiring parties to disclose all materials that they intend to rely upon in connection with infringement, non-infringement, and invalidity contentions and or responses thereto. See L. Pat. R. 3.2(f); 3.2A(c); 3.4(c); and 3.4A(d).

In the area of Hatch-Waxman actions under L. Pat. R. 3.6, the Committee concluded that in order to help narrow the focus of a generic's invalidity contentions, the patent holder should be required to provide early disclosure of each patent and patent claim for infringement to which its infringement contentions would be limited. This eliminates speculation and added work by the generics in formulating their non-infringement and invalidity contentions. Changes recommended to disclosure obligations in non-Hatch-Waxman cases as they would apply in the Hatch-Waxman context were also proposed. In addition, the Committee determined that the ANDA filer should produce its Abbreviated New Drug Application or New Drug Application shortly after filing an answer or motion as this is a fundamental element of the Hatch-Waxman action. It was also recommended that the ANDA filer be required to advise the Food and Drug Administration ("FDA") of any motion for injunctive relief and supply the parties with relevant communications with the FDA which concern the subject matter filed in the District Court. This is intended to keep the FDA and parties apprised of any proceedings that may impact the ongoing litigation. See L. Pat. R. 3.6(a), (b), (c), (i) and (j).

In an effort to avoid potential misunderstandings as to the scope of permitted amendments to obligations under the Local Patent Rules, the Committee sought to clarify that amendments apply to all filings with the Court or exchanges between the parties as may be required by the Local Patent Rules.  The proposed rule also makes plain that any amendments require the approval of the Court, notwithstanding consent by the parties. See L. Pat. R. 3.7.

Finally, as to claim construction and claim construction proceedings, the Committee proposed adding language to clarify that evidence to be used must be disclosed in a timely fashion.  See L. Pat. R. 4.2(b) and (c); and 4.3(f).

In December 2010, the Committee submitted the proposed amendments to the Board of Judges for their consideration.

Local Patent Rules Committee

Hon. Jerome B. Simandle, U.S.D.J., Chair
Hon. Stanley R. Chesler, U.S.D.J.
Hon. Mary L. Cooper, U.S.D.J.
Hon. Faith S. Hochberg, U.S.D.J.
Hon. Peter G. Sheridan, U.S.D.J.
Hon. Tonianne J. Bongiovanni, U.S.M.J.
Hon. Joel Schneider, U.S.M.J.
Hon. Mark Falk, U.S.M.J.
Hon. Patty Shwartz, U.S.M.J.
John T. O'Brien, Legal Coordinator
Arnold B. Calmann, Esq.
Thomas Curtin, Esq.
David De Lorenzi, Esq.
Marc S. Friedman, Esq.
Dennis F. Gleason, Esq.
Mary Sue Henifin, Esq.
Norman E. Lehrer, Esq.
Peter Menell, Prof. of Law, Univ. of Calif., Berkeley School of Law
William L. Mentlik, Esq.
George F. Pappas, Esq.
Matthew D. Powers, Esq.
Donald Robinson, Esq.
Robert G. Shepherd Esq.


December 2, 2010

## UNITED STATES DISTRICT COURT DISTRICT OF NEW JERSEY
## REPORT OF THE LOCAL PATENT RULES COMMITTEE

Explanatory Notes for 2017 Amendments

The Local Patent Rules were implemented in September 2008, and certain amendments to the Rules were adopted with the March 2011 revision to the Rules.

Over the course of the last ten months, the Local Patent Rules Advisory Committee has once again examined the operation of the Local Patent Rules and, consistent with past history, has found that the Rules generally are operating well, and provide a rational and reasonably efficient structure for the judicial administration, litigation and trial of patent matters in the District of New Jersey.

However, as a result of learning from experiences in operating under the Rules since they were last amended, certain issues have arisen that led to the Committee's consideration of possible modifications to the Rules. In order to balance and clarify certain issues, expedite issues for the Court and Magistrate Judges in particular, and attempt to enhance the overall pretrial process, the Committee considered several potential amendments to the Rules.

**Committee Process**-- Committee members identified issues of interest or potential amendments for consideration by the entire Committee . The Committee then identified the issues of highest order of priority. That process resulted in the appointment of subcommittees directed to each such issue. Each subcommittee investigated, examined and evaluated the issues, and determined whether an amendment or Rule revision was necessary.

The subcommittees then submitted reports to the Committee as a whole, and those reports and any potential amendments to the Rules were then discussed at length by the entire Committee. Ultimately, the Committee voted to approve certain amendments.

**Amendments** -- The following amendments were approved by the Board of Judges after submission by the Patent Rules Advisory Committee:

**Rule 2.1(a)(6)**- With respect to matters to be discussed for the purpose of preparing the Joint Discovery Plan for submission to a Magistrate Judge in advance of the initial Scheduling Conference, a new subpart is included that expands the topics to be discussed between the parties in order to expedite matters, and attempt to avoid more protracted disputes later in the discovery process (e.g., availability of invention records, product samples, whether there is a 30-month stay and when it ends, and scheduling order issues, etc.). The Committee recommended encouraging a complete and thorough discussion of issues that need to be addressed by the Court at the initial Rule 26 conference.

**Rule 2.2**- The Committee recommended that the Discovery Confidentiality Order be submitted in 14 days rather than 30 days subsequent to the initial Scheduling Conference in an attempt to expedite the exchange of foundation discovery, which in many instances comprises commercially sensitive information.

**Rules 3.3(d) (Invalidity Contentions)** and 3.4A (Responses to Invalidity Contentions- This amendment would require a party asserting invalidity under Sec. 112 of the Patent Act to set forth the factual basis for that assertion, and would require the patent owner to respond with a detailed explanation of how the claim complies with Section 101 and 112.

**Rule 3.6 (c) and (e)**- With regard to Hatch-Waxman matters, the Committee recommended that the time for submission of invalidity and noninfringement contentions be extended from 14 days to 30 days from the date of the Scheduling Conference. The Committee concluded that the current 14-day period presented too compressed a schedule, and that the additional time for such submissions would not significantly impact overall case management, particularly in light of other changes under these Rules.

**Rules 4.1 and 4.2 (Exchange of claim terms for construction)**- Pursuant to this amendment, parties would be required to explain the meaning of "plain and ordinary" assigned to each claim term. The Committee determined that parties often rely on the Court to determine what the parties mean by that phrase. The

Committee concluded that the Local Patent Rule should be amended to require a party to define its understanding of the phrase "plain and ordinary meaning" for each claim term for which that phrase is asserted.

In May 2016, the Committee submitted the proposed amendments to the Board of Judges for their consideration.

Local Patent Rules Committee

Hon. Stanley R Chesler, U.S.D.J., Chair
Hon. Jerome B. Simandle, U.S.D.J., Chief Judge, Ex officio
Hon. Patty Shwartz, U.S.C.J.
Hon. Mary L. Cooper, U.S.D.J.
Hon. Douglas E. Arpert, U.S.M.J.
Hon. Tonianne J. Bongiovanni, U.S.M.J.
Hon. Michael A. Hammer, U.S.M.J.
Hon. Lois H. Goodman, U.S.M.J.
Hon. Joel Schneider, U.S.M.J.
Hon. Leda D. Wettre, U.S.M.J.
Hon. Karen M. Williams, U.S.M.J.
John T. O'Brien, Legal Coordinator
Arnold B. Calmann, Esq.
Thomas Curtin, Esq.
David De Lorenzi, Esq.
John E. Flaherty, Esq.
Dennis F. Gleason, Esq.
Edgar H. Haug, Esq.
Mary Sue Henifin, Esq.
Norman E. Lehrer, Esq.
Charles M. Lizza, Esq.
Peter Menell, Prof. of Law,
Univ. of Calif., Berkeley School of Law
William L. Mentlik, Esq.
George F. Pappas, Esq.
Donald Robinson, Esq.
Robert G. Shepherd Esq.
Liza M. Walsh, Esq

## Civ. RULE 10.1 FORM OF PLEADINGS

(a) The initial pleading, motion, or other paper of any party filed in any cause other than criminal actions in this Court shall state in the first paragraph the street and post office address of each named party to the case or, if the party is not a natural person, the address of its principal place of business. If a pleading, motion, or other initial paper submitted for filing in a case does not contain the street and post office address of counsel, their client(s) or unrepresented parties, it may be stricken by the Clerk and returned to the submitting party by the Clerk unless a statement why the client's address cannot be provided at this time is presented. Counsel and/or unrepresented parties must advise the Court of any change in their or their client's address within seven days of being apprised of such change by filing a notice of said change with the Clerk. Failure to file a notice of address change may result in the imposition of sanctions by the Court.

(b) All papers to be filed in any cause or proceeding in this Court shall be plainly printed or typewritten, without interlineations or erasures which materially deface them; shall bear the docket number and the name of

the Judge assigned to the action or proceeding; and shall have endorsed upon the first page the name, office, post office address, and telephone number of the attorney of record for the filing party.  All papers shall be in black lettering on reasonably heavy paper size 8.5 x 11 inches; carbon copies shall not be used.

Amended: March 9, 2007; March 1, 2010.

## Civ. RULE 11.1 SIGNING OF PLEADINGS

In each case, the attorney of record who is a member of the bar of this Court shall sign all papers submitted to the Court or filed with the Clerk.  Counsel admitted *pro hac vice* also are deemed responsible under Fed. R. Civ. P. 11(b) for filings with the Court, as provided in Local Civil Rule 101.1(c)(6).

Amended: July 5, 7.5.2018.

## Civ. RULE 11.2 - VERIFICATION OF PETITIONS AND INITIAL CERTIFICATIONS

Except where otherwise provided by law, every petition shall be verified and, whenever possible, by the person on whose behalf it is presented.  In case the same shall be verified by another, the affiant, declarant or certifier shall state in the affidavit, declaration, certification or other document submitted in accordance with 28 U.S.C. § 1746 the reasons such person does not make the verification and the affiant's, declarant's or certifier's authority for making it.  The initial pleading, motion or other paper of any party filed in any case in this Court, other than a criminal action, shall be accompanied by a certification or other document complying with 28 U.S.C. § 1746 as to whether the matter in controversy is the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding, and, if so, the certification or other authorized document shall identify each such action, arbitration or administrative proceeding, and all parties thereto.

Amended: April 30, 1998, June 19, 2013.

## Civ. RULE 11.3 APPLICATIONS FOR FED. R. CIV. P. 11 SANCTIONS

All applications for sanctions pursuant to Fed. R. Civ. P. 11 shall be filed with the Clerk prior to the entry of final judgment notwithstanding the provisions of any other Rule of this Court.

## Civ. RULE 12.1 DEFENSES AND OBJECTIONS: WHEN AND HOW PRESENTED

In General.  When asserting, by way of a motion, any of the defenses allowable under Fed. R. Civ. P. 12(b), a party may file the motion without prior Court approval.

Adopted June 19, 2013.

## Civ. RULE 12.2 MOTION TO DISMISS FEWER THAN ALL CLAIMS

When a motion to dismiss pursuant to Fed. R. Civ. P. 12(b) addresses fewer than all of the claims for relief in a complaint, the pleading in response to any claims for relief which have not been dismissed shall be filed 14 days after entry of the Court's order resolving said motion to dismiss.

Adopted June 19, 2013

## Civ. RULE 15.1 MOTIONS TO FILE AMENDED PLEADINGS

(a)  Except as provided in section (b) of this Rule, or as may be excused by the Court, a party who seeks leave to amend a pleading shall do so by motion, which shall state whether such motion is opposed, and shall attach to the motion:

(1)  a copy of the proposed amended pleading; and

(2) a form of the amended pleading that shall indicate in what respect(s) it differs from the pleading which it proposes to amend, by bracketing or striking through materials to be deleted and underlining materials to be added.

If the motion to amend is granted, the moving party shall file the original forthwith as the amended pleading. Service shall be accomplished consistent with the Fed. R. Civ. P. and these Rules.

(b) Except as may be excused by the Court, a party who files an amended pleading in response to an Order authorizing the filing of that pleading to cure a defect in its pleading shall file:

(1) a copy of the amended pleading, complete with a handwritten or electronic signature; and

(2) a form of the amended pleading that shall indicate in what respect(s) it differs from the pleading that it amends, by bracketing or striking through materials to be deleted and underlining materials to be added.

Service shall be accomplished consistent with the Fed. R. Civ. P. and these Rules.

Adopted: May 10, 2017.

## Civ. RULE 16.1 PRETRIAL CONFERENCES; SCHEDULING; CASE MANAGEMENT

(a) Scheduling Conferences -- Generally

(1) Conferences pursuant to Fed. R. Civ. P. 16 shall be conducted, in the first instance, by the Magistrate Judge, unless the District Judge otherwise directs. The initial conference shall be scheduled within 60 days of filing of an initial answer, unless deferred by the Magistrate Judge due to the pendency of a dispositive or other motion.

(2) The Judge may conduct such other conferences as are consistent with the circumstances of the particular case and this Rule and may revise any prior scheduling order for good cause.

(3) At each conference each party not appearing *pro se* shall be represented by an attorney who shall have full authority to bind that party in all pretrial matters.

(4) The Judge may, at any time he or she deems appropriate or at the request of a party, conduct a settlement conference. At each such conference attorneys shall ensure that parties are available, either in person or by telephone, and as the Judge directs, except that a governmental party may be represented by a knowledgeable delegate.

(5) Conferences shall not be conducted in those civil cases described in L.Civ.R. 72.1(a)(3)(C) unless the Judge so directs.

(b) Scheduling and Case Management Orders

(1) At or after the initial conference, the Judge shall, after consultation with counsel, enter a scheduling order which may include, but need not be limited to, the following:

(A) dates by which parties must move to amend pleadings or add new parties;

(B) dates for submission of experts' reports;

(C) dates for completion of fact and expert discovery;

(D) dates for filing of dispositive motions after due consideration whether such motions may be brought at an early stage of proceedings (i.e., before completion of fact discovery or submission of experts' reports);

(E) a pretrial conference date;

(F) any designation of the case for arbitration, mediation, appointment of a special master or other special procedure;

(G) limitations on the scope of preservation, as well as on the scope, method or order of discovery as may be warranted by the circumstances of the particular case to avoid duplication, harassment, delay or needless expenditure of costs; and

(H) in an action asserting professional malpractice or negligence,

> (1)  whether an affidavit of merit has been served, or is required to be served,

> (2)  the date by which an affidavit of merit must be served,

> (3)  if an affidavit has been served, whether the defendant has any objections to the adequacy of the affidavit, and

> (4)  if appropriate, dates for filing of summary judgment motions concerning the necessity or adequacy of the affidavit.

(2)  Absent objection of a party or a form of order submitted on consent, either of which must be set forth in a proposed discovery plan submitted pursuant to Federal Rule of Civil Procedure 26(f)(2), a scheduling order entered pursuant to this subsection on or after September 30, 2016 shall be deemed to incorporate an order pursuant to Federal Rule of Evidence 502(d) that:

> (i) The production of materials, inadvertent or otherwise, shall not be deemed a waiver of attorney-client privilege or work product protection in this civil action or in any other federal or State proceeding.

> (ii) Nothing in (i) above shall limit the right of a party or subpoenaed nonparty to conduct a reasonable review of materials for relevance or otherwise in response to a discovery request or requests.

(3) The Magistrate Judge shall advise each party of the provisions of L.Civ.R. 73.1(a).

(4) In a civil action arising under 18 U.S.C. §§1961-1968, the Judge may require a RICO case statement to be filed and served in the form set forth in Appendix O.

(c) Initial Conferences -- L.Civ.R. 201.1 Arbitration Cases

At the initial conference in cases assigned to arbitration pursuant to L.Civ.R. 201.1(c) the Judge shall enter a scheduling order as contemplated by L.Civ.R. 16.1(b) except that no pretrial date shall be set. Only an initial conference shall be conducted prior to a demand for trial de novo pursuant to L.Civ.R. 201.1(g), except that the Judge may conduct one or more additional conferences if a new party or claim is added, or an unanticipated event occurs affecting the schedule set at the initial conference.

(d) (deleted by order of 9/23/97)

(e) Trial Briefs

Trial briefs shall be served upon counsel and delivered to the Court as directed in the pretrial order or otherwise.

(f) Conference to Resolve Case Management Disputes

(1) Counsel shall confer to resolve any case management dispute. Any such dispute not resolved shall be presented by telephone conference call or letter to the Judge. This presentation shall precede any formal motion.

(2) Cases in which a party appears pro se shall not be subject to L.Civ.R. 16.1(f)(1) unless the Judge so directs. In such cases case management disputes shall be presented by formal motion consistent with L.Civ.R. 16.1(g).

(g) Case Management -- Motions

(1) Case management motions must be accompanied by an affidavit or other document complying with 28 U.S.C. § 1746 certifying that the moving party has conferred with the opposing party in a good faith effort to resolve by agreement the issues raised by the motion without the intervention of the Court and that the parties have been unable to reach agreement. The affidavit or other document complying with 28 U.S.C. § 1746 shall set forth the date and method of communication used in attempting to reach agreement.

(2) L.Civ.R. 7.1 shall apply to case management motions, except that no reply papers shall be allowed except with the permission of the Judge.  Unless oral argument is to be heard under L.Civ.R.16.1(g)(3), the Judge may decide the motion on the basis of the papers received when the deadline for submitting the opposition has expired.

(3) No oral argument shall be heard except as permitted expressly by the Judge assigned to hear the motion. In the event oral argument is required, the parties shall be notified by the Court. Oral argument may be conducted in open court or by telephone conference, at the discretion of the Judge. Any party who believes that a case management motion requires oral argument shall request it in the notice of motion or in response to the notice of motion, and so notify the Court in writing at the time the motion or opposition thereto is filed.

Amended: September 23, 1997; March 1, 2010; June 19, 2013; September 30, 2016; July 5, 2018.

## Civ. RULE 24.1 NOTICE OF CLAIM OF UNCONSTITUTIONALITY

(a) If, at any time prior to the trial of an action in which neither the United States nor any officer, agency or employee thereof is a party, a party to the action questions the constitutionality of an act of Congress, such party (to enable the Court to comply with 28 U.S.C. § 2403(a)) shall forthwith, upon the filing of any pleading which raises the question, notify the Judge to whom the action is assigned, in writing, of the existence of said question, identifying: (1) the title and docket number of the action; (2) the statute challenged; and (3) why it is claimed that the statute is unconstitutional. If memoranda have been served discussing the constitutional question, two copies of each memorandum shall be forwarded with the notification.

(b) If, at any time prior to the trial of an action in which neither the State of New Jersey nor any officer, agency or employee thereof is a party, a party to the action questions the constitutionality of any State statute, such party (to enable the Court to comply with 28 U.S.C. § 2403(b)) shall forthwith, upon the filing of any pleading which raises the question, notify the Judge to whom the action is assigned, in writing, of the existence of said question identifying: (1) the title and docket number of the action; (2) the statute challenged; and

(3) why it is claimed that the statute is unconstitutional. If memoranda have been served discussing the constitutional question, two copies of each memorandum shall be forwarded with the notification.

## Civ. RULE 24.2 STATUTORY COURT

Where, pursuant to law, an action must be heard by a District Court composed of three judges, two from this Court and one from the Third Circuit, the procedure to be followed by counsel in filing pleadings and submitting briefs will be as follows:

(a) All pleadings are to be filed with the Clerk in quadruplicate, the original becoming part of the Clerk's file, the three copies to be distributed by the Clerk to the members of the Statutory Court.

(b) Six copies of briefs are to be submitted. Unless otherwise directed by the Court, they are to be delivered to the Clerk for distribution to the members of the Statutory Court.

## Civ. RULE 26.1 DISCOVERY

(a) Discovery - Generally

All parties shall conduct discovery expeditiously and diligently.  In addition, all discovery conducted shall be proportional to the needs of the case, considering the factors set forth in Federal Rule of Civil Procedure 26(b)(1).

(b) Meeting of Parties, Discovery Plans, and Initial Disclosures

(1)  The requirements currently codified in Fed. R. Civ. P. 26(a) and (f) pertaining to required disclosures, meetings of parties, and submission of discovery plans, shall apply to all civil cases, except those described in L.Civ.R. 72.1(a)(3)(C) in which scheduling conferences are not normally held, unless the judicial officer otherwise directs. The judicial officer may modify or suspend these requirements in a case for good cause.

(2)  The initial meeting of parties as required in Fed. R. Civ. P. 26(f) shall be convened at least 21 days before the initial scheduling conference, and the proposed discovery plan under Fed. R. Civ. P. 26(f)(3) shall be generated at that meeting and delivered to the Magistrate Judge within 14 days after the meeting of parties.  The parties shall submit their Fed. R. Civ. P. 26(f) discovery plan containing the parties' views and proposals regarding the following:

(a) Any changes in timing, form, or requirements of mandatory disclosures under Fed. R. Civ. P. 26(a);

(b)  The date on which mandatory disclosures were or will be made;

(c) The anticipated scope of discovery, considering the proportionality factors set forth in Federal Rule of Civil Procedure 26(b)(1);

(d)  Whether any party will likely request or produce computer-based or other digital information, and if so, the parties' discussions of the issues listed under the Duty to Meet and Confer in L.Civ.R. 26.1(d)(3) below;

(e) The date by which discovery should be completed;

(f) Any needed changes in limitations imposed by the Federal Rules of Civil Procedure, local rule, or standing order;

(g)  Any orders, such as data preservation orders, protective orders, or orders reflecting agreements under Federal Rule of Evidence 502, which should be entered;

49

(h)  Proposed deadline for joining other parties and amending the pleadings;

(i)  Proposed dates for filing motions and for trial;

(j)  Whether the case is one which might be resolved in whole or in part by voluntary arbitration (pursuant to L.Civ.R. 201.1 or otherwise), mediation (pursuant to L.Civ.R. 301.1 or otherwise), appointment of a special master or other special procedure.

The parties shall make their initial disclosures under Fed. R. Civ. P. 26(a)(1) within 14 days after the initial meeting of the parties, unless otherwise stipulated or directed by the Court.  Such discovery plans and disclosures shall not be filed with the Clerk, unless otherwise directed by the Magistrate Judge.

(c) Discovery Materials

(1) Initial and expert disclosure materials under Fed. R. Civ. P. 26(a)(1) and 26(a)(2), transcripts of depositions, interrogatories and answers thereto, requests for production of documents or to permit entry onto land and responses thereto, and requests for admissions and answers thereto shall not be filed until used in a proceeding or upon order of the Court.  However, all such papers must be served on other counsel or parties entitled thereto under Fed. R. Civ. P. 5 and 26(a)(4).

(2) Pretrial disclosure materials under Fed. R. Civ.P. 26(a)(3) shall be incorporated by reference into the order entered after any final pretrial conference under Fed. R. Civ. P. 16(d).

(3) The party obtaining any material through discovery is responsible for its preservation and delivery to the Court if needed or ordered. It shall be the duty of the party taking a deposition to make certain that the officer before whom it was taken has delivered it to that party for preservation and to the Court as required by Fed. R. Civ. P. 30(f)(1) if needed or so ordered.

(d)  Discovery of Digital Information Including Computer-Based Information

(1)  Duty to Investigate and Disclose.  Prior to a Fed. R. Civ. P. 26(f) conference, counsel shall review with the client the client's information management systems including computer-based and other digital systems, in order to understand how information is stored and how it can be retrieved.  To determine what must be disclosed pursuant to Fed. R. Civ. P. 26(a)(1), counsel shall further review with the client the client's information files, including currently maintained computer files as well as historical, archival, back-up, and legacy computer files, whether in current or historic media or formats, such as digital evidence which may be used to support claims or defenses.  Counsel shall also identify a person or persons with knowledge about the client's information management systems, including computer-based and other digital systems, with the ability to facilitate, through counsel, reasonably anticipated discovery.

(2)  Duty to Notify.  A party seeking discovery of computer-based or other digital information shall notify the opposing party as soon as possible, but no later than the Fed. R. Civ. P. 26(f) conference, and identify as clearly as possible the categories of information which may be sought.  A party may supplement its request for computer-based and other digital information as soon as possible upon receipt of new information relating to digital evidence.

(3)  Duty to Meet and Confer.  During the Fed. R. Civ. P. 26(f) conference, the parties shall confer and attempt to agree on computer-based and other digital discovery matters, including the following:

(a) Preservation and production of digital information; procedures to deal with inadvertent production of privileged information; whether restoration of deleted digital information may be necessary; whether back up or

historic legacy data is within the scope of discovery; and the media, format, and procedures for producing digital information;

(b)  Who will bear the costs of preservation, production, and restoration (if necessary) of any digital discovery.

Amended: March 14, 2001; October 6, 2003; February 24, 2005; March 1, 2010; September 30, 2016; December 5, 2022; April 23, 2024.

## Civ. RULE 27.1 DEPOSITIONS FOR USE IN A FOREIGN COUNTRY

(a) A person desiring to take the deposition of a witness who resides or may be found within the District for use in a judicial proceeding pending in a foreign country may apply *ex parte* to the Court for an appropriate order. If the deposition is to be taken upon written interrogatories, a copy of the interrogatories shall be annexed to the application. If the court of the foreign country has appointed a person to take the deposition, the order shall designate that person commissioner unless there be good cause for withholding such designation. If no such appointment has been made and designation of a commissioner is requested, the order shall designate a person authorized to administer oaths by the laws of the United States or of the State of New Jersey.

(b) The entry of such an order is sufficient authorization for the issuance by the Clerk of subpoenas for the persons named or described therein. Wherever applicable, the Federal Rules of Civil Procedure, including provisions for punishment of contempt for disobeying a subpoena, shall govern the taking of such depositions.

## Civ. RULE 28.1 LETTERS ROGATORY

A party seeking execution of Letters Rogatory shall comply with the provisions of the Hague Convention, 28 U.S.C. § 1781 *et seq*.

## Civ. RULE 33.1 INTERROGATORIES

(a) Interrogatories shall be listed in consecutive order. The party answering interrogatories shall repeat each question, including subparts, in full immediately prior to each corresponding answer. Upon request, interrogatories shall be provided in electronic word processing format for ease of answering if technologically feasible.

b) If the person who verifies the answers to interrogatories does not have personal knowledge of the information contained in the answers, that person shall, for each answer not verified by personal knowledge, identify the person or persons from whom the information was obtained or, if the source of the information is documentary, provide a full description including the location thereof.

(c) Where a claim of privilege is asserted in responding or objecting to any discovery requested in interrogatories and information is not provided on the basis of such assertion, the party asserting the privilege shall in the response or objection identify the nature of the privilege (including work product) which is being claimed and if the privilege is being asserted in connection with a claim or defense governed by state law, set forth the state privilege rule being invoked. When any privilege is claimed, the party asserting it shall indicate, as to the information requested, whether (a) any documents exist, or (b) any oral communications took place.

(d) Contention interrogatories shall not be served until 60 days prior to the close of fact discovery unless otherwise permitted by the Court.

Amended: March 18, 2011; June 21, 2021; April 23, 2024.

## Civ. RULE 34.1 REQUESTS FOR PRODUCTION OF DOCUMENTS

Where a claim of privilege is asserted in responding or objecting to any discovery requested in requests for documents, and information is not provided on the basis of such assertion, the party asserting the privilege shall in the response or objection identify the nature of the privilege (including work product) which is being claimed and if the privilege is being asserted in connection with a claim or defense governed by state law, set forth the state privilege rule being invoked. When any privilege is claimed, the party asserting it shall indicate, as to the information requested, whether any such documents exist.

## Civ. RULE 36.1 REQUESTS FOR ADMISSION

(a) Requests for admission shall be listed in consecutive order. The party answering the requests for admission shall repeat each request for admission in full, which shall be followed by the party's answer to each request.

(b) Where a claim of privilege is asserted in responding or objecting to any requests for admission, and information is not provided on the basis of such assertion, the party asserting the privilege shall in the response or objection identify the nature of the privilege (including work product) which is being claimed and if privilege is being asserted in connection with a claim or defense governed by state law, set forth the state privilege rule being invoked. When any privilege is claimed, the party asserting it shall indicate, as to the information requested, whether (a) any documents exist, or (b) any oral communications took place.

Amended: April 23, 2024.

## Civ. RULE 37.1 DISCOVERY MOTIONS

(a) Conference to Resolve Disputes

(1) Counsel shall confer to resolve any discovery dispute. Any such dispute not resolved shall be presented by telephone conference call or letter to the Magistrate Judge. This presentation shall precede any formal motion.

(2) Cases in which a party appears *pro se* shall not be subject to L.Civ.R. 37.1(a)(1) unless the Magistrate Judge so directs. In such cases discovery disputes shall be presented by formal motion consistent with L.Civ.R. 37.1(b).

(b) Discovery Motions

(1) Discovery motions must be accompanied by an affidavit, or other document complying with 28 U.S.C. § 1746, certifying that the moving party has conferred with the opposing party in a good faith effort to resolve by agreement the issues raised by the motion without the intervention of the Court and that the parties have been unable to reach agreement. The affidavit, or other document complying with 28 U.S.C. § 1746, shall set forth the date and method of communication used in attempting to reach agreement.

(2) Discovery motions shall have annexed thereto copies of only those pertinent portions of depositions, interrogatories, demands for admission and responses, etc., which are the subject matter of the motion.

(3) L.Civ.R. 7.1 shall apply to discovery motions, except that no reply papers shall be allowed except with the permission of the Magistrate Judge.  Unless oral argument is to be heard under L.Civ.R. 37.1(b)(4), the Magistrate Judge may decide the motion on the basis of the papers received when the deadline for submitting opposition has expired.

(4) No oral argument shall be heard except as permitted expressly by the Magistrate Judge assigned to hear the motion. In the event oral argument is required, the parties shall be notified by the Court. Oral argument

may be conducted in open court or by telephone conference, at the discretion of the Magistrate Judge. Any party who believes that a discovery motion requires oral argument shall request it in the notice of motion or in response to the notice of motion, and so notify the Court in writing at the time the motion or opposition thereto is filed.

Amended: March 1, 2010; June 19, 2013.

## Civ. RULE 37.2 APPLICATIONS FOR FED. R. CIV. P. 37 SANCTIONS

All applications for sanctions pursuant to Fed. R. Civ. P. 37 shall be filed with the Clerk prior to the entry of final judgment notwithstanding the provisions of any other Rule of this Court.

## Civ. RULE 38.1 JURY DEMAND

If a demand for jury trial under Fed. R. Civ. P. 38(b) is endorsed upon a pleading, the title of the pleading shall include the words "and Demand for Jury Trial" or the equivalent.

## Civ. RULE 40.1 ALLOCATION AND ASSIGNMENT OF CASES

(a) Allocation. Each civil case shall be allocated by the Clerk of the Court to Camden, Newark or Trenton at the time it is commenced. The Clerk shall consider the residence of the defendant, the convenience of litigants, counsel and witnesses, and the place where the cause of action arose. The vicinage allocated shall be the location of trial and of all proceedings in the case, unless changed by order of the Court.

(b) Assignment

(1) After allocation, and subject to the supervision of the Chief Judge, each case shall be assigned forthwith to a District Judge and a Magistrate Judge by the Clerk or the Deputy charged with such duty.

(2) If it appears that any matter requires immediate attention and the District Judge to whom an action has been or would be assigned is not or will not be available, the Clerk or Deputy charged with such duty, under direction of the Chief Judge, shall assign the matter either permanently or temporarily to an available District Judge.

(c) Related Cases. When a civil action, whether filed by counsel or a pro se party: (1) relates to any property included in a case already or previously pending in this Court; (2) grows out of the same transaction as any case already or previously pending in this Court; or (3) involves the validity or infringement of any patent, copyright or trademark which is involved in a case already or previously pending in this Court, counsel or the pro se party shall at the time of filing the action inform the Clerk of such fact. Whenever possible, such action shall be assigned to the same Judge to whom the pending or previously related action is or was assigned.

(d) Notice and Objection.  Promptly after allocation and assignment of a civil case, the Clerk shall notify both the parties or their counsel and the District Judge and Magistrate Judge of such allocation and assignment. Objections to either the allocation or the assignment of a civil case shall be made before the Chief Judge, on notice to opposing counsel and to the District Judge and Magistrate Judge to whom the case has been assigned.

(e) Reallocation and Reassignment.   Disposition of any objections submitted under paragraph (d) above, and any other reallocation or reassignment of any case, shall be upon order of the Chief Judge.

**REPEALED EFFECTIVE JULY 6, 2021**.  ~~(f) Patent Pilot Project Cases.  The initial allocation and assignment of patent cases are governed by paragraphs (a), (b), and (c) above.  The reallocation and reassignment of patent cases and certain non-patent cases under the Patent Pilot Project, pursuant to Pub. L. No. 111-349, between designated patent judges and non-designated patent judges, shall occur without regard to the vicinage to which the case was originally allocated.  Promptly after such reallocation and/or reassignment, the~~

~~Clerk shall notify both the parties and the Judge of such reallocation and/or reassignment; objections to either the reallocation or the reassignment of such case shall be made before the Chief Judge, on notice to opposing counsel and to the Judge to whom the case has been assigned, and disposition of any objections shall be upon order of the Chief Judge, upon consideration of the convenience of litigants, counsel, and witnesses, the place where the cause of action arose, and the needs of equitable administration of the Patent Pilot Project. Operational details of the Patent Pilot Project are set forth in Appendix T to these Rules, which shall have the same force and effect as the provisions of these Rules.~~

(g)  A civil action filed against a Judge shall be assigned to a Judge in a vicinage other than the vicinage where the defendant Judge maintains his or her permanent duty station and if the assignee Judge determines that the suit is patently frivolous, or if judicial immunity is plainly applicable, the assignee Judge need not recuse, but in all other cases, the assignee Judge is disqualified and shall refer the matter to the Chief Judge for assignment outside the District of New Jersey.

(h)  If assignment to a Judge pursuant to (g) above is a reassignment of a civil action that results from the originally assigned Judge being named as a defendant Judge in that civil action, the newly assigned Judge shall promptly determine whether the suit against the Judge is patently frivolous or judicial immunity applies. If the assigned Judge determines that judicial immunity is a complete defense or the suit against the Judge is patently frivolous that warrants the dismissal of the defendant Judge, the assigned Judge shall promptly notify the Chief Judge upon the issuance of an order dismissing the defendant Judge.  The Chief Judge shall thereafter, if appropriate, reassign the civil action to the originally assigned Judge.

Amended: March 3, 1998; March 1, 20120; October 4, 2011; March 25, 2019; December 5, 2022.

## Civ. RULE 41.1 DISMISSAL OF INACTIVE CASES

(a)  Civil cases, other than bankruptcy matters, which have been pending in the Court for more than 90 days without any proceedings having been taken therein must be dismissed for lack of prosecution by the Court (1) on its own motion, or (2) on notice from the Clerk to all parties who have appeared, unless good cause is shown with the filing of an affidavit or other document complying with 28 U.S.C. § 1746 from counsel of record or the unrepresented party. Notice shall be provided by the Clerk of either action contemplated above under sub-paragraphs (1) and (2) to counsel, their client(s) and/or unrepresented persons who have appeared.

(b)  When a case has been settled, counsel shall promptly notify the Court. Upon such notification, the Court shall enter a 60-day order administratively terminating the case and any pending motions. Such an administrative termination shall not operate as a dismissal order. Within 60 days after entry of the administrative termination order, counsel shall file all papers necessary to dismiss the case pursuant to Fed. R. Civ. 41(a)(1)(A)(ii). This 60-day period may be extended by the Court for good cause. Upon failure of counsel to file a proper stipulation of dismissal within the 60-day period, or within any extended period approved by the Court, the Court shall, pursuant to Fed. R. Civ. P. 41(a)(2), dismiss the action with prejudice and without costs. Such an order of dismissal may, but need not, include any other terms the Court considers proper.

Amended: March 1, 2010; June 19, 2013; November 10, 2016; May 10, 2017.

## Civ. RULE 42.1 CONSOLIDATION OF CASES

A motion to consolidate two or more civil cases pending upon the docket of the Court shall be filed in the cases bearing the earliest docket number.  That motion shall be adjudicated by the Judge to whom that case is assigned.  A copy of the moving papers shall be served upon all parties in each case to which the consolidation motion applies.  For each such case other than that in which the motion for consolidation is filed,

counsel for the moving party shall submit to the Clerk for docketing a copy of the cover letter accompanying the filing of the motion.

Amended: March 3, 1998

## Civ. RULE 44.1 SEAL

The seal of this Court shall consist of the upward-flying eagle, front presentation, with wings and legs outstretched, and the words, "United States District Court for the District of New Jersey," in the outer rim surrounding same.

## Civ. RULE 47.1 PETIT JURORS

(a) The selection, qualification, summoning, exemption or excuse from service of petit jurors shall be governed by the Plan of Implementation adopted by the Court pursuant to 28 U.S.C. § 1861 *et seq*. The Plan is available for inspection at the office of the Clerk.

(b) In any case where each side is entitled to an equal number of peremptory challenges, these challenges shall alternate one by one, with the plaintiff in a civil case exercising the first challenge.

(c) In any case where there is more than one defendant, in the event the Court allows defendants additional peremptory challenges, the order of challenge will be established by the Court.

(d) The passing of a peremptory challenge by any party shall not constitute a waiver of the right thereafter to exercise the same against any juror, unless all parties pass successive challenges.

(e) No attorney or party to an action shall personally or through any investigator or other person acting for such attorney or party, directly or indirectly interview, examine or question any juror, relative, friend or associate thereof during the pendency of the trial or with respect to the deliberations or verdict of the jury in any action, except on leave of Court granted upon good cause shown.

## Civ. RULE 47.2 ASSESSMENT OF JURY COSTS

All counsel in civil cases must seriously discuss the possibility of settlement a reasonable time prior to trial. The trial Judge may, in his or her discretion, assess any party or attorney with the costs of jury attendance if a case is settled after the jury has been summoned or during the trial, the amount to be paid to the Clerk. For the purpose of interpreting this paragraph, a jury is considered summoned for trial as of noon of the business day prior to the designated date of the trial.

## Civ. RULE 48.1 CIVIL JURY

In all civil jury actions, except as otherwise expressly required by law, the jury shall consist of not fewer than six and not more than 12 members, and all jurors shall participate in the verdict to the extent authorized by Fed. R. Civ. P. 48.

## Civ. RULE 48.2 TAKING OF CIVIL VERDICT

In all civil jury cases the Court need not call any party or attorney, nor need any party be present or represented when the jury returns into court with its verdict. In all cases, unless the contrary affirmatively appears of record, it will be presumed that the parties either were present or, by their voluntary absence, waived their presence.

## Civ. RULE 52.1 ORAL OPINIONS

When an oral opinion is given in lieu of a written opinion and is transcribed, the reporter shall submit it to the Judge for revision before it is filed.

## Civ. RULE 54.1 COSTS

(a) Within 30 days after the entry of a judgment allowing costs, or within 30 days of the filing of an order dispositive of the last of any timely-filed post-trial motions, whether or not an appeal has been filed, the prevailing party shall serve on the attorney for the adverse party and file with the Clerk a Bill of Costs and Disbursements, together with a notice of motion when application will be made to the Clerk to tax the same.

(b) Such Bill of Costs shall precisely set forth each item thereof, so that the nature of the charge can be readily understood, and shall be verified by the attorney for the applicant, stating that (1) the items are correct, (2) the services were actually and necessarily performed, and (3) the disbursements were necessarily incurred in the action or proceeding. Counsel shall append to the verified Bill of Costs copies of all invoices in support of the request for each item.

(c) Counsel are directed to review 28 U.S.C. § 1927 regarding counsel's liability for excessive costs.

(d) The notice of motion shall specify the hour and date when application to the Clerk to tax the costs will be made, which shall not be less than three nor more than seven days from the date of the notice if personal service is made and, if service is made by mail, not less than seven nor more than 14 days from the date the notice is deposited in the mail.

(e) Upon failure of the prevailing party to comply with this Rule, all costs shall be waived.

(f) At or before the hearing the adverse party may file specific objections to claimed items of cost with a statement of the grounds for objection, supported by affidavits or other evidence.

(g) Unless otherwise ordered by the Court, the Clerk shall observe the following general rules in taxing costs:

(1) The fees of witnesses for actual and proper attendance shall be allowed, whether such attendance was voluntary or procured by subpoena. The rates for witness fees, mileage and subsistence are fixed by statute (see 28 U.S.C. § 1821). Witness fees and subsistence are taxable only for the reasonable period during which the witness was within the District. Subsistence to the witness under 28 U.S.C. § 1821 is allowable if the distance from the courthouse to the residence of the witness is such that mileage fees would be greater than subsistence fees if the witness were to return to his or her residence from day to day.

(2) The reasonable fee of a competent interpreter is taxable if the fee of the witness involved is taxable. Fees, salaries, expenses and costs of an interpreter are taxable as provided by 28 U.S.C. §§ 1827 and 1828. Fees for translation of documents are taxable only if those documents are received in evidence or filed with the Clerk for use in a proceeding.

(3) Witness fees shall not be allowed to parties to an action, but officers and employees of a party shall not be considered to be parties solely because of such relationship.

(4) Where costs are taxed in favor of multiple parties there shall be no apportionment of costs by the Clerk.

(5) In actions in which a counsel fee is allowed by the Court, such fee shall be in lieu of the statutory attorney's docket fee.

(6) The cost of a reporter's transcript is allowable only (A) when specifically requested by the Judge, master, or examiner, or (B) when it is of a statement by the Judge to be reduced to a formal order, or (C) if required for the record on appeal. Mere acceptance by the Court of a submitted transcript does not constitute a request. Copies of transcripts for an attorney's own use are not taxable in the absence of a prior order of the

Court. All other transcripts of hearings, pretrials and trials will be considered by the Clerk to be for the convenience of the attorney and not taxable as costs.

(7) In taxing costs, the Clerk shall allow all or part of the fees and charges incurred in the taking and transcribing of depositions used at the trial under Fed. R. Civ. P. 32. Fees and charges for the taking and transcribing of any other deposition shall not be taxed as costs unless the Court otherwise orders. Counsel's fees, expenses in arranging for taking a deposition and attending the taking of a deposition are not taxable, except as provided either by statute or by the Federal Rules of Civil Procedure. Fees for the witness at the taking of a deposition are taxable at the same rate as for attendance at trial. (See L.Civ.R. 54.1(g)(1).) The witness need not be under subpoena.

(8) The reasonable premiums or expenses paid on undertakings, bonds or security stipulations shall be allowed where furnished by reason of express requirement of the law or a rule of court, by an order of the Court, or where necessarily required to enable a party to receive or preserve some right accorded the party in the action or proceeding.

(9) The fees for exemplification and copies of papers are taxable when (A) the documents are admitted into evidence or necessarily attached to a document required to be filed and served in support of a dispositive motion, and (B) they are in lieu of originals which are not introduced at the request of opposing counsel. The cost of copies submitted in lieu of originals because of convenience to offering counsel or his or her client is not taxable. The cost of copies obtained for counsel's own use is not taxable.

(10) The reasonable expense of preparing visual aids including, but not limited to, maps, charts, photographs, motion pictures and kindred material, is taxable as costs when such visual aids are admitted into evidence. It is advisable to obtain a court order at a pretrial conference before incurring the expense of preparation of such visual aids. Expenses incurred in the preparation of models are not taxable as costs even though the models are admitted into evidence without obtaining a court order before incurring the expense.

(h) A dissatisfied party may appeal to the Court upon written notice of motion served within seven days of the Clerk's action, as provided in Fed. R. Civ. P. 54(d).

## Civ. RULE 54.2 COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES

(a) Motions; Affidavits: Content.  In all actions in which a counsel fee is allowed by the Court or permitted by statute, an attorney seeking compensation for services or reimbursement of necessary expenses shall file within 30 days of the entry of judgment or order, unless extended by the Court, a motion for fees and expenses in accordance with L.Civ.R. 7.1.  The motion shall include any affidavits or other documents complying with 28 U.S.C. § 1746 setting forth the following:

(1) the nature of the services rendered, the amount of the estate or fund in court, if any, the responsibility assumed, the results obtained, any particular novelty or difficulty about the matter, and other factors pertinent to the evaluation of the services rendered;

(2) a record of the dates of services rendered;

(3) a description of the services rendered on each of such dates by each person of that firm including the identity of the person rendering the service and a brief description of that person's professional experience;

(4) the time spent in the rendering of each of such services; and

(5) the normal billing rate for each of said persons for the type of work performed.

The time spent by each individual performing services shall be totalled at the end of the affidavit or other document complying with 28 U.S.C. § 1746. Computerized time sheets, to the extent that they reflect the above, may be utilized and attached to any such affidavit or other document showing the time units expended.

Reimbursement for actual, not estimated, expenses may be granted if properly itemized.

(b) Affidavits: Fee Agreements.  Applications for the allowance of counsel fees shall include an affidavit or other document complying with 28 U.S.C. § 1746 describing all fee agreements and setting forth both the amount billed to the client for fees and disbursements and the amount paid.

(c) Exceptions Authorized. In appropriate circumstances, including but not limited to those where counsel fees are sought as sanctions in connection with discovery and other pretrial motions, the Judge to whom the application is directed may order that any one or more of the items enumerated in L.Civ.R. 54.2(a) and (b) will not be required.

(d) Application for Attorney's Fees and Petitions for Leave to Appeal Determination of Attorney's Fees Under the Provisions of the Equal Access to Justice Act.

(1) A party applying for an award of attorney's fees and expenses under 28 U.S.C. § 2412(d)(1)(B), as amended, shall identify the specific position of the Government which the party alleges was not substantially justified.

(2) (A) A petition for leave to appeal an agency fee determination, pursuant to 5 U.S.C. § 504(c)(2), shall be filed with the Clerk within 30 days after the entry of the agency's order with proof of service on all other parties to the agency's proceedings.

(B) The petition shall contain a copy of the order to be reviewed and any findings of fact, conclusions of law and opinion relating thereto, a statement of the facts necessary to an understanding of the petition, and a memorandum showing why the petition for permission to appeal should be granted. An answer shall be filed within 30 days after service of the petition, together with a reply memorandum. The application and any answer shall be submitted without further briefing and oral argument unless otherwise ordered.

(C) Appeals to review fee determinations otherwise contemplated by the Equal Access to Justice Act shall be filed pursuant to the applicable statutes and these Rules.

Amended: March 1, 2010; June 19, 2013.

## Civ. RULE 54.3 PREPAYMENT OF CLERK'S AND MARSHAL'S FEES

(a) Except as otherwise directed by the Court, the Clerk shall not be required to enter any suit, file any paper, issue any process or render any other service for which a fee is prescribed by statute or by the Judicial Conference of the United States, nor shall the Marshal be required to serve the same or perform any service, unless the fee therefor is paid in advance. The Clerk shall receive any such papers in accordance with L.Civ.R. 5.1(f).

(b) In all actions in which the fees of the Clerk and Marshal are not required by law to be paid in advance, and in which a poor suitor or a seaman prevails either by judgment or settlement, no dismissal or satisfaction of judgment shall be filed or entered until all of the fees of the Clerk and Marshal are paid.

## Civ. RULE 56.1 SUMMARY JUDGMENT MOTIONS

(a) Statement of Material Facts Not in Dispute

On motions for summary judgment, the movant shall furnish a statement which sets forth material facts as to which there does not exist a genuine issue, in separately numbered paragraphs citing to the affidavits and other documents submitted in support of the motion. A motion for summary judgment unaccompanied by a statement of material facts not in dispute shall be dismissed.  The opponent of summary judgment shall furnish, with its opposition papers, a responsive  statement of material facts, addressing each paragraph of the movant's statement,  indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion; any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion.  In addition, the opponent may also furnish a supplemental statement of disputed material facts, in separately numbered paragraphs citing to the affidavits and other documents submitted in connection with the motion, if necessary to substantiate the factual basis for opposition.  The movant shall respond to any such supplemental statement of disputed material facts as above, with its reply papers.  Each statement of material facts shall be a separate document (not part of a brief) and shall not contain legal argument or conclusions of law.

(b)  Social Security Matters

In review of Social Security matters, briefs and administrative record submissions shall be governed by L. Civ. R. 9.1.

Amended: September 4, 2008; June 22, 2012.

## Civ. RULE 58.1 ENTRY OF JUDGMENTS AND ORDERS

(a) In all cases in which the Clerk is required to prepare the judgment pursuant to Fed. R. Civ. P. 58(b)(1), it shall be submitted to the Court for signature and entered forthwith.

(b) In all cases contemplated by Fed. R. Civ. P. 58(b)(2) and when the Court makes any judgment as defined in Fed. R. Civ. P. 54(a), the prevailing party shall, within seven days after determination, submit a judgment or order to the Court on notice to all parties. Unless the Court otherwise directs, if no specific objection to that judgment or order with reasons therefor is received from the adversary within seven days of receipt of the prevailing party's judgment or order, the judgment or order may be signed by the Court. If such an objection is made, the matter may be listed for hearing at the discretion of the Court.

Amended: March 1, 2010.

## Civ. RULE 65.1 APPLICATIONS FOR EMERGENCY RELIEF

(a) Any party may apply for an order requiring an adverse party to show cause why a preliminary injunction should not issue, upon the filing of a verified complaint or verified counterclaim or by affidavit or other document complying with 28 U.S.C. § 1746 during the pendency of the action. No order to show cause to bring on a matter for hearing will be granted except on a clear and specific showing by affidavit, other document complying with 28 U.S.C. § 1746 or verified pleading of good and sufficient reasons why a procedure other than by notice of motion is necessary. An order to show cause which is issued at the beginning of the action may not, however, serve as a substitute for a summons which shall issue in accordance with Fed. R. Civ. P. 4. The order to show cause may include temporary restraints only under the conditions set forth in Fed. R. Civ. P. 65(b).

(b) Applications for orders to show cause, and for consent and *ex parte* orders, shall be filed with the Clerk, who shall promptly deliver each application to the District Judge to whom the case has been assigned.

(c) The order shall provide for service upon the opposing party of the order together with all supporting papers, as specified by the Court.

(d) All applications for provisional remedies or a writ of *habeas corpus* or any other emergency relief may be made at any time to the District Judge to whom the case has been assigned.

Amended: June 19, 2013; April 23, 2024.

## Civ. RULE 65.1.1 SECURITY AND SURETIES

(a) Deposit in Lieu of Surety

In lieu of surety in any case there may be deposited with the Clerk lawful United States currency, certificates of deposit issued by a bank licensed to do business in the United States, negotiable bonds approved by the Court or notes of the United States. If certificates of deposit, negotiable bonds or notes are deposited, the depositor shall execute the agreement required by 31 U.S.C. §9303, authorizing the Clerk to collect or sell the bonds or notes in the event of default. In the case of certificates of deposit, the depositor shall notify the banking institution that the depositor's rights in the certificate of deposit have been assigned to the Clerk, United States District Court, and the banking institution shall acknowledge such notification to the Clerk. Unless ordered otherwise, the Clerk automatically shall reinvest the certificate of deposit at the maturity date at the then-prevailing rate of interest.

(b) Attorney Shall Not Provide Surety

No attorney shall tender his or her own funds or otherwise personally serve as surety for costs in any suit pending in the Court, except by special leave of the Court.

Amended: June 19, 2013.

## Civ. RULE 66.1 RECEIVERSHIPS

(a) Pursuant to Fed. R. Civ. P. 66, this Rule is promulgated for the administration of estates by receivers or similar officers appointed by the Court. Other than in administration of estates, any civil action in which the appointment of a receiver or similar officer is sought, or which is brought by or against such an officer, is to be governed by the Federal Rules of Civil Procedure and by these Rules.

(b) The appointment or discharge of a receiver appointed either *ex parte* or pending a final hearing shall, as nearly as possible, follow procedures set forth in Fed. R. Civ. P. 65. The Court may require any receiver appointed to furnish a bond in such amount as deemed appropriate.

(c) Upon appointment of a custodial or statutory receiver or similar officer, the Court shall designate one or more banking institutions as depositories in which shall be deposited, until the further order of the Court, all funds obtained by the receiver. A certified copy of the order shall be filed with each depository. Funds so deposited shall be withdrawn only by check or warrant, serially numbered, signed by the receiver. Each check or warrant shall have written on its face the abbreviated title and docket number of the case and a brief statement of the purpose for the disbursement. The receiver shall keep a record of all checks drawn and shall be responsible for determining the propriety of each disbursement.

(d) Every receiver appointed pursuant to this Rule shall within 60 days after appointment file with the Clerk an inventory of the entire estate committed to his or her care, and of the manner in which funds of the estate are invested or deposited. If authorized to continue the operation of a business the receiver shall, on or before the 15th day of every month following appointment, file with the Clerk a report and summary of such operation based on sound accounting principles, showing all accruals and containing a statement of income and of profit and loss for the preceding month.  If not authorized to continue the operation of a business the receiver shall, on or before the 15th day of the month following appointment and every three months thereafter (or more

frequently if ordered by the Court), file with the Clerk a schedule of receipts and disbursements for such period and a statement from each depository showing the balance on hand.

(e) In settling the final account, every receiver shall be charged with the property shown in the initial inventory and with all amounts collected in addition thereto and shall state the expenditures, other credits and balance on hand. The receiver shall set forth the manner in which such balance is invested and all changes in the assets with which he or she is charged which have accrued during the period covered by the account.

(f) When an order is entered approving the final account of and discharging a receiver, the Court may authorize the destruction or other disposition of the books, papers and records of the business or property for which the receiver acted and may fix a date after which the receiver may destroy the financial papers and records on hand relating to his or her administration. No destruction shall be authorized by order unless it appears that notice of the application for such an order has been given to all parties in interest and to the Commissioner of IRS, Washington, D.C.; the District Director of IRS, Newark, N.J.; United States Attorney, Newark, N.J.; the State of New Jersey, Division of Taxation, Trenton, N.J.; and the Attorney General for the State of New Jersey, Trenton, N.J.

(g) No receiver may employ an attorney, counsel or accountant except upon order of the Court supported by an affidavit or other document complying with 28 U.S.C. § 1746 of the receiver setting forth the necessity for the employment and an affidavit or other document complying with 28 U.S.C. § 1746 of the proposed attorney, counsel or accountant claiming no interest in the suit or any of the parties thereto in any way which would disqualify that person from serving the receiver in good faith as a fiduciary for all of the beneficial owners and creditors of the estate.

(h) In fixing the compensation of a receiver, attorney, accountant, auctioneer or other officer, the Court shall consider the value of the actual services rendered and the pain, trouble and risk incurred by them in the discharge of their duties relative to the estate and shall be guided by the standards fixed for compensation of such officers in connection with proceedings under the Bankruptcy Code.

Amended: June 19, 2013.

## Civ. RULE 67.1 DEPOSIT IN COURT AND DISBURSEMENT OF COURT FUNDS

(a) Deposit in Court Pursuant to Fed. R. Civ. P. 67

(1) Receipt of Funds

(A)  Unless an applicable statute requires the deposit of funds without leave of court, no money shall be sent to the Court or its officers for deposit into the Court's Registry without a court order by the Judge assigned to the case.

(B)  Unless otherwise directed, all registry funds ordered to be paid into the Court or received by its officers in any case pending or adjudicated shall be deposited with the Treasurer of the United States in the name and to the credit of this Court pursuant to 28 U.S.C. § 2041 through depositories designated by the Treasury to accept such deposit on its behalf.

(C)  The party or attorney making the deposit or transferring funds to the Court's Registry shall personally serve the order permitting the deposit or transfer on the Clerk of Court, the Chief Deputy of Administration, Chief Deputy of Operations, or Finance Manager. Failure to personally serve a copy of the order to invest shall release the Clerk and any Deputy Clerk from any liability for the loss of interest which could have been earned on the funds.

(2)  Orders Directing Investment of Registry Funds by Clerk

(A)  Where, by order of the Court, funds on deposit with the Court are to be placed in some form of interest-bearing account, the Court Registry Investment System ("CRIS"), administered by the Administrative Office of the United States Courts under 28 U.S.C. § 2045, shall be the only investment mechanism authorized. The Director of the Administrative Office of the United States Courts is designated as Custodian for all CRIS funds.  The Director or the Director's designee shall perform the duties of Custodian.  Funds held in the CRIS remain subject to the control and jurisdiction of the Court.

(B)  Money from each case deposited in the CRIS shall be pooled together with those on deposit with Treasury to the credit of other courts in the CRIS and used to purchase Government Account Series securities through the Bureau of Public Debt, which will be held at Treasury, in an account in the name and to the credit of the Director of the Administrative Office of the United States Courts.  The pooled funds will be invested in accordance with the principles of the CRIS Investment Policy as approved by the Registry Monitoring Group.

(C) An account will be established in the CRIS Liquidity Fund titled in the name of the case giving rise to the deposit invested in the fund. Income generated from fund investments will be distributed to each case based on the ratio each account's principal and earnings has to the aggregate principal and income total in the fund after the CRIS fee has been applied. Reports showing the interest earned and the principal amounts contributed in each case will be available through the FedInvest/CMS application for each court participating in the CRIS and made available to litigants and/or their counsel on request.  (See Form of Order at Appendix D.1.)

(D) Interpleader funds deposited under 28 U.S.C. § 1335 meet the IRS definition of Disputed Ownership Funds ("DOFs"), taxable entities that require tax administration.  Interpleader funds will be deposited in the CRIS Disputed Ownership Fund for each interpleader, titled in the name of the case giving rise to the deposit invested in the fund.  Unless otherwise ordered by the Court, interpleader funds shall be deposited in the DOF established within the CRIS and administered by the Administrative Office of the United States Courts, which shall be responsible for meeting all DOF tax administration requirements.  (See Form of Order at Appendix D.2.)  Income generated from fund investments will be distributed to each case after the DOF fee has been applied and tax withholdings have been deducted from the Fund.  Reports showing the interest earned and the principal amounts contributed in each case will be available through the FedInvest/CMS application for each court participating in the CRIS and made available to litigants and/or their counsel upon request.

(E) Only new deposits pursuant to 28 U.S.C. § 1335, effective April 1, 2017, will be placed in the CRIS Disputed Ownership Fund.

(3)  Deduction of Fees

(A)  The Custodian is authorized to deduct the CRIS fee of an annualized 10 basis points on assets on deposit in the CRIS Liquidity Fund for the management of investments.  The CRIS fee is assessed from the interest earnings of the pool of cases in the CRIS Liquidity Fund before a pro rata distribution of earnings is made to a court case.

(B) The Custodian is authorized to deduct the DOF fee of an annualized 20 basis points on assets on deposit in the CRIS DOF for management of investments and tax administration. The DOF fee is assessed from interest earnings to the pool of cases in the CRIS DOF before a pro rata distribution of earnings is made to a court case.  The Custodian is further authorized to withhold and pay federal taxes due on behalf of the DOF cases.

(C) If a Judge orders the appointment of a tax administrator to oversee potential expenses that may be incurred on behalf of a case with funds in the DOF, the amount of the Disputed Ownership Fund in the case must be transferred to the CRIS Liquidity Fund, or as otherwise directed by court order.

(b)  Orders Relating to the Disbursement of Court Funds

(1)  Before any proposed order for disbursement of monies from the Registry of the Court is submitted to or considered by a Judge, the order first shall be approved as to form and content by the Clerk of Court or his/her designee.

(2)  Counsel of record for a prevailing party(ies) shall consult with the Clerk of Court to ascertain the amount of interest accrued to date before applying (preferably by consent) to the Court for an order to disburse funds, including interest, from the Court's Registry.  If applicable, the proposed order shall indicate the percentage of accrued interest to be disbursed to each party, subject to the deduction of the Court's administrative fee as set forth in (a)(3) herein.

(3) A signed and completed W-9 Form for each recipient of accrued interest must be forwarded to the Court's Finance Manager before the funds will be released.  The Social Security Number or Tax Identification Number of each recipient of accrued interest and their tax mailing address must be provided for the purpose of issuing 1099-INT annually.  The completed W-9 forms should be provided to the Court's Finance Manager separately and not as an attachment to the motion to disburse funds.

(4) All disbursement orders shall provide for the signature of the Clerk of Court or his/her designee in addition to that of the Judge, and shall state the following: "I recommend approval of the above order and declare that no lien or other claim against monies deposited in the Registry of the Court in this matter is on file in my office as of this date."

_____                    _____

(Date)                                              (Clerk/Deputy Clerk)

(5) Failure of a party to personally serve the proposed order provided in L.Civ.R. 67.1(b)(1) upon the Clerk of Court, Chief Deputy of Administration, Chief Deputy of Operations or Finance Manager shall relieve the Clerk of Court or his/her designee from all liability for any lien on or other claim against the monies on deposit.

Amended: June 19, 2013; July 19, 2017, March 24, 2021.

## Civ. RULE 69.1 MARSHAL'S VOUCHERS

In all cases of sales of property by the Marshal, the Marshal shall (a) annex to the return vouchers for all disbursements, and (b) make an affidavit or other document complying with 28 U.S.C. § 1746 that (1) the services charged were actually and necessarily performed, and (2) the disbursements paid were actually incurred as therein stated.

Amended: June 19, 2013.

## Civ. RULE 72.1 UNITED STATES MAGISTRATE JUDGES

Each Magistrate Judge is authorized to perform all judicial duties assigned by the Court that are consistent with the Constitution and the laws of the United States which include, but are not limited to, the following:

(a) Duties in Civil Matters

(1) Non-Dispositive Motions

Hearing and determining any pretrial motion or other pretrial matter, other than those motions specified in L.Civ.R. 72.1(a)(2), in accordance with 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72. An appeal from a Magistrate Judge's determination of such a non-dispositive motion shall be served and filed in accordance with L.Civ.R. 72.1(c)(1).

(2) Dispositive Motions

Hearing and conducting such evidentiary hearings as are necessary or appropriate and submitting to a District Judge proposed findings of fact and recommendations for the disposition of motions for injunctive relief (including temporary restraining orders and preliminary injunctions), for judgment on the pleadings, for summary judgment, to dismiss or permit the maintenance of a class action, to dismiss for failure to state a claim upon which relief may be granted, to involuntarily dismiss an action, for judicial review of administrative determinations, for review of default judgments, and for review of prisoners' petitions challenging conditions of confinement, in accordance with 28 U.S.C. § 636(b)(1)(B) and (C) and Fed. R. Civ. P. 72. Any party may object to the Magistrate Judge's proposed findings, recommendations or report issued under this Rule by serving and filing an objection in accordance with L.Civ.R. 72.1(c)(2).

(3) Civil Case Management

(A) Exercising general supervision of the civil calendars of the Court, conducting calendar and status calls, and determining motions to expedite or postpone the trial of cases.

(B) Conducting pretrial conferences as set forth in Fed. R. Civ. P. 16 and 26(f), which include but are not limited to scheduling, settlement, discovery, preliminary and final pretrial conferences, and entry of appropriate orders, including scheduling orders in accordance with L.Civ.R. 16.1 and Fed. R. Civ. P. 16.

(C) As part of the Magistrate Judge's general supervision of the civil calendar, the Magistrate Judge shall conduct scheduling conferences and enter scheduling orders in accordance with Fed. R. Civ. P. 16 in all civil cases except the following:

(i) all actions in which one of the parties appears *pro se* and is incarcerated;

(ii) all actions for judicial review of administrative decisions of Government agencies or instrumentalities where the review is conducted on the basis of the administrative record;

(iii) proceedings in bankruptcy, prize proceedings, sales to satisfy liens of the United States, and actions for forfeitures and seizures, for condemnation, or for foreclosure of mortgages;

(iv) proceedings for admission to citizenship or to cancel or revoke citizenship;

(v) proceedings for *habeas corpus* or in the nature thereof, whether addressed to Federal or State custody;

(vi) proceedings to compel arbitration or to confirm or set aside arbitration awards;

(vii) proceedings to compel the giving of testimony or production of documents under a subpoena or summons issued by an officer, agency or instrumentality of the United States not provided with authority to compel compliance;

(viii) proceedings to compel the giving of testimony or production of documents in this District in connection with discovery, or testimony *de bene esse*, or for perpetuation of testimony, for use in a matter pending or contemplated in another court;

(ix) proceedings for the temporary enforcement of orders of the National Labor Relations Board; and

(x) proceedings instituted for prosecution in a summary manner in the Superior Court of New Jersey and removed to this Court on diversity only.

(4) Conducting *voir dire* and selecting petit juries for the Court and, in the absence of the District Judge, accepting petit jury verdicts in civil cases.

(5) Issuing subpoenas, writs of *habeas corpus ad testificandum* or *habeas corpus ad prosequendum*, or other orders necessary to obtain the presence of parties or witnesses or evidence needed for court proceedings.

(6) Conducting proceedings for the collection of civil penalties of not more than $1000 assessed in accordance with 46 U.S.C. § 2302.

(7) Conducting examinations of judgment debtors, in accordance with Fed. R. Civ. P. 69.

(8) Reviewing petitions in civil commitment proceedings under Title III of the Narcotic Addict Rehabilitation Act.

(9) Issuing warrants or entering orders permitting entry into and inspection of premises, and/or seizure of property, in noncriminal proceedings, as authorized by law, when properly requested by the IRS or other governmental agencies.

(10) Serving as a special master in an appropriate civil action, pursuant to 28 U.S.C. § 636(b)(2) and Fed. R. Civ. P. 53. The Magistrate Judge may, where the parties consent, serve as a special master in any civil action without regard to the provisions of Fed. R. Civ. P. 53(b) and try the issues of any civil action. The entry of final judgment in the civil action, however, shall be made by a District Judge or at the direction of a Magistrate Judge with the consent of the parties.

(11) Administering oaths and affirmations and taking acknowledgments, affidavits, and depositions.

(12) Supervising proceedings conducted pursuant to 28 U.S.C. §1782 with respect to foreign tribunals and to litigants before such tribunals.

(b) Duties in Proceedings for Post-Conviction Relief

A Magistrate Judge may exercise the powers enumerated in Rules 5, 8, 9 and 10 of the Rules Governing §§ 2254 and 2255 Proceedings, in accordance with the standards and criteria established in 28 U.S.C. § 636(b)(1).

(c) Appeals from Judgments and Other Orders

(1) Appeals from Non-Dispositive Orders

(A) Any party may appeal from a Magistrate Judge's determination of a non-dispositive matter within 14 days after the party has been served with a copy of the Magistrate Judge's order, unless a motion for reargument of the matter pursuant to L.Civ.R. 7.1(i) has been timely filed and served, in which case the time to appeal will begin to run when the parties are served with a copy of the Magistrate Judge's order rendering a determination on the merits of such a motion. Such party shall file with the Clerk and serve on all parties a written notice of appeal which shall specifically designate the order or part thereof appealed from and the basis for objection

thereto. The notice of appeal shall be submitted for filing in the form of a notice of motion conforming with the requirements of L.Civ.R. 7.1. The party filing an appeal shall provide to the Court a transcript of that portion of the hearing before the Magistrate Judge wherein findings of fact were made, no later than 14 days before the return date of the motion.  Any party opposing the appeal shall file a responsive brief at least 14 days prior to the motion day.  Should the party appealing wish to reply to any responsive brief filed by the opposition, that party must file a reply brief at least seven days prior to the motion day.  A cross-appeal related to the subject matter of the original determination may be filed by the responding party together with that party's opposition and may be noticed for a hearing on the same day as the original appeal, as long as the responding papers are timely filed. A brief in response to the cross-appeal may be filed at least seven days prior to the date originally noticed for argument. Each of the above periods may be altered by the Magistrate Judge or District Judge. A District Judge shall consider the appeal and/or cross-appeal and set aside any portion of the Magistrate Judge's order found to be clearly erroneous or contrary to law.

(B) Except as provided in (C) below, the filing of such a motion or cross-motion to appeal does not operate to stay the order pending appeal to a District Judge. A stay of a Magistrate Judge's order pending appeal must be sought in the first instance from the Magistrate Judge whose order had been appealed, upon due notice to all interested parties.

(C) The Clerk shall take no action with respect to a Magistrate Judge's order for transfer of venue or denying a motion to seal under L.Civ.R. 5.3 until 14 days from the filing of such an order.  In the event that a notice of appeal from such an order is filed within the time allowed in the Rule, the Clerk shall take no action until the appeal is decided by the District Judge.

(2) Objections to Magistrate Judge's Proposed Findings, Recommendation or Report

Any party may object to the Magistrate Judge's proposed findings, recommendations or report issued under this Rule within 14 days after being served with a copy thereof. Such party shall file with the Clerk and serve on all parties written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis of such objection. Such party shall file with the Clerk a transcript of the specific portions of any evidentiary proceeding to which objection is made. A District Judge shall make a de novo determination of those portions to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge, however, need not normally conduct a new hearing and may consider the record developed before the Magistrate Judge, making his or her own determination on the basis of that record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

Amended: March 31, 1999; March 9, 2007; March 1, 2010; June 19, 2013.

## Civ. RULE 73.1 CIVIL TRIALS BY CONSENT BEFORE UNITED STATES MAGISTRATE JUDGES

(a) Where the parties consent, each Magistrate Judge is authorized to conduct a jury or nonjury trial in any civil action and order the entry of final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73-76. In the course of conducting proceedings in any civil action upon the consent of the parties, a Magistrate Judge may hear and determine any and all pretrial and post-trial motions including case-dispositive motions.

(b) The Clerk shall notify the parties in all civil cases that they may consent to have a Magistrate Judge conduct any or all proceedings in the case and order the entry of a final judgment. Such notice shall be mailed to the parties with the notice of the first pretrial conference.

(c) The Clerk shall not accept a consent form for filing unless it has been signed by all the parties in a case. Plaintiff shall be responsible for securing the execution and filing of such a consent form. No consent form will be made available, nor will its contents be made known to any Judge, unless all stated parties have consented to the reference to a Magistrate Judge. No Judge or other Court official may attempt to persuade or induce any party to consent to the reference of any matter to a Magistrate Judge. This Rule, however, shall not preclude a Judge from informing the parties that they may have that option.

(d) The consent form shall be filed with the Clerk not later than 21 days after the date of the final pretrial conference.

(e) After the consent form has been executed and filed, the Clerk shall so advise the District Judge to whom the case has been assigned. At the direction of the District Judge, the Clerk shall prepare for the District Judge's signature an order referring the case to a Magistrate Judge. Once the case has been referred, the Magistrate Judge shall have the authority to conduct any and all proceedings to which the parties have consented and to direct the Clerk to enter a final judgment in the same manner as if a District Judge had presided.

(f) Upon the entry of judgment in a civil case disposed of by a Magistrate Judge on consent of the parties under authority of 28 U.S.C. § 636(c) and L.Civ.R. 73.1, an aggrieved party shall appeal directly to the Court of Appeals in the same manner as an appeal from any other judgment of this Court.

Amended: March 1, 2010.

## Civ. RULE 77.1 COURT SESSION

There shall be a regular continuous session of the Court at Camden, Newark and Trenton starting on the first business day of January, except for such holidays and recess periods as may be established.

## Civ. RULE 78.1 MOTION DAYS AND ORAL ARGUMENT

(a) Except during vacation periods of the Court, the regular motion days for all vicinages are the first and third Monday of each month.  Whenever a regular motion day falls on a holiday, the motion day becomes the following non-holiday.  The Clerk shall publish a list of all regular motion days for each calendar year, and corresponding filing deadlines, on the website of the Court and in appropriate legal publications.

(b) All motions and other applications will be decided on the papers submitted unless: (1) a party requests oral argument and the request is granted by the Judge; or (2) the Court, *sua sponte*, directs that oral argument be held.  Any request for oral argument shall be clearly marked on the first page of the notice of motion and/or the brief filed by the party making such request.  If oral argument is to be heard, the Court will so notify the parties and designate the day and time of the argument.

Amended: February 24, 2005; December 13, 2007.

## Civ. RULE 79.1 CUSTODY OF ORIGINAL PAPERS, RECORDS AND EXHIBITS

(a) No original papers or records shall be taken from the Clerk's office or the courtroom (except in the custody of the Clerk) without an order from a Judge.

(b) Unless the Court otherwise directs, each exhibit admitted into evidence prior to disposition of any matter shall be held in the custody of the Clerk.

(c) Unless the Court otherwise directs in civil matters, the Clerk shall permit only the parties to the action or their attorneys to examine or copy exhibits in the Clerk's custody.

(d) At the conclusion of the trial or other disposition of a civil matter, the Clerk shall promptly return all exhibits to the attorney for the party on whose behalf they were introduced, except those pleadings from the Clerk's file marked as exhibits. The attorney to whom the exhibits are returned shall be responsible for their preservation until the time for appeal has passed, during the pendency of any appeal, or for six months, whichever period is longer, and shall make them available to any party or attorney for any party for the purpose of preparing the record or appendix on appeal.

(e) In the event that exhibits consist of heavy or bulky models or other material which cannot conveniently be mailed, the Clerk, in writing, shall notify the attorney who introduced such exhibits to remove them within 21 days and, upon the attorney's failure to do so, they shall be disposed of as the Clerk sees fit.

Amended: March 1, 2010.

## Civ. RULE 79.2 BRIEFS PART OF PUBLIC RECORD

Although not filed with the Clerk, all briefs, unless otherwise ordered by the Court, shall constitute parts of the public record, and it is the policy of the Court that counsel should, if reasonably feasible, provide to the media and members of the public access to a copy of the submitted briefs in pending actions for the purpose of review or copying at the requesting party's expense.

## Civ. RULE 79.3 ENTRY OF SATISFACTION OF JUDGMENTS AND DECREES

Satisfaction of a money judgment recovered in this District, or registered in this District pursuant to 28 U.S.C. § 1963, shall be entered by the Clerk, as follows:

(a) Upon the filing of a warrant of satisfaction executed and acknowledged by (1) the judgment-creditor or his or her attorney of record; or (2) the assignee of the judgment-creditor, with evidence of the assignment.

(b) Upon the filing of a warrant of satisfaction executed by the United States Attorney, if the judgment-creditor is the United States.

(c) Upon the registration of a certified copy of a satisfaction of the judgment entered in another district.

## Civ. RULE 79.4 FILING OF MANDATE

Upon the filing of a mandate or certified copy of the judgment in lieu thereof from an appellate court, the Clerk shall file and enter it and notify counsel for the parties. In the event that the mandate or judgment provides for costs or directs a disposition other than an affirmance, the prevailing party shall submit an order implementing the mandate or judgment.

## Civ. RULE 79.5 CLERK TO MAINTAIN LIST OF OFFICIAL NEWSPAPERS

There shall be maintained at each office of the Clerk a list of the newspapers designated by order of the Court as the official newspapers, within their respective counties, for the publication of all notices and orders under all statutes, rules, and general orders of the Supreme Court of the United States requiring or permitting this Court to designate newspapers for official publication. (See Appendix G for listing of official newspapers.

## Civ. RULE 80.1 TRANSCRIPTS

(a) Rates of Official Reporters

The rates for transcripts furnished by the official court reporters shall be those fixed by order of the Court, pursuant to recommendations of the Judicial Conference of the United States, and filed with the Clerk. See Appendix F.

(b) Requests for Transcripts of Proceedings

To order transcripts of matters on appeal, appellant or counsel for appellant shall submit a Third Circuit Court of Appeals Transcript Purchase Order form to the office of the Clerk. Persons requesting transcripts of the record for purposes other than appeal shall submit a District of New Jersey Transcript Purchase Order to the office of the Clerk. Supplies of both of these forms are available at the office of the Clerk.

## Civ. RULE 81.1 NATURALIZATION

All applications to take the Oath of Allegiance to the United States under the Act of June 25, 1936, as amended, before being presented to the Court shall be referred to the Immigration and Naturalization Service, for the purpose of conducting preliminary hearings thereon by a designated officer of that Service, and the submission of findings and recommendations to the Court. All such applications shall be heard only on days fixed by the Court for the hearing of other naturalization matters.

## Civ. RULE 81.2 PETITIONS FOR *HABEAS CORPUS* AND MOTIONS UNDER 28 U.S.C. § 2255 IN NON-DEATH PENALTY CASES

(a) Unless prepared by counsel, petitions to this Court for a writ of *habeas corpus* and motions under 28 U.S.C. § 2255 shall be in writing (legibly handwritten in ink or typewritten), signed by the petitioner or movant, on forms supplied by the Clerk. When prepared by counsel, the petition or motion shall follow the content of the forms.

(b) If the petition or motion is presented *in forma pauperis* it shall include an affidavit (attached to the back of the form) setting forth information which establishes that the petitioner or movant is unable to pay the fees and costs of the proceedings. Whenever a Federal, State, or local prisoner submits a civil rights complaint, petition for a writ of *habeas corpus*, or motion for relief under 28 U.S.C. § 2255 and seeks *in forma pauperis* status, the prisoner shall also submit an affidavit setting forth information which establishes that the prisoner is unable to pay the fees and costs of the proceedings and shall further submit a certification signed by an authorized officer of the institution certifying (1) the amount presently on deposit in the prisoner's prison account and, (2) the greatest amount on deposit in the prisoner's prison account during the six-month period prior to the date of the certification. The affidavit and certification shall be in the forms attached to and made a part of these Rules as Appendix P.

(c) If the prison account of any petitioner or movant exceeds $200, the petitioner or movant shall not be considered eligible to proceed *in forma pauperis*.

(d) The respondent shall file and serve his or her answer to the petition or motion not later than 45 days from the date on which an order directing such response is filed with the Clerk, unless an extension is granted for good cause shown. The answer shall include the respondent's legal argument in opposition to the petition or motion. The respondent shall also file, by the same date, a certified copy of all briefs, appendices, opinions, process, pleadings, transcripts and orders filed in the underlying criminal proceeding or such of these as may be material to the questions presented by the petition or motion.

(e) Upon entry of an appealable order, the Clerk and appellant's counsel will prepare the record for appeal. The record will be transmitted to the Third Circuit Court of Appeals within seven days after the filing of a notice of appeal from the entry of an appealable order under 18 U.S.C. §3731, 28 U.S.C. §1291 or 28 U.S.C. § 1292(a)(1).

Amended:  January 10, 2001; March 9, 2007; March 1, 2010.

**Civ. RULE 81.3 PETITIONS FOR *HABEAS CORPUS* AND MOTIONS UNDER 28 U.S.C. § 2255 IN DEATH PENALTY CASES**

(a) The following Local Civil Rule shall govern all petitions for a writ of *habeas corpus* and all motions under 28 U.S.C. § 2255 where the relief sought would affect a sentence of death previously imposed on the petitioner (hereinafter "capital case").

(b) Any petition for a writ of *habeas corpus* and any motion to vacate, set aside or correct a sentence under 28 U.S.C. § 2255 in a capital case must be accompanied by a cover sheet that lists:

(1) petitioner's full name and prisoner number; if prosecuted under a different name or alias that name must be indicated;

(2) name of person having custody of petitioner (warden, superintendent, etc.);

(3) petitioner's address;

(4) name of trial judge;

(5) court term and bill of information or indictment number;

(6) charges of which petitioner was convicted;

(7) sentence for each of the charges;

(8) plea entered;

(9) whether trial was by jury or to the bench;

(10) date of filing, docket numbers, dates of decision and results of any direct appeal of the conviction;

(11) date of filing, docket numbers, dates of decision and results of any state collateral attack on a state conviction including appeals;

(12) date of filing, docket numbers, dates of decision of any prior federal *habeas corpus* or § 2255 proceedings, including appeals; and

(13) name and address of each attorney who represented petitioner, identifying the stage at which the attorney represented the litigant.

(c) Any such petition or motion in a capital case:

(1) must list every ground on which the petitioner claims to be entitled to *habeas corpus* relief (or relief under 28 U.S.C. § 2255 for federal prisoners) followed by a concise statement of the material facts supporting the claims;

(2) must identify at what stage of the proceedings each claim was exhausted in state court if the petition seeks relief from a state court judgment;

(3) must contain a table of contents if the petition is more than 25 pages;

(4) may contain citation to legal authorities that form the basis of the claim.

(d) Petitioner must file, not later than 30 days after the date of the filing of the *habeas corpus* petition or the motion under 28 U.S.C. § 2255, in a capital case an original and one copy of a brief in support of the relief requested, which brief shall comply with the requirements of Local Civil Rule 7.2(b). The original brief shall be filed by the Clerk and the copy forwarded by the Clerk to the District Judge assigned to the case.

(e) The petition/motion and brief together must not exceed 100 pages.  Any such paper shall be served upon the respondent when it is filed with the Court.

(f) Within 60 days after being served with all papers, including the brief, filed by the petitioner/movant, the respondent shall file and serve a response which:

(1) must contain a table of contents if it is more than 25 pages;

(2) must include an original and one copy of a brief complying with the requirements of Local Civil Rule 7.2(b), which the Clerk shall file and process in the manner set forth in subsection (d) above; and

(3) must include a certified copy of all briefs, appendices, opinions, process, pleadings, transcripts and orders filed in the underlying criminal proceeding or such of these as may be material to the questions presented by the petition or motion.

(g) The response and brief required in sections (f)(1) and (2) above must not exceed 100 pages.

(h) Any reply to the response must be filed and served within 21 days of the filing of the response and may not exceed 30 pages.

(i) Upon motion (with notice to all adverse parties) and for good cause shown, the District Judge may extend the page limits for any document.

(j) Upon motion (with notice to all adverse parties) and for good cause shown, the District Judge may extend the time for filing any document.  This provision does not enlarge the power of the District Judge to extend the time for filing a petition under 28 U.S.C. § 2254 or a motion under 28 U.S.C. § 2255 beyond that permitted by applicable statutory and case law.

(k) All documents filed by any party under this rule must be succinct and must avoid repetition.

(l) Each petitioner in any *habeas corpus* proceeding or motion under 28 U.S.C. § 2255 in which the imposition of a death sentence is challenged shall file a "Certificate of Death Penalty Case" with the initial petition, motion or other pleading.  This Certificate shall include the following information:

(1) names, addresses and telephone numbers of parties and counsel;

(2) if set, the proposed date of the execution of sentence; and

(3) the emergency nature of the proceedings.

(m) A Certificate of Death Penalty Case shall be filed with the Clerk by the United States Attorney for the District of New Jersey upon return of a verdict of death in a federal criminal case.

(n) Upon the entry of a warrant or order setting an execution date in any case within the geographical boundaries of this district, and in aid of this Court's potential jurisdiction, the Clerk is directed to monitor the status of the execution and any pending litigation and to establish communication with all parties and relevant state and/or federal courts.  Without further order of this Court, the Clerk may, prior to the filing of a petition, direct parties to lodge with this Court (1) relevant portions of previous state and/or federal court records, or the entire record, and (2) pleadings, briefs, and transcripts of any ongoing proceedings.  To prevent delay, the case may be assigned to a District Judge, up to 14 days prior to the execution date.  The identity of the District Judge assigned shall not be disclosed until a petition is actually docketed.

(o) The assignment of death-penalty cases among the District Judges of this Court (whether before or after a petition is docketed) shall be as follows:  If *habeas* relief from a State conviction is sought, the Clerk

shall allocate the case to the vicinage which encompasses the county in which the capital sentence was imposed and assign the case to the next District Judge on that vicinage's list of District Judges to receive such cases.  If relief from a federal conviction arising in this District is sought under 28 U.S.C. § 2255, the case shall be assigned to the District Judge who presided at the capital sentencing or in his or her unavailability to the next District Judge on that vicinage's list of District Judges to receive such cases.

(p) In accordance with Third Circuit L.A.R. Misc. 111.3(a), at the time a final decision is entered, the Court shall state whether a certificate of appealability is granted, the court must state the issues that merit the granting of a certificate and must also grant a stay pending disposition of the appeal, except as provided in 28 U.S.C. § 2262.

(q) Upon entry of an appealable order, the Clerk and appellant's counsel will prepare the record for appeal.  The record will be transmitted to the Third Circuit Court of Appeals within seven days after the filing of a notice of appeal from the entry of an appealable order under 18 U.S.C. §3731, 28 U.S.C. § 1291 or 28 U.S.C. § 1292(a) (1), unless the appealable order is entered within 14 days of the date of the scheduled execution, in which case the record shall be transmitted immediately by an expedited means of delivery.

Adopted January 10, 2001. Amended March 1, 2010.

## Civ. RULE 83.1 ADOPTION AND AMENDMENT OF LOCAL RULES

(a) The Court may, by action of the majority of the District Judges of this Court, from time to time, after giving appropriate public notice and an opportunity for comment, amend these Rules. All such amendments shall be consistent with the United States Constitution, Federal statutory law, and the Federal Rules of Civil and Criminal Procedure. Any Rule or Rule amendment adopted pursuant to this Rule shall take effect upon the date specified by this Court and shall have such effect on pending proceedings as this Court may direct. All Rules of this Court shall remain in effect unless amended by the Court or abrogated by the Judicial Council of the Third Circuit. Copies of these Rules and any amendments thereto shall, upon their promulgation, be furnished to the Judicial Council of the Third Circuit, the Administrative Office of the United States Courts, and made available to the public.

(b) If the Court determines that there is an immediate need for a Rule or amendment to these Rules, it may promulgate such a Rule or Rule amendment without public notice and an opportunity for comment. The Court shall promptly thereafter afford such notice and opportunity for comment.

## Civ. RULE 83.2 RELAXATION OR MODIFICATION OF LOCAL RULES

(a) The Chief Judge may, after recommendation by the Lawyers's Advisory Committee and with the approval of the Court, authorize the relaxation, dispensation or modification of any Rule on a temporary basis. The effective period of any such authorization shall not exceed one year.

(b) Unless otherwise stated, any Rule may be relaxed or dispensed with by the Court if adherence would result in surprise or injustice.

## Civ. RULE 83.3 PROCEDURE IN THE ABSENCE OF RULE OR STATUTORY PROVISION

In the absence of any governing rule and/or if no procedure is especially prescribed, the Court and parties shall proceed in any lawful manner not inconsistent with the Constitution of the United States, the Federal Rules of Civil and Criminal Procedure, these Rules, or any applicable statute with the aims of securing a just determination, simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay and of avoiding surprise and injustice. In such instances, the procedure and practice of the Courts of the State of New Jersey may be considered for guidance.

**Civ. RULE 85.1 TITLE**

These Rules may be known and cited as the Local Civil Rules of the United States District Court for the District of New Jersey and abbreviated as "L.Civ.R."

**Civ. RULE 101.1 ADMISSION OF ATTORNEYS**

Table of Contents

| REFERENCE | SUBJECT HEADINGS |
|---|---|
| (a) | Scope of Admission |
| (b) | New Jersey Attorneys |
| (c) | Appearance *Pro Hac Vice*; Local Counsel |
| (d) | Adherence to Schedules; Sanctions |
| (e) | Appearance by Patent Attorneys |
| (f) | Appearance by Attorneys for the United States |
| (g) | Appearance by Professional Law Corporations |
| (h) | Appearance by Supervised Law Students |
| (i) | Admission Fee |
| (j) | Appearance of Attorneys in Criminal Cases |

(a) Scope of Admission

The bar of this Court shall consist of those persons heretofore admitted to practice in this Court and those who may hereafter be admitted in accordance with these Rules.

(b) New Jersey Attorneys

Any attorney licensed to practice by the Supreme Court of New Jersey may be admitted as an attorney at law upon completion of a sworn application submitted to the Court. Any New Jersey attorney deemed ineligible to practice law by order of the New Jersey Supreme Court entered pursuant to New Jersey Court Rule 1:28-2(a) shall not be eligible to practice law in this Court during the period of such ineligibility. Any attorney licensed to practice by the Supreme Court of New Jersey who has resigned from the New Jersey bar shall be deemed to have resigned from the bar of this Court effective as of the same date as his/her resignation from the New Jersey bar.

(c) Appearance *Pro Hac Vice*; Local Counsel

(1) Any member in good standing of the bar of any court of the United States or of the highest court of any state, who is not under suspension or disbarment by any court and is ineligible for admission to the bar of this Court under L.Civ.R. 101.1(b), may in the discretion of the Court, on motion, be permitted to appear and participate in a particular case. The motion shall contain a certified statement of the applicant disclosing each bar in which the applicant is a member in good standing including the year of admission and the name and address of the official or office maintaining the roll of such members of its bar; in lieu thereof, the motion may attach a certificate of good standing issued by the person or office maintaining the roll of the members of its bar. The motion shall also contain a statement certifying that no disciplinary proceedings are pending against the attorney in any jurisdiction and no discipline has previously been imposed on the attorney in any jurisdiction. If discipline has previously been imposed within the past five years, the certification shall state the date, jurisdiction, nature of the ethics violation and the penalty imposed. If proceedings are pending, the certification shall specify the jurisdiction, the charges and the likely time of their disposition. An attorney admitted *pro hac* vice shall have the continuing obligation during the period of such admission promptly to

advise the Court of the disposition made of pending charges or of the institution of new disciplinary proceedings.

(2) The order of the Court granting a motion to appear *pro hac vice* shall require the out-of-state attorney to make a payment to the New Jersey Lawyers' Fund for Client Protection as provided by New Jersey Court Rule 1:28-2(a). This payment shall be made for any year in which the admitted attorney continues to represent a client in a matter pending in this Court. A copy of the order shall be forwarded by the Clerk to the Treasurer of the Fund.

(3) The order of the Court granting a motion to appear pro hac vice shall require the out-of-state attorney to make a payment of $250.00 on each admission payable to the Clerk, USDC.

(4) If it has not been done prior to the granting of such motion, an appearance as counsel of record shall be filed promptly by a member of the bar of this Court upon whom all notices, orders and pleadings may be served, and who shall promptly notify his or her specially admitted associate of their receipt. Only an attorney at law of this Court may file papers, enter appearances for parties, sign stipulations, or sign and receive payments on judgments, decrees or orders. A lawyer admitted *pro hac vice* is deemed to have agreed to take no fee in any tort case in excess of New Jersey Court Rule 1:21-7 governing contingent fees.

(5) A lawyer admitted *pro hac vice* is within the disciplinary jurisdiction of this Court.  A lawyer admitted *pro hac vice* may not withdraw as counsel without leave of this Court before the action is terminated.

(6) Any *pro hac vice* counsel admitted in the action is deemed to have certified under Fed. R. Civ. P. 11(b) to those pleadings, written motions or other papers that the *pro hac vice* counsel signs, files, submits or later advocates to the Court.

(d) Adherence to Schedules; Sanctions

All members of the bar of this Court and those specially permitted to participate in a particular action shall strictly observe the dates fixed for scheduling conferences, motions, pretrial conferences, trials or any other proceedings. Failure of counsel for any party, or of a party appearing *pro se*, to comply with this Rule may result in the imposition of sanctions, including the withdrawal of the permission granted under L.Civ.R. 101.1(c) to participate in the particular action. All applications for adjournment shall be made promptly and directed to the Judge to whom the matter is assigned.

(e) Appearance by Patent Attorneys

Any member in good standing of the bar of any court of the United States or of the highest court of any state who is not eligible for admission to the bar of this Court under L.Civ.R. 101.1(b) may be admitted as an attorney at law, subject to the limitations hereinafter set forth, on motion of a member of the bar of this Court and upon taking the prescribed oath and signing the roll, provided such applicant has filed with the Clerk a verified application for admission as an attorney of this Court establishing that the applicant:

(1) is a member in good standing of the bar of any United States court or the highest court of any state for at least five years;

(2) has been admitted to practice as an attorney before the United States Patent Office and is listed on its Register of attorneys;

(3) has been continuously engaged in the practice of patent law as a principal occupation in an established place of business and office located in the State of New Jersey for at least two years prior to date of application; and

(4) has sufficient qualifications both as to prelegal and legal training to satisfy the Court.

No member admitted under L.Civ.R. 101.1(e) shall designate himself or herself other than as a patent attorney or patent lawyer, and that person's admission to practice before this Court shall be limited to cases solely arising under patent laws of the United States or elsewhere. Failure to continue to maintain an established place of business or office within the State for the practice of patent law shall, upon proof thereof to the Court, justify the striking of such attorney's name from the roll of patent attorneys established under this Rule. In any litigation, any patent attorney admitted under L.Civ.R. 101.1(e) shall be associated of record with a member of the bar of this Court admitted under L.Civ.R. 101.1(b).

Nothing herein contained shall preclude any patent attorney from being admitted under L.Civ.R. 101.1(b) or (c).

(f) Appearance by Attorneys for the United States

An attorney admitted to practice in any United States District Court may practice before this Court in any proceeding in which he or she is representing the United States or any of its officers or agencies. If such attorney does not have an office in this District he or she shall designate the United States Attorney to receive service of all notices or papers in that action. Service upon the United States Attorney or authorized designee shall constitute service upon a government attorney who does not have an office in this District.

(g) Appearance by Professional Law Corporations

The provisions of this Rule shall extend to duly created professional law corporations, authorized to be formed under the law of the jurisdiction to which the attorney employed by the corporation shall have been admitted to practice, to the same extent as they apply to partnerships and other unincorporated law firms. In every case in which such a professional law corporation participates, all appearances and papers shall be in the full name of the corporation, including such designations as "Chartered," "Professional Association," "P.C.," and the like, and shall be executed on its behalf by an individual attorney qualified under this Rule and employed by it, as "Authorized Attorney." Both the corporate entity and its attorney employee shall be subject to all provisions of these Rules.

(h) Appearance by Supervised Law Students

With the Court's approval, an eligible law student may appear under supervision of an attorney on behalf of any person, including the United States Attorney, who has consented in writing.

(1) The attorney who supervises a student shall:

(A) be either a member of the bar of this Court who maintains a bona fide office in this District or an attorney permitted to practice before the courts of the State of New Jersey under N.J.R. 1:21-3(c);

(B) personally assume professional responsibility for the student's work;

(C) assist the student to the extent necessary;

(D) appear with the student in all proceedings before the Court; and

(E) file written consent to supervise the student.

(2) In order to appear, the student shall:

(A) be enrolled in a law school approved by the American Bar Association;

(B) have successfully completed legal studies amounting to at least two-thirds of the credits needed for graduation or the equivalent;

(C) be certified by either the dean or a faculty member of that law school as qualified to provide the legal representation permitted by these Rules (This certification may be withdrawn by the person so certifying at any time by mailing a notice to the Clerk, or upon termination by the Judge presiding in the case in which the student appears without notice or hearing and without a showing of cause. The loss of certification by action of a Judge shall not be considered a reflection upon the character or ability of the student.);

(D) be introduced to the Court by an attorney admitted to practice in this District;

(E) neither ask for nor receive from the client represented any compensation or remuneration of any kind for services rendered; but this limitation shall not prevent an attorney, legal aid bureau, law school, public defender agency, a State, or the United States from paying compensation to the eligible law student, nor shall it prevent any agency from making proper charges for its services;

(F) certify in writing that he or she is familiar and will comply with the Disciplinary Rules;

(G) certify in writing that he or she is familiar with the Federal procedural and evidentiary rules relevant to the action in which he or she is appearing.

(3) The law student, supervised in accordance with these Rules, may:

(A) appear as counsel in court or at other proceedings when written consent of the client (or of the United States Attorney when the client is the United States) and the supervising attorney has been filed, and when the Court has approved the student's request to appear in the particular case to the extent that the Judge presiding at the hearing or trial permits;

(B) prepare and sign motions, petitions, answers, briefs, and other documents in connection with any matter in which he or she has met the conditions of L.Civ.R. 101.1(h)(3)(A); each such document shall also be signed by the supervising attorney.

(4) Forms for designating compliance with this Rule are set forth in Appendix A1 and A2, and shall be available in the Clerk's office. Completed forms shall be filed with the Clerk.

(5) Participation by students under this Rule shall not be deemed a violation in connection with the rules for admission to the bar of any jurisdiction concerning practice of law prior to admission to that bar.

(i) Admission Fee

An attorney admitted to the bar of this Court shall pay an admission fee in the amount set by the Court. The Clerk shall collect such funds and maintain them in the manner set forth by the Court in the Plan for Administration and Operation of the Attorney's Admission Fee Account. Such funds are to be used for projects which the Court determines are for the benefit of the bench and bar in the administration of justice within the District.

(j) Appearance of Attorneys in Criminal Cases

This Rule does not govern the appearance of attorneys representing defendants in criminal cases.

Amended: August 4, 1998; March 31, 1999; March 22, 2005; March 9, 2007; May 1, 2010; November 10, 2016; July 5, 2018; March 1, 2024.

## Civ. RULE 102.1 WITHDRAWAL OF APPEARANCE

Unless other counsel is substituted, no attorney may withdraw an appearance except by leave of Court. After a case has been first set for trial, substitution and withdrawal shall not be permitted except by leave of Court.

## Civ. RULE 103.1 JUDICIAL ETHICS AND PROFESSIONAL RESPONSIBILITY

(a) The Rules of Professional Conduct of the American Bar Association as revised by the New Jersey Supreme Court shall govern the conduct of the members of the bar admitted to practice in this Court, subject to such modifications as may be required or permitted by Federal statute, regulation, court rule or decision of law.

(b) The Code of Judicial Conduct of the American Bar Association shall govern the conduct of the Judges of this Court, subject to such modifications as may be required or permitted by Federal statute, regulation, court rule or decision of law.

(c) The GUIDELINES FOR LITIGATION CONDUCT adopted by the American Bar Association's Section of Litigation in August 1998, are hereby adopted by this Court and incorporated into these Rules as Appendix R. These Guidelines have been adopted by this Court to encourage civility, courtesy and professionalism among the bench and the bar. They are purely aspirational in nature and are not to be used as a basis for litigation, liability, discipline, sanctions, or penalties of any type.

Amended: March 31, 1999.

## Civ. RULE 104.1 DISCIPLINE OF ATTORNEYS

The Court, in furtherance of its inherent power and responsibility to supervise the conduct of attorneys who are admitted to practice before it or admitted for the purpose of a particular proceeding (*pro hac vice*), promulgates the following Rules of Disciplinary Enforcement superseding all of its other Rules pertaining to disciplinary enforcement heretofore promulgated.

Table of Contents

REFERENCE          SUBJECT HEADINGS

(a)          Attorneys Convicted of Crimes
(b)          Discipline Imposed by other Courts
(c)          Disbarment on Consent or Resignation in other Courts
(d)          Standards for Professional Conduct
(e)          Disciplinary Proceedings
(f)          Disbarment on Consent While Under Disciplinary Investigation or Prosecution
(g)          Reinstatement
(h)          Attorneys Specially Admitted
(i)          Service of Papers and Other Notices
(j)          Appointment of Counsel
(k)          Payment of Fees and Costs
(l)          Duties of the Clerk
(m)          Jurisdiction

(a) Attorneys Convicted of Crimes

(1) Upon the filing with this Court of a certified copy of a judgment of conviction demonstrating that any attorney admitted to practice before the Court has been convicted in any court of the United States, or the District of Columbia, or any state, territory, commonwealth or possession of the United States, of a serious crime as hereinafter defined, the Chief Judge shall immediately enter an order temporarily suspending that attorney, whether the conviction resulted from a plea of guilty or *nolo contendere*, or from a verdict after trial or otherwise, and regardless of the pendency of any appeal, until final disposition of a disciplinary proceeding to be commenced upon such conviction. A copy of such order shall immediately be served upon the attorney. Upon good cause shown, the Court may set aside such order when the interest of justice requires.

(2) The term "serious crime" shall include any felony and any lesser crime a necessary element of which, as determined by the statutory or common law definition of such crime in the jurisdiction where the judgment was entered, involves false swearing, misrepresentation, fraud, willful failure to file income tax returns, deceit, bribery, extortion, misappropriation, theft, or an attempt, conspiracy or solicitation of another to commit a "serious crime."

(3) Any attorney admitted to practice before this Court shall, upon being convicted of a crime in this Court or any other court of the United States or the District of Columbia, or by the court of any state, territory, commonwealth or possession of the United States, inform the Clerk and the Chief Judge in writing of such conviction within 20 days of the date of conviction (the earliest of the date of entry of a plea of guilty or *nolo contendere*, or verdict by a judge or jury, or sentencing). Failure to comply with this notice provision shall result in additional discipline in this Court, unless excused by the Court for good cause.

(4) A certified copy of a judgment of conviction of an attorney for any crime shall be conclusive evidence of the commission of that crime in any disciplinary proceeding instituted against that attorney based upon the conviction.

(5) After the entry of the temporary suspension, the Court shall enter an Order to Show Cause as to why the temporary suspension should not be made permanent. If the suspended attorney does not contest the matter by the return date of the Order to Show Cause, the Court shall enter an Order of Disbarment barring the attorney from the practice of law before the Court. If the attorney does contest the matter, the Court can refer the matter to counsel in accordance with subsections (6) and (7).

(6) Where the conviction of an attorney is for a serious crime, the Court shall refer the matter to counsel, who will represent the interests of the Court, for the institution of a disciplinary proceeding before the Court in which the sole issue to be determined shall be the extent of the final discipline to be imposed as a result of the conduct resulting in the conviction, provided that a disciplinary proceeding so instituted will not be brought to final hearing until all direct appeals from the conviction are concluded. Counsel shall investigate and research the matter, and make a recommendation to the Court as to the appropriate sanction to be imposed in accordance with subsection (e)(4).

(7) Where the conviction of an attorney is for a crime not constituting a serious crime, the Court may, in its discretion, refer the matter to counsel for a recommendation as to what action, if any, should be taken, including the institution of a disciplinary proceeding before the Court.

(8) An attorney suspended under the provisions of this Rule will be reinstated immediately upon the filing of a certificate demonstrating that the underlying conviction of a serious crime has been reversed but the reinstatement will not terminate any disciplinary proceeding then pending against the attorney, the disposition of which shall be determined by the Court on the basis of all available evidence pertaining to both guilt and the extent of discipline to be imposed.

(b) Discipline Imposed by Other Courts

(1) Any attorney admitted to practice before this Court shall, upon being subjected to public discipline (including but not limited to disbarment, temporary or permanent suspension, censure, reprimand or admonition) by any other court of the United States or the District of Columbia, or by a court of any state, territory, commonwealth or possession of the United States, inform the Clerk and Chief Judge of this Court of such action within 20 days of the date of such order of discipline. Failure to comply with this notice provision shall result in the automatic imposition of the same discipline in this Court, unless excused by the Court for good cause.

(2) Upon receipt by the Court of such notice under L.Civ.R. 104.1(b)(1) or the filing of a certified or exemplified copy of a judgment or order demonstrating that an attorney admitted to practice before this Court has been disciplined by another court, this Court, unless this Court determines that L.Civ.R. 104.1(a) governs, or unless this Court determines that the discipline resulted from an attorney's excusable failure to pay the annual fee to a court's client protection fund, shall forthwith issue a notice directed to the attorney containing:

 (A) a copy of the judgment or order from the other court; and

 (B) an order to show cause directing that the attorney inform this Court within 30 days after service of that order upon the attorney, personally or by mail, of any claim by the attorney predicated upon the grounds set forth in L.Civ.R. 104.1(b)(4), that the imposition of the identical discipline by the Court would be unwarranted, and the reasons therefor.

(3) In the event the discipline imposed in the other jurisdiction has been stayed there, any reciprocal discipline imposed in this Court shall be deferred until such stay expires.

(4) Upon the expiration of 30 days from service of the notice issued pursuant to the provisions of L.Civ.R. 104.1(b)(2), this Court shall impose the identical discipline unless the respondent-attorney ("respondent") demonstrates or this Court finds that, upon the face of the record upon which the discipline in another jurisdiction is predicated, it clearly appears:

 (A) that the procedure was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or

 (B) that there was such an infirmity of proof establishing the misconduct as to give rise to the clear conviction that this Court could not, consistent with its duty, accept as final the conclusion on that subject; or

 (C) that the imposition of the same discipline by this Court would result in grave injustice; or

 (D) that the misconduct established is deemed by this Court to warrant substantially different discipline.

Where this Court determines that any of said elements exist, it shall enter such other order as it deems appropriate, provided that the attorney has also demonstrated that the attorney has complied with all rules for disciplined attorneys in the other court of the United States or the District of Columbia, or the court of any state, territory, commonwealth or possession of the United States in which the discipline was administered.

In addition, the Court has the power to order additional and/or harsher discipline than that imposed by the other jurisdiction, provided the Court has given respondent written notice of its intention to do so, the opportunity to further develop the record, and an opportunity to be heard.

(5) In all other respects, a final adjudication in another court that an attorney has been guilty of misconduct shall establish conclusively the misconduct for the purposes of a disciplinary proceeding in this Court.

(6) This Court may, at any stage, appoint counsel to prosecute the disciplinary proceedings.

(c) Disbarment on Consent or Resignation in Other Courts

(1) Any attorney admitted to practice before this Court who shall be disbarred on consent or resign from the bar of any other court of the United States or the District of Columbia, or from the bar of any state, territory, commonwealth or possession of the United States, while an investigation into allegations of misconduct is pending, shall, upon the filing with this Court of a certified or exemplified copy of the judgment or order accepting such disbarment on consent or resignation, cease to be permitted to practice before this Court and be stricken from the roll of attorneys admitted to practice before this Court.

(2) Any attorney admitted to practice before this Court shall, upon being disbarred on consent or resigning from the bar of any other court of the United States or the District of Columbia, or from the bar of any state, territory, commonwealth or possession of the United States while an investigation into allegations of misconduct is pending, promptly inform the Clerk of this Court of such disbarment on consent or resignation.

(d) Standards for Professional Conduct

(1) For misconduct defined in these Rules and for good cause shown, and after notice and opportunity to be heard, any attorney admitted to practice before this Court may be subject to private reprimand and to the following forms of public discipline: admonition, public reprimand and censure (letter or decision detailing the attorney's misconduct; admonition being the least serious, censure being the most serious); suspension (period of time during which the attorney is prohibited from practicing law); and disbarment (loss of license to practice law before this Court). In its discretion, the Court may also take such other disciplinary action as the circumstances may warrant, including the imposition of fees and expenses incurred by the Court and/or counsel appointed by the Court, as set forth in L.Civ.R. 104.1(k).

(2) An act or omission by an attorney admitted to practice before this Court, individually or in concert with any other person or persons, which violates the applicable Rules of Professional Conduct referred to in L.Civ.R. 103.1 shall constitute misconduct and be grounds for discipline whether or not the act or omission occurred in the course of an attorney-client relationship.

(e) Disciplinary Proceedings

(1) Every attorney authorized to practice law or appearing before this Court, including those specially authorized for a limited purpose or in connection with a particular proceeding pursuant to L.Civ.R. 101.1, shall be subject to the disciplinary jurisdiction of this Court.

(2) When misconduct or allegations of misconduct which, if substantiated, would warrant discipline of an attorney, shall come to the attention of a Judge of this Court, and the applicable procedure is not otherwise mandated by these Rules, that Judge shall refer the matter in writing to the Chief Judge. The Chief Judge may refer the matter to the appropriate State disciplinary body or, if the Chief Judge concludes that further

investigation is warranted, he or she shall direct the Clerk to refer the matter to an attorney ("investigating counsel") who is admitted to practice before this Court to conduct such an investigation in order to determine whether a formal order to show cause should issue.

(3) The Clerk's order of reference to investigating counsel and all other papers filed in the matter shall be placed under seal and shall remain under seal unless and until an order to show cause and complaint are issued under L.Civ.R. 104.1(e)(7), at which point an order shall be entered unsealing those portions of the record deemed appropriate; provided, however, that disclosure may be sooner in the event that the Chief Judge determines that disclosure is warranted for the protection of the public and/or in the administration of justice. Investigating counsel shall have no obligation to disclose to the respondent any portion of the investigation file, including discovery conducted pursuant to L.Civ.R. 104.1e(4), except if the investigating counsel intends to use a deposition transcript from the investigation at a future hearing as set forth in subsection (4)(B)(ii) below.

(4) Investigating counsel shall promptly, and with reasonable particularity, notify the respondent in writing of the pendency and nature of the investigation and solicit comments thereon in furtherance of the preliminary investigation. Every attorney, as set forth in L.Civ.R. 104.1(e)(1), has the affirmative obligation to cooperate in an investigation. Such cooperation shall include the production of documents and submission to interviews conducted by the investigating counsel as follows:

(A) Respondent shall serve upon investigating counsel a response to the inquiry within 30 days of service of the inquiry.

(B) Investigating counsel may conduct such discovery as is reasonably necessary to complete the investigation, which may include, but is not limited to, interviews of the respondent, depositions, requests for production of documents and requests for admissions.

(i)    If respondent is deposed during the investigation, his/her counsel may participate fully in that deposition, including lodging objections and cross-examining respondent.  However, neither respondent nor his/her counsel shall be entitled to notice of, or to attend or participate in, non-party depositions taken by the investigating counsel pursuant to subpoena prior to the issuance of an order to show cause and complaint.

(ii)   After the issuance of an order to show cause and complaint under L.Civ.R. 104.1(e)(7), investigating counsel and respondent shall be permitted to depose witnesses, and shall be entitled to cross-examine such witnesses, regardless of whether the investigating counsel has deposed that witness previously during the investigation.  If the investigating counsel intends to use a deposition transcript from the investigation at a future hearing, a copy of that transcript must be provided to the respondent within a reasonable time in advance of the hearing.

(C) Respondent shall serve upon investigating counsel a response to any request for production of documents or request for admissions within 30 days of service of the request.

(D) The time within which to respond pursuant to (A) and (C) above may be extended by investigating counsel for good cause shown.

(E) If respondent fails to respond or otherwise fails to cooperate with investigating counsel, investigating counsel shall apply to the Chief Judge for appropriate relief which may include, but is not limited to, temporary suspension, pending compliance with this rule.

(F) Failure to cooperate may constitute an independent basis for the imposition of discipline unless it is based upon the proper assertion of a legal or constitutional right.

(5) Conclusion of No Formal Disciplinary Proceeding. Should investigating counsel conclude after investigation and review that a formal disciplinary proceeding should not be initiated against the respondent because (A) clear and convincing evidence of misconduct is not present, or (B) there is pending another proceeding against the respondent, the disposition of which in the judgment of the investigating counsel should be concluded before further action by this Court, or (C) any other valid reason exists, investigating counsel shall submit a written report to the Chief Judge containing his or her findings and recommendations for disposition of the matter. If the Chief Judge concludes that no further action is required or that the matter should be deferred pending conclusion of another proceeding against the respondent, the Chief Judge shall instruct investigating counsel to so notify the respondent in writing. If the Chief Judge concludes that further investigation is required, he or she shall remand the matter to investigating counsel for further investigation in accordance with the Chief Judge's directive.

(6) Conclusion of Discipline by Consent. Should investigating counsel conclude after investigation and review that a private reprimand or public discipline should be issued to the respondent based on clear and convincing evidence, and the respondent consents to the recommendation of investigating counsel, the investigating counsel shall submit a written report to the Chief Judge containing his or her findings and recommendations. If the Chief Judge approves the recommendation of investigating counsel, he or she shall submit the report to the full Court for review and disposition. If the Chief Judge or the full Court concludes that further investigation is required, the matter shall be remanded to investigating counsel for further investigation in accordance with the Chief Judge's or the full Court's directive. If the respondent does not consent to the issuance of either a private reprimand or public discipline as recommended by the investigating counsel, the investigating counsel shall proceed in accordance with the provisions of L.Civ.R. 104.1(e)(7).

(7) Conclusion of Public Discipline Absent Consent. Should investigating counsel conclude that clear and convincing evidence of misconduct exists warranting the imposition of public discipline, investigating counsel shall submit a written report and application to the Chief Judge for the issuance of a Complaint and an order to show cause signed by the Chief Judge requiring the respondent to show cause why such discipline should not be imposed.

(8) Upon the Chief Judge's issuance of a complaint and order to show cause as set forth in L.Civ.R. 104.1(e)(7), the respondent shall file an answer within 21 days of the receipt of the complaint and order to show cause. In the answer, respondent may set forth all affirmative defenses, including all claims of mental and physical disability, if any, and whether the affirmative defenses are alleged to be causally related to the offense charged. Within 30 days of the filing of an answer, the respondent and investigating counsel may serve demands for discovery.

(9) Upon the filing of a complaint and order to show cause, as set forth in L.Civ.R. 104.1(e)(7), the Chief Judge shall set the matter for prompt hearing before a District Judge, provided, however, that if the disciplinary proceeding is predicated upon the complaint of a District Judge of this Court, the hearing shall be conducted before a different District Judge appointed by the Chief Judge, or if the Chief Judge is the complainant, by the next active District Judge senior in commission.

(10) The hearing referred to in L.Civ.R. 104.1(e)(9) shall be presented by the investigating counsel. A stenographic record shall be made of the proceeding. At the conclusion of the hearing, the District Judge assigned to the matter shall submit his or her findings of fact, conclusions of law and recommendations, if any, to the full Court for action, with a copy to the respondent and to investigating counsel.

(11) The full Court shall review the findings of fact, conclusions of law and recommendations of the District Judge designated by the Chief Judge to hear the matter, the transcript of the hearings and the briefs previously filed with the Court, if any. The record may be supplemented by the filing of briefs pursuant to a schedule fixed by the Chief Judge for review on the record and briefs, without oral argument, by the full Court. The full Court shall take whatever action it deems appropriate including, but not limited to, the dismissal of the action, private reprimand, the issuance of public discipline, as set forth in L.Civ.R. 104.1(d)(1), and the imposition of fees and expenses of the Court and/or investigating counsel, as set forth in L.Civ.R. 104.1(k).

(12)  Respondent may have legal representation throughout the disciplinary proceeding, including to aid the respondent in responding to investigating counsel's inquiry and discovery demands.  If a respondent desires legal representation, but claims to be unable to retain counsel by reason of indigence, the respondent may make application to the Chief Judge for appointment of counsel at any point in the proceedings.  Upon exceptional circumstances having been shown, the Chief Judge or the District Judge to whom the matter has been assigned shall designate an attorney who is admitted to practice before this Court to represent respondent in the matter.

(13) In furtherance of the investigation proceeding pursuant to L.Civ.R. 104.1(e)(4), investigating counsel may seek the issuance of a subpoena *ad testificandum* or a subpoena *duces tecum* by making an application to the Chief Judge. After an order to show cause has been issued by the Chief Judge pursuant to L.Civ.R. 104.1(e)(7), investigating counsel and respondent may seek the issuance of a subpoena *ad testificandum* or a subpoena *duces tecum* by way of application to the District Judge designated to hear the matter.

(14) The standard of proof in proceedings before the District Judge designated to hear the matter and the full Court shall be clear and convincing evidence, and the burden of proof under that standard shall be on the investigating counsel.

(15)  Public Disclosure of Discipline by the Court.  Where investigating counsel recommends private disciplinary action, respondent consents to that recommendation, and the Chief Judge or full Court approves the recommendation, no public disclosure of that private reprimand will be made.  Where investigating counsel recommends any other form of disciplinary action, respondent consents to that recommendation, and the Chief Judge or full Court approves the recommendation, respondent may provide comments in advance of publication to a summary public disclosure to be made by the Court announcing such discipline.  The content of the summary public disclosure shall be in the discretion of the Court.  The summary public disclosure shall be published in *The New Jersey Law Journal* in four consecutive issues of that publication, and it shall appear on the Court's website for one year from the date of first publication.

(f) Disbarment on Consent While Under Disciplinary Investigation or Prosecution

(1) Any attorney admitted to practice before this Court who is the subject of an investigation into or a pending proceeding involving allegations of misconduct may consent to disbarment, but only by delivering to this Court an affidavit or other document complying with 28 U.S.C. § 1746 stating that the attorney desires to consent to disbarment and that:

      (A) the attorney's consent is freely and voluntarily rendered; the attorney is not being subjected to coercion or duress; the attorney is fully aware of the implications of such consent;

      (B) the attorney is aware that there is presently pending an investigation or proceeding involving allegations that there exist grounds for the attorney's discipline, the nature of which the attorney shall specifically set forth;

(C) the attorney acknowledges that the material facts so alleged are true; and

(D) the attorney so consents because the attorney knows that if charges were predicated upon the matters under investigation, or if the proceeding were prosecuted, the attorney could not successfully defend.

(2) Upon receipt of the required affidavit or other document complying with 28 U.S.C. § 1746, this Court shall enter an order disbarring the attorney signed by the Chief Judge, unless unavailable, at which time the order shall be signed by the next active District Judge senior in commission.

(3) The order disbarring the attorney on consent shall be a matter of public record; however, the affidavit or other document complying with 28 U.S.C. § 1746 required by this Rule shall not be publicly disclosed or made available for use in any other proceeding except upon order of this Court.

(g) Reinstatement

(1) After Disbarment or Suspension
An attorney suspended for three months or less shall be automatically reinstated at the end of the period of suspension upon filing with the Court an affidavit or other document complying with 28 U.S.C. § 1746 of compliance with the provisions of the order. An attorney suspended for more than three months or disbarred may not resume practice until reinstated by order of this Court.

(2) Time of Application Following Disbarment
A person who has been disbarred after hearing or by consent may not apply for reinstatement until the expiration of at least five years from the effective date of the disbarment.

(3) Hearing on Application
Filing, service and notice of the petition shall be in accordance with the rules and regulations promulgated by the Disciplinary Review Board appointed by the Supreme Court of New Jersey. See New Jersey Court Rule 1:20-21. Petitions for reinstatement under this Rule by a disbarred or suspended attorney shall be filed with the Clerk. Upon receipt of the petition, the Clerk shall refer the petition to counsel and shall assign the matter for prompt hearing before a District Judge, provided however that if the disciplinary proceeding was predicated upon the complaint of a District Judge of this Court, the hearing shall be conducted before a different District Judge appointed by the Chief Judge, or if the Chief Judge was the complainant, by the next active District Judge senior in commission. The District Judge assigned to the matter shall, within 30 days after referral, schedule a hearing at which the petitioner shall have the burden of demonstrating by clear and convincing evidence that he or she has the moral qualifications, competency and learning in the law required for admission to practice law before this Court and that his or her resumption of the practice of law will not be detrimental to the integrity and standing of the bar or to the administration of justice, or subversive of the public interest.

(4) Duty of Counsel
In all proceedings upon a petition for reinstatement, cross-examination of the witnesses of the petitioner and the submission of evidence, if any, in opposition to the petition shall be conducted by counsel.

(5) Conditions of Reinstatement
If the petitioner is found unfit to resume the practice of law, the petition shall be dismissed. If the petitioner is found fit to resume the practice of law, the judgment shall reinstate that person, provided that the judgment may make reinstatement conditional upon the payment of all or part of the costs of the proceedings, and upon the making of partial or complete restitution to parties harmed by the petitioner whose conduct led to

the suspension or disbarment. If the petitioner has been suspended or disbarred for five years or more, reinstatement may be conditioned, in the discretion of the District Judge before whom the matter is heard, upon the furnishing of proof of competency and learning in the law, which proof may include certification by the bar examiners of a state or other jurisdiction of the attorney's successful completion of an examination for admission to practice subsequent to the date of suspension or disbarment.

(6) Successive Petitions
No petition for reinstatement under this Rule shall be filed within one year following an adverse judgment upon a petition for reinstatement filed by or on behalf of the same person.

(h) Attorneys Specially Admitted

Whenever an attorney applies to be admitted or is admitted to practice before this Court for purposes of a particular proceeding (*pro hac vice*), the attorney shall be deemed thereby to have conferred disciplinary jurisdiction upon this Court for any alleged misconduct of that attorney arising in the course of or in the preparation for such proceeding.

(i) Service of Papers and Other Notices

Service of an order to show cause instituting a formal disciplinary proceeding shall be made by personal service or by registered or certified mail addressed to the respondent at the address shown in the roll of attorneys of this Court or the most recent edition of the New Jersey Lawyers Diary and Manual. Service of any other papers or notices required by these Rules shall be deemed to have been made if such paper or notice is addressed to the respondent at the address shown on the roll of attorneys of this Court or the most recent edition of the New Jersey Lawyers Diary and Manual, or to the respondent's attorney at the address indicated in the most recent pleading or other document filed in the course of any proceeding.

(j) Appointment of Counsel

Whenever counsel is to be appointed pursuant to these Rules to investigate allegations of misconduct or prosecute disciplinary proceedings or in conjunction with a reinstatement petition filed by a disciplined attorney, this Court may appoint as counsel the disciplinary agency of the Supreme Court of New Jersey, or other disciplinary agency having jurisdiction. If no such disciplinary agency exists or such disciplinary agency declines appointment, or such appointment is clearly inappropriate, this Court shall appoint as counsel one or more members of the bar of this Court to investigate allegations of misconduct or to prosecute disciplinary proceedings under these Rules, provided, however, that the respondent may move to disqualify an attorney so appointed who is or has been engaged as an adversary of the respondent in any matter. Counsel, appointed under this paragraph or paragraph (e)(12) above, may not resign without permission from the Court.  Counsel may use reasonable services as needed to assist in the appointment, such as an associate and/or paralegal in the firm and be compensated for reasonable services under L.Civ.R. 104.1(k).

(k) Payment of Fees and Costs

At the conclusion of any disciplinary investigation or prosecution under these Rules, counsel appointed by the Court to either investigate, prosecute or defend the respondent in these disciplinary proceedings shall submit to the Court an itemized affidavit or other document complying with 28 U.S.C. § 1746 of expenses incurred in the course of such disciplinary investigation or prosecution.  Any such appointed counsel may also submit an itemized affidavit or other document complying with 28 U.S.C. § 1746 of fees, at such rate as may be allowable to counsel for indigent defendants under the federal Criminal Justice Act.  Any attorney who is disciplined because of misconduct may be directed by the Court to pay all or part of the fees and expenses

incurred by the Court and/or by any counsel appointed by the Court to investigate allegations of misconduct and/or to prosecute or defend the disciplinary proceedings. If the disciplinary proceedings result in the imposition of no discipline upon the respondent, counsel appointed to investigate and/or prosecute the proceedings may seek from the Court an order that his/her expenses be reimbursed from the Court's Attorney Admissions Fee Fund. If the respondent is determined to be indigent, any attorney appointed to either investigate, prosecute or defend the respondent may seek from the Court an order that his/her expenses be reimbursed from the Court's Attorney Admissions Fee Fund, without regard to whether the proceedings resulted in the imposition of discipline. Upon receipt of affidavits or other documents complying with 28 U.S.C. § 1746 regarding attorney's fees as described above, the Court may, in exceptional circumstances and if specifically requested by the applicant, order payment from the Court's Attorney Admissions Fee Fund of all or part of the fees of any appointed counsel. Any of the foregoing applications shall be made to the District Judge appointed pursuant to paragraph (e)(9) hereof or, if no such District Judge has been appointed, to the Chief Judge.

(l) Duties of the Clerk

(1) Upon being informed that an attorney admitted to practice before this Court has been convicted of any crime, the Clerk shall determine whether the clerk of the court in which such conviction occurred has forwarded a certificate of such conviction to this Court. If a certificate has not been so forwarded, the Clerk shall promptly obtain a certificate and file it with this Court.

(2) Upon being informed that an attorney admitted to practice before this Court has been subjected to discipline by another court, the Clerk shall determine whether a certified or exemplified copy of the disciplinary judgment or order has been filed with this Court, and, if not, the Clerk shall promptly obtain a certified or exemplified copy of the disciplinary judgment or order and file it with this Court.

(3) Whenever it appears that any person convicted of any crime or disbarred, suspended, censured, publicly reprimanded, admonished or disbarred on consent by this Court is admitted to practice law in any other jurisdiction or before any other court, the Clerk shall, within 14 days of that conviction, disbarment, suspension, censure, public reprimand, admonition or disbarment on consent, transmit to the disciplinary authority in such other jurisdiction, or for such other court, a certificate of the conviction or a certified copy of the judgment or order of disbarment, suspension, censure, public reprimand, admonition or disbarment on consent, as well as the last known office and residence addresses of the defendant or respondent.

(4) The Clerk shall also promptly notify the National Discipline Data Bank operated by the American Bar Association of any order imposing public discipline upon any attorney admitted to practice before this Court.

(m) Jurisdiction
Nothing contained in these Rules shall be construed to deny to this Court such powers as are necessary for the Court to maintain control over proceedings conducted before it, such as proceedings for contempt under Title 18 of the United States Code or under Fed. R. Crim. P. 42.

Amended: March 14, 2001; March 1, 2010; June 19, 2013; July 5, 2018, March 24, 2021.

## Civ. RULE 105.1 EXTRAJUDICIAL STATEMENTS
(a) A lawyer representing a party in a civil matter triable to a jury shall not make any extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the

lawyer or other person knows or reasonably should know that it will have a substantial likelihood of causing material prejudice to an adjudicative proceeding.

(b) A statement referred to in L.Civ.R. 105.1(a) ordinarily is likely to have such an effect when it relates to:

(1) the character, credibility, reputation or criminal record of a party or witness, the identity of a witness, or the expected testimony of a party or witness;

(2) the performance or results of any examination or test, the refusal or failure of a person to submit to an examination or test, or the identity or nature of physical evidence expected to be presented; and

(3) information the lawyer knows or reasonably should know is likely to be inadmissible as evidence in a trial and would if disclosed create a substantial risk of prejudice to an impartial trial.

(c) Notwithstanding L.Civ.R. 105.1(a) and (b), a lawyer involved in the litigation of a matter may state without elaboration:

(1) the general nature of a claim or defense;

(2) the information contained in a public record;

(3) the scheduling or result of any step in litigation; and

(4) a request for assistance in obtaining evidence and the information necessary thereto.

(d) Nothing in this Rule is intended to preclude either the formulation or application of more restrictive rules relating to the release of any information about parties or witnesses in an appropriate case.

(e) Nothing in this Rule is intended to apply to the holding of hearings or the lawful issuance of reports by legislative, administrative or investigative bodies, nor to a reply by any attorney to charges of misconduct publicly made against that attorney.

(f) The Court's supporting personnel including, among others, the Marshal, Deputy Marshals, the Clerk, Deputy Clerks, bailiffs, court reporters and employees or subcontractors retained by the Court-appointed official reporters, probation officers and their staffs, and members of the Judges' staffs, are prohibited from disclosing to any person, without authorization by the Court, information relating to a proceeding that is not part of the public record of the Court. The disclosure of information concerning *in camera* arguments and hearings held in chambers or otherwise outside the presence of the public is also forbidden.

(g) The Court, on motion of any party or on its own motion, may issue a special order governing such matters as extrajudicial statements by parties and witnesses likely to interfere with the rights of a party to a fair trial by an impartial jury, the seating and conduct in the courtroom of spectators and news media representatives, the management and sequestration of jurors and witnesses, and any other matters which the Court may deem appropriate for inclusion in such an order.

## Civ. RULE 201.1 ARBITRATION

Table of Contents

REFERENCE          SUBJECT HEADINGS

(a)                        Certification of Arbitrators
(b)                        Designation of Compliance Judge

| (c) | Compensation and Expenses of Arbitrators |
|-----|------------------------------------------|
| (d) | Civil Cases Eligible for Compulsory Arbitration |
| (e) | Referral of Arbitration |
| (f) | Arbitration Hearing |
| (g) | Arbitration Award and Judgment |
| (h) | Trial *De Novo* |
| (i) | Guidelines for Arbitration |

(a) Certification of Arbitrators

(1) The Chief Judge shall certify as many arbitrators as determined to be necessary under this Rule. Arbitrators shall be designated for terms of service up to three years, subject to extension at the discretion of the Chief Judge, and all such terms shall be staggered to provide orderly rotation of a portion of the membership of the panel of arbitrators.

(2) An individual may be designated to serve as an arbitrator if he or she: (a) has been for at least five years a member of the bar of the highest court of a State or the District of Columbia, (b) is admitted to practice before this Court, (c) is determined by the Chief Judge to be competent to perform the duties of an arbitrator, and (d) has participated in a training program (or the equivalent thereof) to the satisfaction of the Chief Judge.

(3) Each individual certified as an arbitrator shall take the oath or affirmation prescribed by 28 U.S.C. § 453 before serving as an arbitrator.

(4) A list of all persons certified as arbitrators shall be maintained in the office of the Clerk.

(5) Each arbitrator shall, for the purpose of performing his or her duties, be deemed a quasijudicial officer of the Court.

(b) Designation of Compliance Judge

The Board of Judges shall designate a Judge to serve as the compliance judge for arbitration. This compliance judge shall be responsible to the Board of Judges for administration of the arbitration program established by this Rule and shall be responsible for monitoring the arbitration processes; provided, however that the compliance judge shall not be responsible for individual case management.

(c) Compensation and Expenses of Arbitrators

An arbitrator shall be compensated $250 for service in each case assigned for arbitration. In the event that the arbitration hearing is protracted, the Court will entertain a petition for additional compensation. The fees shall be paid by or pursuant to an order of the Director of the Administrative Office of the United States Courts. Arbitrators shall not be reimbursed for actual expenses incurred by them in the performance of their duties under this Rule.

(d) Civil Cases Eligible for Compulsory Arbitration

(1) Compulsory Arbitration. Subject to the exceptions set forth in L.Civ.R. 201.1(d)(2), the Clerk shall designate and process for compulsory arbitration any civil action pending before the Court where the relief sought consists only of money damages not in excess of $150,000 exclusive of interest and costs and any claim for punitive damages.

(2) Exclusion from Compulsory Arbitration. No civil action shall be designated or processed for compulsory arbitration if the claim therein is

(A) based on an alleged violation of a right secured by the Constitution of the United States; or

(B) jurisdictionally based, in whole or in part, on (i) 28 U.S.C. § 1346(a)(1) (tax refund actions) or (ii) 42 U.S.C. § 405(g) (Social Security actions).

Upon filing its initial pleading a party may request that an otherwise eligible case not be designated or processed for compulsory arbitration if either circumstances encompassed within L.Civ.R. 201.1(e)(6) are present or other specific policy concerns exist which make formal adjudication, rather than arbitration, appropriate.

(3) Presumption of Damages. For the sole purpose of making the determination as to whether the damages are in excess of $150,000 as provided in L.Civ.R. 201.1(d)(1), damages shall be presumed in all cases to be $150,000 or less, exclusive of interest and costs and any claim for punitive damages, unless counsel of record for the plaintiff at the time of filing the complaint or counsel of record for any other party at the time of filing that party's first pleading, or any counsel within 30 days of the filing of a notice of removal, files with the Court a document signed by said counsel which certifies that the damages recoverable exceed the sum of $150,000 exclusive of interest and costs and any claim for punitive damages. The Court may disregard any certification or other document complying with 28 U.S.C. § 1746 filed under this Rule and require arbitration if satisfied that recoverable damages do not exceed $150,000. No provision of this Rule shall preclude an arbitrator from entering an award exceeding $150,000 based upon the proofs presented at the arbitration hearing; and an arbitrator's award may also include interest, costs, statutory attorney's fees and punitive damages, if appropriate.

(e) Referral for Arbitration

(1) After an answer is filed in a case determined eligible for arbitration, the Clerk shall send a notice to counsel setting forth the date and time for the arbitration hearing consistent with the scheduling order entered in the case and L.Civ.R. 201.1(e)(3). The notice shall also advise counsel that they may agree to an earlier date for the arbitration hearing provided the Clerk is notified within 30 days of the date of the notice. In the event additional parties have been joined in the action, this notice shall not be sent until an answer has been filed by all such parties who have been served with process and are not in default.

(2) The arbitration hearing shall be held before a single arbitrator. The arbitrator shall be chosen by the Clerk from among the lawyers who have been certified as arbitrators by the Chief Judge. The arbitrator shall be scheduled to hear not more than three cases on a date or dates which shall be scheduled several months in advance.

(3) The Judge to whom the case has been assigned shall, at least 30 days prior to the date scheduled for the arbitration hearing, sign an order setting forth the date and time of the arbitration hearing and the name of the arbitrator designated to hear the case. In the event that a party has filed a motion to dismiss the complaint, for judgment on the pleadings, summary judgment or to join necessary parties, or proceedings are initiated under L.Civ.R. 201.1(e)(6), the Judge shall not sign the order required herein until the Court has ruled on the motion or order to show cause, but the filing of such a motion on or after the date of said order shall not stay arbitration unless the Judge so orders.

(4) The Plaintiff shall within 14 days upon receipt of the order appointing the arbitrator send to the arbitrator a copies of any complaint, amended complaint and answers to counterclaim; counsel for each defendant shall, within 14 days upon receipt of this order, send to the arbitrator any answer, amended answer, counterclaim, cross-claim and answer hereto, any third-party complaint.  Upon receipt of these materials, the arbitrator shall forthwith inform all parties, in writing, as to whether the arbitrator, or any firm or member of

any firm with which he or she is affiliated has (either as a party or attorney), at any time within the past five years, been involved in litigation with or represented any party to the arbitration, or any agency, division or employee of such a party.

(5) (A) Statutory Disqualification.  Persons selected to be arbitrators shall be disqualified for bias or prejudice as provided in 28 U.S.C. §1 44, and shall disqualify themselves in any action in which they would be required under 28 U.S.C. § 455 to disqualify themselves if they were either a justice or Judge.

(B)  Impartiality.  An arbitrator shall be impartial and advise all parties of any circumstances bearing on possible bias, prejudice, or impartiality.  Impartiality means freedom from favoritism or bias in word, action, and appearance.

(C) Conflicts of Interest and Relationships; Required Disclosures; Prohibitions.

   i.  An arbitrator must disclose to the parties and to the compliance judge any current, past, or possible future representation or consulting relationship with, or pecuniary interest in, any party or attorney involved in the arbitration.

   ii.  An arbitrator must disclose to the parties any close personal relationship or other circumstance which might reasonably raise a question as to the arbitrator's impartiality.

   iii.  The burden of disclosure rests on the arbitrator.  All such disclosures shall be made as soon as practical after the arbitrator becomes aware of the interest or relationship.  After appropriate disclosure, the arbitrator may serve if all parties so desire.  If the arbitrator believes or perceives that there is a clear conflict of interest, the arbitrator shall withdraw irrespective of the expressed desires of the parties.

   iv.  In no circumstance may an arbitrator represent any party in any matter during the arbitration.

   v.  An arbitrator shall not use the arbitration process to solicit, encourage, or otherwise incur future professional services with any party.

(6) Either *sua sponte*, or upon a recommendation received from the arbitrator, or upon the application of a party, the Judge to whom the case is assigned may exempt from arbitration any action that would otherwise be arbitrable under this Rule if (a) it involves complex or novel legal issues, or (b) the legal issues predominate over the factual issues, or (c) other good cause is shown. When initiating such a review either sua sponte or upon recommendation of the arbitrator, the Judge may proceed pursuant to an order to show cause providing not less than 14 days notice to all parties of the opportunity to be heard. Any application by a party to exempt an action from arbitration shall be by formal motion pursuant to these Rules.

(f) Arbitration Hearing

(1) The arbitration hearing shall take place on the date and at the time set forth in the order of the Court. The arbitrator is authorized to change the date and time of the hearing, provided the hearing is commenced within 30 days of the hearing date set forth in the Court's order. Any continuance beyond this 30-day period must be approved by the Judge to whom the action is assigned. The Clerk must be notified immediately of any continuance.

(2) Counsel for the parties shall report settlement of the action to the Clerk and to the arbitrator assigned to that action.

(3) The arbitration hearing may proceed in the absence of any party who, after notice, fails to be present. In the event that a party fails to participate in the arbitration process in a meaningful manner, the arbitrator shall make that determination and shall support it with specific written findings filed with the Clerk. Thereupon, the Judge to whom the action is assigned shall conduct a hearing upon notice to all counsel and personal notice to any party adversely affected by the arbitrator's determination and may thereupon impose any appropriate sanctions, including, but not limited to, the striking of any demand for a trial *de novo* filed by that party.

(4) Fed. R. Civ. P. 45 shall apply to subpoenas for attendance of witnesses and the production of documentary evidence at an arbitration hearing under this Rule. Testimony at an arbitration hearing shall be under oath or affirmation.

(5) The Federal Rules of Evidence shall be used as guides to the admissibility of evidence. Copies or photographs of all exhibits, except exhibits intended solely for impeachment, must be marked for identification and delivered to adverse parties at least 14 days prior to the hearing and the arbitrator shall receive exhibits into evidence without formal proof unless counsel has been notified at least seven days prior to the hearing that the adverse party intends to raise an issue concerning the authenticity of the exhibit. The arbitrator may refuse to receive into evidence any exhibit a copy or photograph of which has not been delivered to the adverse party, as provided herein.

(6) A party desiring to have a recording and/or transcript made of the arbitration hearing shall make all necessary arrangements for same and shall bear all expenses so incurred.

(g) Arbitration Award and Judgment

Within 30 days after the hearing is concluded, the arbitrator shall file under seal with the Clerk a written award, accompanied by a written statement or summary setting forth the basis for the award which shall also be filed under seal by the Clerk. Neither the Clerk nor any party or attorney shall disclose to any Judge to whom the action is or may be assigned the contents of the arbitration award except as permitted by 28 U.S.C. §657(b). The arbitration award shall be unsealed and entered as the judgment of the Court after the time period for demanding a trial de novo, pursuant to L.Civ.R. 201.1(h), has expired, unless a party demands a trial de novo before the Court. The judgment so entered shall be subject to the same provisions of law, and shall have the same force and effect as a judgment of the Court in a civil action, except that it shall not be the subject of appeal. In a case involving multiple claims and parties, any separable part of an arbitration award may be the subject of a trial *de novo* if the aggrieved party makes a demand for same pursuant to L.Civ.R. 201.1(h) before the expiration of the applicable time period. If the aggrieved party fails to make a timely demand pursuant to L.Civ.R. 201.1(h), that part of the arbitration award shall become part of the final judgment with the same force and effect as a judgment of the Court in a civil action, except that it shall not be the subject of appeal.

(h) Trial *De Novo*

(1) Any party may demand a trial *de novo* in the District Court by filing with the Clerk a written demand, containing a short and plain statement of each ground in support thereof, and serving a copy upon all counsel of record or other parties. Such a demand must be filed and served within 30 days after the arbitration award is filed and service is accomplished by a party pursuant to 28 U.S.C. § 657(a), or by the Clerk (whichever occurs first), except that in any action in which the United States or any employee or agency thereof is a party the time period within which any party therein may file and serve such a demand shall be 60 days.

(2) Upon the filing of a demand for a trial *de novo*, the action shall be placed on the calendar of the Court and treated for all purposes as if it had not been referred to arbitration, except that no additional pretrial

discovery shall be permitted without leave of Court, for good cause shown. Any right of trial by jury that a party would otherwise have shall be preserved inviolate.

(3) The Magistrate Judge shall conduct a pretrial conference within 60 days of filing of a demand for a trial *de novo*.

(i) Guidelines for Arbitration

The Court, the Clerk, the parties, attorneys and arbitrators are hereby referred to the Guidelines for Arbitration (Appendix M to these Rules) for their information and guidance in civil actions arbitrated pursuant to this Rule.

Amended: March 31, 1999; April 19, 2000; July 5, 2001; March 9, 2007; March 1, 2010; June 19, 2013.

## Civ. RULE 301.1 MEDIATION

Table of Contents

| REFERENCE | SUBJECT HEADINGS |
|---|---|
| (a) | Designation of Mediators |
| (b) | Designation of Compliance Judge |
| (c) | Compensation of Mediators |
| (d) | Civil Actions Eligible for Mediation |
| (e) | Mediation Procedure |
| (f) | Guidelines for Mediation |
| (g) | Ethical Standards for Mediators |
| (h) | Grievance Procedure |

(a) Designation of Mediators

(1) The Chief Judge shall designate as many mediators as determined to be necessary under this Rule. Mediators shall be designated for terms of service up to three years, subject to extension at the discretion of the Chief Judge, and such terms shall be staggered to provide orderly rotation of a portion of the membership of the panel of mediators.

(2) An individual may be designated to serve as a mediator if he or she:

(A) has been for at least five years a member of the bar of the highest court of a State or the District of Columbia;

(B) is admitted to practice before this Court;

(C) is determined by the Chief Judge to be competent to perform the duties of a mediator; and

(D) fulfills application criteria set by the Court.

(3) Each mediator shall, for the purpose of performing his or her duties, be deemed a quasijudicial officer of the Court.

(b) Designation of Compliance Judge

The Board of Judges shall designate a Judge to serve as the compliance judge for mediation. This compliance judge shall be responsible to the Board of Judges for administration of the mediation program established by this Rule and shall entertain any procedural or substantive issues arising out of mediation.

(c) Compensation of Mediators

Each mediator designated to serve by the Chief Judge under L.Civ.R. 301.1 (a) shall be compensated $400 an hour for service in each civil action referred to mediation, which compensation shall be borne equally by the parties.

(d) Civil Actions Eligible for Mediation

Each Judge may, without the consent of the parties, refer any civil action to the Court's mediation program. The parties in any civil action may, with consent of a Judge, agree to mediation and, if such consent is given, select a mediator. Notwithstanding the above, no civil action described in L.Civ.R. 72.1(a)(3)(C), may be referred to mediation unless otherwise ordered by a Judge.

(e) Mediation Procedure

(1) Counsel and the parties in each civil action referred to mediation shall participate therein and shall cooperate with the mediator, who shall be designated by the referring or compliance Judge.

(2) Whenever a civil action is referred to mediation the parties shall, as soon as is practicable, contact the assigned mediator to discuss the scheduling of mediation and the submission of a mediation position statement.

(3) Counsel and the parties (including individuals with settlement authority for specific individuals) shall attend all mediation sessions unless otherwise directed by the mediator.

(4) If the parties and the mediator agree, the mediation session may include a neutral evaluation by the mediator of the parties' positions on any designated claims, counterclaims, defenses or other material issues; and the parties and mediator may arrange a schedule within the mediation timetable for briefing and discussing such matters.

(5) The mediator may meet with counsel and the parties jointly or *ex parte*. All information presented to the mediator shall be deemed confidential unless requested otherwise and shall not be disclosed by anyone, including the mediator, without consent, except as necessary to advise the Court of an apparent failure to participate. The mediator shall not be subject to subpoena by any party. No statements made or documents prepared for mediation shall be disclosed in any subsequent proceeding or construed as an admission.

(6) A stay of proceedings (including motion practice and discovery) pending mediation shall be at the discretion of the referring Judge.

f) Guidelines for Mediation

The Court, the Clerk, the parties, attorneys and mediators are hereby referred to the Guidelines for Mediation (Appendix Q to these Rules) for their information and guidance in civil actions referred to mediation pursuant to this Rule. Said Guidelines for Mediation shall have the same force and effect as the provisions of this Rule.

(g) Ethical Standards for Mediators

(1) Impartiality

A mediator shall be impartial and advise all parties of any circumstances bearing on possible bias, prejudice, or impartiality. Impartiality means freedom from favoritism or bias in word, action, and appearance. Impartiality implies a commitment to aid all parties, as opposed to an individual party, in moving toward an agreement.

(A) A mediator shall maintain impartiality while raising questions for the parties to consider as to the reality, fairness, equity, and feasibility of proposed options for settlement.

(B) A mediator shall withdraw from mediation if the mediator believes the mediator can no longer be impartial.

(C) A mediator shall not accept or give a gift, request, favor, loan or any other item of value to or from a party, attorney, or any other person involved in and arising from any mediation process.

(2) Conflicts of Interest and Relationships; Required Disclosures; Prohibitions

(A) A mediator must disclose to the parties and to the compliance judge any current, past, or possible future representation or consulting relationship with, or pecuniary interest in, any party or attorney involved in the mediation.

(B) A mediator must disclose to the parties any close personal relationship or other circumstance, in addition to those specifically mentioned in L.Civ.R. 301.1(g)(2)(A), which might reasonably raise a question as to the mediator's impartiality.

(C) The burden of disclosure rests on the mediator. All such disclosures shall be made as soon as practical after the mediator becomes aware of the interest or the relationship. After appropriate disclosure, the mediator may serve if all parties so desire. If the mediator believes or perceives that there is a clear conflict of interest, the mediator shall withdraw irrespective of the expressed desires of the parties.

(D) In no circumstance may a mediator represent any party in any matter during the mediation.

(E) A mediator shall not use the mediation process to solicit, encourage, or otherwise incur future professional services with any party.

(h) Grievance Procedure

Any grievance concerning the conduct of a mediator, attorney, or other participant in a mediation shall be made in writing to the compliance judge within 30 days from the event giving rise to the grievance. The compliance judge may investigate the grievance and take such action in response thereto as may be appropriate, upon due notice to all affected persons or entities.

Amended: May 27, 1998; April 19, 2000; March 14, 2001; July 5, 2001; January 31, 2008; May 27, 1998; April 19, 2000; March 14, 2001; July 5, 2001; January 31, 2008; January 1, 2025.]

## Civ. RULE 401.1 RESTRICTIONS OF ALL BROADCASTING, PHOTOGRAPHING, VIDEO OR VOICE RECORDING

(a) All broadcasting, photographing and recording, both video and voice, by way of camera, cell phone or other device, are prohibited throughout the interior of the United States Courthouses in Camden, Newark and Trenton. This prohibition applies to all persons, whether or not they are engaged in radio, television or internet broadcasting, blogging or print media, for commercial gain or personal use, and whether or not the Court is in session. A Judge may, however, permit the use of photographs, video or voice recordings for the presentation

of evidence or the perpetuation of a record. Any exceptions to this rule must be requested in advance and written permission obtained by the presiding judge and/or tenant agency occupying the space where the exemption is requested.

(b) In the discretion of any Judge, broadcasting, photographing, audio or videorecording of investitive, naturalization or ceremonial proceedings in a courtroom may be permitted under such conditions as the Judge may prescribe.

Amended: July 5, 2018.

## CIV. RULE 501.1 POSSESSION AND USE OF ELECTRONIC EQUIPMENT

(a) Objective

This policy establishes that "Electronic Devices," as defined herein may be brought into courthouses subject to all appropriate security screening and that such Electronic Devices must be rendered inoperable in courtrooms and judicial chambers, unless use is authorized in such areas by the presiding judicial officer. A significant goal of this policy is to create circuit-wide consistency for the benefit of the public, attorneys and employees.

(b) Scope

This policy identifies authorized devices, establishes the classes of individuals who may possess authorized devices, sets out the basis for exceptions to the policy, and specifies guidelines for security screening and establishing areas where use of electronic devices may be prohibited. The use of electronic devices in courthouses and courtrooms is subject to existing judiciary court policies regarding inappropriate and unauthorized activity, including U.S. Judicial Conference prohibition against "broadcasting, televising, recording or taking photographs in the courtroom and areas immediately adjacent thereto. . . ."

(c) Exception

Nothing in this policy prevents a Judge, on an individual case basis, and with adequate notification, from temporarily establishing a ban on all Electronic Devices to be carried into a courtroom.

(d) Explanation of Terms

Electronic Devices refers to those devices (both currently available as well as future technology) that have as their primary function wireless communication, the storage and retrieval of digitized data, and computer applications.

The list of covered devices includes, but is not limited to, electronic devices that serve as cell phones, pagers, Palm Pilots/digital assistants, pocket computers, laptop computers, notebook computers, BlackBerries, wireless network cards, and Internet cards or devices. Devices that serve only as cameras, audio recorders or video recorders are not covered by this policy, and remain subject to regulation by local court rules and orders.

(e) Authorization

Electronic Devices may be brought into the courthouse, whether in the possession of attorneys, jurors, court employees, public, or press. Unless specifically authorized by the presiding judicial officers, all Electronic Devices must be rendered inoperable before entering any courtroom or judicial chambers. Use of Electronic Devices shall remain subject to Judicial Conference and local court policies regarding inappropriate use and unauthorized activity.

Permission to carry these devices, with all of the sensitive data they may contain, into the courthouse, is intended as a convenience to those possessing such devices and to ease the burden on court security staff at building entrances. This policy is not to be construed as granting permission to use any of these devices.

(f) Enforcement

(1)  Physical Security

Current policies regarding physical security will remain in effect.  Security officers at courthouse entrances will screen all Electronic Devices for explosives, weapons, etc.  Nothing in this policy is intended to limit the authority of the security officers to determine the appropriate means of screening Electronic Devices and to bar the possession of any Electronic Device determined to pose a security threat.

(2)  Prohibited Uses

Unless authorized by the presiding judicial officer, all Electronic Devices shall be rendered inoperable prior to entering any courtroom or judicial chambers.  Courts may, by local rule or order, further restrict the use of any Electronic Devices inside the courthouse.

(A) Notification

Policies proscribing use of Electronic Devices, with appropriate penalties, will be prominently displayed in the courthouse, on the court's website, and in mailings to potential jurors and grand jurors.

The court's employee handbook will clearly state the use policy pertaining to employees of the judiciary, including law clerks.

(B) Courtrooms

Unauthorized use of Electronic Devices in courtrooms will be addressed by courtroom security or court staff pursuant to local regulations.

(C)  Jurors

Jurors in possession of Electronic Devices will surrender these devices to court staff prior to entering the jury room to commence deliberations.

(D) Grand Jurors

Grand jurors in possession of electronic devices will surrender these devices to court staff prior to entering the Grand Jury room.

(3)  Case-by-Case Exceptions

In the event a Judge temporarily establishes a complete ban of any Electronic Device for the duration of a trial, screening for possession of Electronic Devices will occur, if practicable, in close proximity to the relevant courtroom, with a portable screening station/magnetometer, or other appropriate device.  Additional security staff should be requested for this function.

(4)  Court Security Officers

(A) Physical Security

96

Court Security Officers (CSOs) will be responsible for physical screening of devices at courthouse entrances in accordance with policies established by the United States Marshal, and will be responsible for barring any Electronic Device determined to pose a security threat.

(B) Custodial Duties

CSOs will not have any custodial duties regarding the checking and storing of Electronic Devices except as may be required on a case-by-case temporary basis as outlined in § VI.(C) above.

(g) Implementation of This Policy

This policy will be implemented as a Standing Order of the Court with limited or unlimited duration as the court determines.

Adopted: April 30, 1998. Amended: March 9, 2007.

LOCAL CRIMINAL RULES

## Cr. Rule 1.1 SCOPE AND APPLICABILITY

The following Local Civil Rules are applicable to criminal cases in the District of New Jersey:

L.Civ.R. 1.1

L.Civ.R. 1.2

L.Civ.R. 5.1(b)-(e)

L.Civ.R. 6.1(a)(1)-(2)

L.Civ.R. 7.1(a)

L.Civ.R. 7.1(c)(1)

L.Civ.R. 7.1(e)

L.Civ.R. 7.1(g)

L.Civ.R. 7.1(i)

L.Civ.R. 7.2

L.Civ.R. 10.1(b)

L.Civ.R. 52.1

L.Civ.R. 54.1

L.Civ.R. 54.3(a)

L.Civ.R. 69.1

L.Civ.R. 77.1

L.Civ.R. 78.1

L.Civ.R. 79.1(a),(b) and (e)

L.Civ.R. 79.2

L.Civ.R. 79.4

L.Civ.R. 79.5

L.Civ.R. 80.1

L.Civ.R. 83.1

L.Civ.R. 83.2

L.Civ.R. 83.3

L.Civ.R. 102.1

L.Civ.R. 103.1

L.Civ.R. 104.1

L.Civ.R. 401.1

L.Civ.R. 501.1

## Cr. RULE 5.1 UNITED STATES MAGISTRATE JUDGES

Each Magistrate Judge is authorized to perform all judicial duties assigned by the Court that are consistent with the Constitution and the laws of the United States which include, but are not limited to the following duties in criminal matters:

(a) Proceeding in matters involving misdemeanors and petty offenses in accordance with Fed. R. Crim. P. 58 and L.Cr.R. 58.1;

(b) Administering oaths and affirmations, imposing conditions of release under 18 U.S.C. § 3142, taking acknowledgments, affidavits, and depositions, and performing such functions related to bail as are described in L.Cr.R. 46.1.

(c) Receiving grand jury returns and issuing bench warrants, when necessary, for defendants named in an indictment.

(d) Exercising all the powers and duties conferred or imposed upon United States Commissioners by law.

(e) Receiving and filing complaints, issuing search warrants and arrest warrants and receiving their return. The approval of the United States Attorney or a designated Assistant shall be secured with respect to the contents of all proposed complaints and warrants.

(f) Conducting initial appearances and preliminary examinations.

(g) Conducting arraignments in accordance with Fed. R. Crim. P. 10, to the extent of taking a not guilty plea or noting a defendant's intention to plead guilty or *nolo contendere*, and ordering a presentence report in appropriate cases.

(h) Taking a plea and imposing sentence upon the transfer under Fed. R. Crim. P. 20 of any information or indictment charging a misdemeanor, if the defendant consents in writing to this procedure.

(i) Conducting proceedings in accordance with Fed. R. Crim. P. 40.

(j) Conducting proceedings for revocation or modification of probation in non-felony cases.

(k) Conducting extradition proceedings, in accordance with 18 U.S.C. § 3184.

(l) Issuing subpoenas, writs of *habeas corpus ad testificandum* or *habeas corpus ad prosequendum*, or other orders necessary to obtain the presence of parties or witnesses or evidence needed for court proceedings.

(m) Upon the request of the United States Attorney, authorizing the installation of pen register devices and executing orders directing telephone company assistance to the Government for such installation.

(n) Hearing and determining any criminal pretrial motion or other criminal pretrial matter, other than those motions specified in L.Cr.R. 5.1(o), in accordance with 28 U.S.C. § 636(b)(1)(A).

(o) In accordance with 28 U.S.C. § 636(b)(1)(B) and (C), conducting such evidentiary hearings as are necessary and appropriate, and submitting to a District Judge proposed findings of fact and recommendations for the disposition of:

(1) applications for post-trial relief made by individuals convicted of criminal offenses; or

(2) motions to dismiss or quash an indictment or information made by a defendant, or to suppress evidence in a criminal case.

(3) Any party may object to the Magistrate Judge's proposed findings, recommendations or report issued under this Rule within 14 days after being served with a copy thereof, pursuant to the procedure set forth in L.Civ.R. 72.1(c)(2).

Amended March 1, 2010.

## Cr. RULE 7.1 GRAND JURORS

The selection, qualification, summoning, exemption or excuse from service of grand jurors shall be governed by the Plan of Implementation adopted by the Court pursuant to 28 U.S.C. §1861 *et seq*. The Plan is available for inspection at the office of the Clerk.

## Cr. RULE 12.1 MOTIONS UNDER FED. R. CRIM. P. 12

Defenses or objections permitted pursuant to Fed. R. Crim. P. 12 shall be made before pleading or within 30 days thereafter unless the Court at the time of arraignment on application of counsel otherwise specifies, or unless good cause is shown.

## Cr. RULE 18.1 ASSIGNMENT OF CRIMINAL CASES

(a) All criminal cases shall be assigned by the Clerk to a Judge of the vicinage where the alleged offense arose. The Clerk may, however, assign a criminal case to a Judge in a vicinage other than where the alleged offense arose, if necessary to balance the assigned case loads among the vicinages, employing such plan as the Court from time to time adopts for such assignments. The vicinage where the assigned Judge is sitting shall be the place of trial and all proceedings in the cause, unless changed by order of the Court. Any application for reassignment of a criminal matter to any Judge in a vicinage other than where the assigned Judge is sitting shall be made by notice of motion pursuant to L.Civ.R.7.1, returnable before the Chief Judge.

(b) Reassignment of any case shall be upon the order of the Chief Judge.

Amended March 14, 2001.

## Cr. RULE 24.1 SELECTION AND IMPANELMENT OF TRIAL JURORS

(a) The selection, qualification, summoning, exemption or excuse from service of petit jurors shall be governed by the Plan of Implementation adopted by the Court pursuant to 28 U.S.C. §1861 et seq. The Plan is available for inspection at the office of the Clerk.

(b) In any case where each side is entitled to an equal number of challenges, these challenges shall alternate one by one, with the Government exercising the first challenge.

(c) In criminal cases where the Government is entitled to six peremptory challenges and the defendant or defendants jointly to 10 peremptory challenges, the order of challenge shall be as follows:

Government 1
Defendant 2
Government 1
Defendant 2
Government 1
Defendant 2
Government 1
Defendant 2
Government 1
Defendant 1

Government 1
Defendant 1

(d) In any case where there is more than one defendant, in the event the Court allows defendants additional peremptory challenges, the order of challenge will be established by the Court.

(e) In challenging alternate jurors in a criminal case, such challenges shall alternate one by one with the Government exercising the first challenge.

(f) The passing of a peremptory challenge by any party shall not constitute a waiver of the right thereafter to exercise the same against any juror, unless all parties pass successive challenges.

(g) No attorney or party to an action shall personally or through any investigator or other person acting for such attorney or party, directly or indirectly interview, examine or question any juror, relative, friend or associate thereof during the pendency of the trial or with respect to the deliberations or verdict of the jury in any action, except on leave of Court granted upon good cause shown.

## Cr. RULE 32.1 PROBATION

(a) Conditions

The "conditions of probation" set forth on any official probation form as may be approved for use in the United States District Courts shall be deemed included in the conditions of probation prescribed by the Court as to every defendant placed on probation. Copies of that form shall be signed by the probationer and one copy shall be delivered to the probationer by the probation office at the time the defendant is placed on probation.

(b) Records

No confidential records of this Court maintained by the probation office, including presentence and probation supervision records, shall be sought by any applicant except by written petition to this Court establishing with particularity the need for specific information in the records.

When a demand for disclosure of presentence and probation records is made by way of subpoena or other judicial process to a probation officer of this Court, the probation officer may file a petition seeking instruction from the Court with respect to responding to the subpoena. Whenever a probation officer is subpoenaed for such records, he or she shall petition the Court in writing for authority to release documentary records or produce testimony with respect to such confidential information. In either event no disclosure shall be made except upon an order issued by the Court.

## Cr. RULE 41.1 MOTIONS UNDER FED. R. CRIM. P. 41

Defenses or objections permitted pursuant to Fed. R. Crim. P. 41(e) shall be made before pleading or within 30 days thereafter unless the Court at the time of arraignment on application of counsel otherwise specifies, or unless good cause is shown.

## Cr. RULE 44.1 FORMAL WRITTEN APPEARANCE - CRIMINAL MATTERS

Unless appointed by a formal order of the Court, after the filing of an indictment or information the attorney for each defendant named therein shall promptly file with the Clerk a formal appearance in substantially the form set forth in Appendix B and mail a copy thereof to the United States Attorney.  If defense counsel is not a member of the bar of this Court, he or she shall also certify that he or she is a member in good standing of the bar of a court of the United States or of the highest court of a state, who is not under suspension

or disbarment of any court, and shall indicate the bar(s) of which he or she is a member and the year(s) of admission, in substantially the form set forth in Appendix B.

Amended March 1, 2010.

### Cr. RULE 46.1 RELEASE FROM CUSTODY

(a) Deposit in Lieu of Surety

(1) In lieu of surety in any case there may be deposited with the Clerk lawful United States currency, certificates of deposit issued by a bank licensed to do business in the United States, negotiable bonds approved by the Court or notes of the United States. If certificates of deposit, negotiable bonds or notes are deposited, the depositor shall execute the agreement required by 31 U.S.C. § 9303, authorizing the Clerk to collect or sell the bonds or notes in the event of default. In the case of certificates of deposit, the depositor shall notify the banking institution that the depositor's rights in the certificate of deposit have been assigned to the Clerk, United States District Court, and the banking institution shall acknowledge such notification to the Clerk. Unless ordered otherwise, the Clerk automatically shall reinvest the certificate of deposit at the maturity date at the then-prevailing rate of interest.

(2) If such a deposit in a criminal proceeding is not forfeited for default upon the appearance bond and was made by the party required to give security, or is shown to the Court to be his or her property though deposited in another name, it may be applied successively to the satisfaction of: (a) pecuniary conditions imposed upon the grant of probation; (b) claims of the United States in the proceeding, such as fines, costs or costs of prosecution under 28 U.S.C. § 1918; and (c) fees and expenses of the Marshal and Clerk. Upon exoneration of the appearance bond, the balance of the deposit then remaining shall be returned to the depositor.

(b) Bail

(1) Security Required

Unless otherwise specified, an order fixing bail in a stated amount will be deemed to require the execution of a bail bond or equivalent security.

(2) Bail Review

Bail fixed by a Magistrate Judge in this District may not be reviewed by a District Judge unless an application to modify has first been made to the Magistrate Judge who fixed bail. A Magistrate Judge shall hear the first bail review, including bail review after indictment, unless bail was previously set in open court by a District Judge after hearing. If bail is set by a District Judge after an adversary hearing, no Magistrate Judge shall hear any review of that bail without the specific authorization of the District Judge setting the bail. Further review by a District Judge shall be made upon the record of the reasons for the bail set forth in writing by the Magistrate Judge, together with additional information that may be presented.

(3) Hearing

Upon request of the United States Attorney with regard to a particular defendant, the Clerk shall notify the United States Attorney at the time the defendant appears to satisfy the bail provisions set by the Magistrate Judge or District Judge. Upon motion by the United States Attorney or by its own motion, the Court may hold a hearing at which any person who posts collateral or cash for the securing of any bond may be examined as to the sources of such cash or collateral. The Court shall refuse to accept such bond if there is reason to believe that such cash or collateral is from a source such that it will not reasonably assure the appearance of the defendant as required.

(4) Posting Security

When the release of a defendant is conditioned upon the deposit of cash or other security with the Court, such deposit shall be made with the Clerk.

(5) Approval of Bonds and Sureties

All bail bonds and witness signatures on personal surety bonds shall be approved by a Magistrate Judge or the Clerk, who will acknowledge the signatures of those persons having executed the bonds. Unless the Court otherwise directs, all bonds in noncapital criminal cases for appearance before the Court shall be presented to a Magistrate Judge or the Clerk for approval, and if approved by the Magistrate Judge immediately forwarded to the Clerk together with any money or certificates of deposit, negotiable bonds approved by the Court, or notes of the United States deposited as security.

(6) Documentation - Review by United States Attorney

Any documentation required by this Rule shall be promptly reviewed, if necessary, by the United States Attorney present at the office where the bail bond is being executed, who shall advise the judicial officer or the Clerk of his or her approval or disapproval of the documentation presented. If the documentation is disapproved, the United States Attorney shall specify to the Court the reason for disapproval.

(7) Documentation - Disapproval by United States Attorney; Hearing

At the request of an aggrieved party, the Court as soon as practicable shall set a hearing on the reasons for disapproval or the failure of the United States Attorney to respond.

(8) Cancellation of Bond

Subject to L.Cr.R. 46.1(a)(2), upon termination of a criminal proceeding and authorization from the United States Attorney, the Clerk shall cancel the appearance bond and, where there has been a deposit of money, negotiable bonds, certificates of deposit or notes of the United States, shall prepare an order for submission to the Court for the return of the money, bonds, certificates of deposit or notes to the depositor thereof.

(c) Refund of Bond Monies

(1) Where a defendant's bond is secured by depositing cash with the Clerk pursuant to L.Cr.R. 46.1(a), the monies shall be refunded when the conditions of the bond have been performed, the defendant has been discharged from all obligations thereon, and the recognizance bond has been duly cancelled of record. If the sentence includes a fine or costs, however, any such fine or costs shall constitute a lien in favor of the United States on the amount deposited to secure the bond. No such lien shall attach when someone other than the defendant has deposited the cash and the refund is directed to someone other than the defendant.

(2) The depositor shall at the time of the deposit execute a certification indicating the name and address of the person to whom the cash is to be refunded. This shall be done on the form provided by the Clerk and appended to the bail bond. See Appendix C. The depositor may change the designation of the person to receive the refund only by filing an executed assignment of bail or a consent order.

(d) Sureties

(1) All surety companies holding certificates of authority from the Secretary of the Treasury as acceptable sureties on Federal bonds, and which have appointed process agents for the District of New Jersey, are approved up to the amount for which they are respectively authorized by the Treasury Department as

sureties on stipulations for cost or value, undertakings, bail bonds, and all other bonds required to be filed in the Court.

(2) Noncorporate sureties shall be required to annex to every bail bond an affidavit of justification executed on the form furnished by the Clerk.

(3) Unless the Court otherwise directs, the equity of a noncorporate surety offering real estate as security shall be determined to be the difference between the assessed valuation as shown by the last current tax bill and the existing mortgages and liens against the property. Such equity must be at least twice the amount of the bonds if the surety offering such bond is unmarried, or if husband and wife jointly sign the bonds as sureties, where the property is in either of their names. If a married person offers a bond as surety without the spouse joining, then the equity must be four times the amount of the bond.

(4) Only property held in fee simple shall be accepted, and where title is in the name of husband and wife as tenants by the entirety, their bond shall not be accepted unless both sign the same.

(5) All noncorporate sureties shall be required to exhibit at the time of the execution of the bond, deeds, last current tax receipts and personal identification prior to acceptance of any such surety.

(6) It shall be the duty of the officer accepting bail to acquaint a noncorporate surety with the conditions of suretyship as set forth in this Rule.

(7) In determining equity, the Court may consider market value of such real estate instead of its assessed valuation only upon formal application to the Court with notice to the attorney for each adversary party. All such applications shall be accompanied by not less than two affidavits.

(8) Property owned out of the District of New Jersey may be offered as surety on the same basis as set forth in L.Cr.R. 46.1(d)(3) and, if such property is accepted, it shall become the obligation of counsel for the defendant to perfect a lien on it in accordance with the law and rules of the courts in the jurisdiction where the property is located, and said counsel shall so certify to the Clerk.

(e) Attorney Shall Not Provide Bail

No attorney shall tender his or her own funds for use as bail, except by special leave of the Court.

## Cr. RULE 53.1 CONDUCT IN THE COURTROOM

The Marshal or a designated Deputy Marshal shall, unless expressly excused by the presiding Judge, attend each criminal proceeding of the Court and shall exercise the powers granted to and discharge the duties set forth in 28 U.S.C. § 566 and in other applicable laws and rules as may be required by the Court.

## Cr. RULE 55.1 RECORD OF PROCEEDINGS

(a) The Magistrate Judge disposing of a case involving a petty offense or a misdemeanor, as defined in the Federal criminal code, shall file with the Clerk a record of proceedings prepared on forms, dockets, etc., to be furnished by the Administrative Office of the United States Courts.  The record of proceedings, with the original papers attached, shall be filed with the Clerk not later than 21 days following the date of final disposition.

(b) All fines collected or collateral forfeited shall be transmitted immediately to the Clerk.

(c) In all other cases, as soon as the defendant is discharged or after binding over, is either confined on final commitment or released on bail, except as provided in the Court's plan implementing the Criminal Justice Act, the Magistrate Judge is required within 21 days thereafter to transmit to the Clerk the file in the case

including, if issued or received by the Magistrate Judge, the original complaint, warrant of arrest with the officer's return thereon, temporary and final commitments with returns thereon, and the completed transcript which consists of verbatim copies, carbon or otherwise, of all successive docket entries in the case.

Amended March 1, 2010.

## Cr. RULE 55.2 CUSTODY AND DISPOSITION OF EXHIBITS

At the conclusion of a criminal matter, the Clerk shall promptly return to the United States Attorney all trial exhibits marked or introduced in evidence by the Government, except those pleadings from the Clerk's file that were marked as exhibits, and all supporting materials in the form of unused exhibits, contraband and grand jury material, including audio and videotapes held by the Clerk at the request of the Government. Any exhibit marked or introduced in evidence by a defendant in a criminal matter shall be returned to the attorney for the defendant at the conclusion of the matter. The attorney to whom the exhibits are returned shall be responsible for their preservation until the time for appeal has passed, during the pendency of any appeal, or for six months, whichever period is longer, and shall make them available to any party or attorney in the matter for the purpose of preparing the record or appendix on appeal. For the purpose of this Rule, a criminal matter is deemed concluded after a verdict is returned, or after a dispositive finding by the Court.

## Cr. RULE 58.1 PROCEEDINGS IN MISDEMEANOR AND PETTY OFFENSE CASES

(a) Assignment of Misdemeanor and Petty Offense Cases

Upon the filing of an information or the return of an indictment, all misdemeanor cases shall be assigned by the Clerk to a Magistrate Judge, who shall proceed in accordance with the provisions of 18 U.S.C. §3401. Upon the filing of a complaint or violation notice charging a petty offense, the Magistrate Judge by whom such complaint or violation notice is received shall open a Magistrate Judge's docket and proceed in the matter.

(b) Trial and Disposition of Misdemeanor and Petty Offense Cases

The Magistrate Judge is authorized to perform all judicial duties assigned by the Court in order to try persons accused of misdemeanors and petty offenses committed within this District in accordance with 18 U.S.C. § 3401 and 28 U.S.C. § 636 in jury and nonjury cases, order a presentence investigation report on any such person who is convicted or pleads guilty or *nolo contendere*, sentence such person, and determine requests for reduction of sentence of such person.

(c) Forfeiture of Collateral in Lieu of Appearance

(1) In suitable petty offense or misdemeanor cases, a forfeiture of collateral security may be accepted in lieu of appearance as a disposition of the case.

(2) There shall be maintained at each office of the Clerk and Magistrate Judge a list of the offenses and fines applicable thereto for which a forfeiture of collateral security may be accepted. See Appendix E.

(3) Persons charged with offenses which do not appear on the list must appear for trial. A person who timely tenders the forfeiture of collateral security for an offense listed pursuant to L.Cr.R. 58.1(c)(2) will not be required to appear for trial by the authority issuing the violation notice.

(4) Amendments and revisions to the list of offenses and fines set forth in Appendix E may be made from time to time by the Court.

(d) Appeals from Judgments in Misdemeanor or Petty Offense Cases

(1) A defendant may appeal a judgment of conviction by a Magistrate Judge in a misdemeanor or petty offense case by filing a notice of appeal with the Clerk within 14 days after entry of the judgment, and by serving a copy of the notice upon the United States Attorney. The scope of review upon appeal shall be the same as an appeal from a judgment of the District Court to the Third Circuit.

(2) In all such misdemeanor appeals, the appellant shall serve and submit a brief within 21 days of the filing of the notice of appeal. The appellee shall serve and submit a brief within 21 days after the receipt of a copy of appellant's brief. The appellant may serve and submit a reply brief within seven days after receipt of the appellee's brief. All briefs shall conform to the requirements of L.Civ.R. 7.2(b). Fifty days after the filing of the notice of appeal, the Clerk shall place that appeal upon the calendar for hearing.

Amended March 1, 2010.

## Cr. RULE 60.1 TITLE

These Rules may be known and cited as the Local Criminal Rules of the United States District Court for the District of New Jersey and abbreviated as "L.Cr.R."

## Cr. RULE 101.1 EXTRAJUDICIAL STATEMENTS IN CRIMINAL PROCEEDINGS

(a) A lawyer representing a party with respect to a criminal matter, or any other proceeding that could result in incarceration, shall not make any extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the lawyer or other person knows or reasonably should know that it will have a substantial likelihood of causing material prejudice to an adjudicative proceeding.

(b) A statement referred to in L.Cr.R. 101.1(a) ordinarily is likely to have such an effect when it relates to:

(1) the character, credibility, reputation or criminal record of a defendant, suspect in a criminal investigation or witness, the identity of a witness, or the expected testimony of a party or witness;

(2) the possibility of a plea of guilty to the offense or the existence or contents of any confession, admission or statement given by a defendant or suspect, or that person's refusal or failure to make a statement;

(3) the performance or results of any examination or test, the refusal or failure of a person to submit to an examination or test, or the identity or nature of physical evidence expected to be presented;

(4) any opinion as to the guilt or innocence of a defendant or suspect; or

(5) information the lawyer knows or reasonably should know is likely to be inadmissible as evidence in a trial and would if disclosed create a substantial risk of prejudice to an impartial trial.

(c) Notwithstanding L.Cr.R. 101.1(a) and (b), a lawyer involved in the investigation or prosecution of a matter may state without elaboration:

(1) the general nature of a charge or defense;

(2) the information contained in a public record;

(3) that an investigation of the matter is in progress, including the general scope of the investigation, the offense, claim or defense involved and, except when prohibited by law, the identity of the persons involved;

(4) the scheduling or result of any step in litigation;

(5) a request for assistance in obtaining evidence and the information necessary thereto;

(6) a warning of danger concerning the behavior of a person involved, when there is reason to believe that there exists the likelihood of substantial harm to an individual or to the public interest;

(7) the identity, residence, occupation and family status of the accused;

(8) if the accused has not been apprehended, information necessary to aid in apprehension of that person;

(9) the fact, time and place of arrest; and

(10) the identity of investigating and arresting officers or agencies and the length of the investigation.

(d) The prohibitions set forth in L.Cr.R. 101.1(a), (b) and (c) pertain to all stages of criminal proceedings, including investigation before a grand jury, the post-arrest pretrial period, jury selection, and jury trial through verdict.

(e) Nothing in this Rule is intended to preclude either the formulation or application of more restrictive rules relating to the release of any information about juvenile or other offenders.

(f) Nothing in this Rule is intended to apply to the holding of hearings or the lawful issuance of reports by legislative, administrative or investigative bodies, nor to a reply by any attorney to charges of misconduct publicly made against that attorney.

(g) The Court's supporting personnel including, among others, the Marshal, Deputy Marshals, the Clerk, Deputy Clerks, bailiffs, court reporters and employees or subcontractors retained by the Court-appointed official reporters, probation officers and their staffs, and members of the Judges' staffs, are prohibited from disclosing to any person, without authorization by the Court, information relating to a pending grand jury proceeding or a criminal case that is not part of the public record of the Court. The disclosure of information concerning grand jury proceedings, *in camera* arguments and hearings held in chambers or otherwise outside the presence of the public is also forbidden.

(h) The Court, on motion of any party or on its own motion, may issue a special order governing such matters as extrajudicial statements by parties and witnesses likely to interfere with the rights of a party to a fair trial by an impartial jury, the seating and conduct in the courtroom of spectators and news media representatives, the management and sequestration of jurors and witnesses, and any other matters which the Court may deem appropriate for inclusion in such an order.